JS 44 (Rev 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

REC'D FEB 25 2025

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)* N/A

## DEFENDANTS

County of Residence of First Listed Defendant Holmes County, Mississippi
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [X] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [X] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

### CONTRACT
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

### REAL PROPERTY
- [ ] 210 Land Condemnation
- [X] 440 Other Civil Rights
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

### TORTS

**PERSONAL INJURY**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

### CIVIL RIGHTS
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

### PRISONER PETITIONS
**Habeas Corpus:**
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty
**Other:**
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

### FORFEITURE/PENALTY
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

### LABOR
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

### IMMIGRATION
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

### BANKRUPTCY
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

### SOCIAL SECURITY
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

### FEDERAL TAX SUITS
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. Section 1331 + Section 1332    42 USC Section 1983

Brief description of cause:
Due Process Violations + Legal Malpractice

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ see complaint

CHECK YES only if demanded in complaint:
JURY DEMAND: [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE KHJ-MTP
DOCKET NUMBER 3:25-cv-96

DATE 2-25-25

SIGNATURE OF ATTORNEY OF RECORD Carmen Thompson

## FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# UNITED STATES DISTRICT COURT
Southern District of Mississippi

&

# UNITED STATES DISTRICT COURT
Eastern District of Pennsylvania

## AMENDED COMPLAINT FOR CIVIL CASE

Carmen Thompson
*Plaintiff*

v.

Katherine B. Riley of Don Barrett, PA
Holmes County, Mississippi
Chancery Court of Holmes County, Mississippi
Charlie Luckett
St. Dominic Health Services
Mississippi Department of Mental Health
Life Help - Grenada Crisis Stabilization Unit
Dr. Charles Small, PhD
Mississippi Authority for Educational Television
Mississippi Public Broadcasting and/or Mississippi Public Radio
Mississippi Community College Board
Holmes Community College
*Defendants*

Case Number: 3:25-cv-00096
Filer: Carmen Marie Thompson

# Table of Contents:

**Key points to be aware of as you read this Complaint:**................................................................3

**Parties to This Complaint**..........................................................................................................6

    Plaintiff.................................................................................................................................6

    Defendants............................................................................................................................6

**Basis for Jurisdiction**...............................................................................................................10

**Statement of Claims**.................................................................................................................12

    Katherine B. Riley of Don Barrett, PA..............................................................................12

    See Supplemental pages for continuation of Statement of Claims for the remaining
    defendants, as well as additional claims pertaining to Katherine B. Riley (note
    interconnected claims)........................................................................................................19

**Injuries**.....................................................................................................................................20

**Relief**........................................................................................................................................24

**Certification and Closing**.........................................................................................................26

# Key points to be aware of as you read this Complaint:

- This Complaint is amended/revised: **AMENDED COMPLAINT FOR CIVIL CASE**
  - This Complaint (Amended) is the most recent and current for my case
  - I have provided the United States District Court for the Eastern District of Pennsylvania with a copy of the Complaint and IFP mailed to the District Court for the Southern District of Mississippi (mailed on February 7, 2025).
  - Case Number. 3:25 CV 96 (Case Number. 3:25 CV 96 KHJ MTP) was provided to me by the U.S. District Court for the Southern District of Mississippi, Northern Division, in Jackson, MS, specifically by the Clerk, Pat Greene.
  - Pending information about how to proceed in light of this REVISED complaint: COMPLAINT FOR CIVIL CASE (Amended) and Supplemental pages FILED in 2 District Courts due to recently learning that I am allowed to file in the State I reside in.
- **This AMENDED COMPLAINT FOR CIVIL CASE(S) is PROVIDED to the following Courts for Filing:**
  - UNITED STATES DISTRICT COURT for the Southern District of Mississippi
    - All defendants (to my knowledge) are citizens of the State of Mississippi
  - UNITED STATES DISTRICT COURT for the Eastern District of Pennsylvania
    - I am a citizen of the State of Pennsylvania
- The COMPLAINT FOR CIVIL CASE(S) (Amended) is revised (including additional defendants/changes to defendant - See Katherine B. Riley **of Don Barrett, PA**, and is accompanied by the following:
  - CIVIL COVER SHEET (JS44) was mailed to me from the Southern District of Mississippi Court Clerk
    - I called the District Court and spoke with Pat Greene on 2/20/25 during which conversation I reminded her that I am not an Attorney or a Lawyer. Pat Greene informed me that I still needed to fill out the CIVIL COVER SHEET and I could just scratch out where it says "ATTORNEY" and put my name. I have completed the COVER SHEET to the best of my knowledge.
  - Application to proceed in forma pauperis (amended). Also referred to as IFP.
    - I realized that I forgot to include a table and Silver that may be of some value.
  - Statement of Claims - Supplemental pages
    - Given the number of Defendants listed as party to this case, I have provided Supplemental pages for the Statement of Claims pertaining to defendants 2-12 as listed on the first page.
  - Actions Previously Taken - Supplemental pages

- Copies of the Documents (unredacted) emailed to me by Charlie Luckett (Holmes County Chancery court clerk) in February 2024
  - I received two emails, each with attachments (once with 22 pages and once with 23 pages). For the purposes of this Complaint, I have referenced page numbers from the 23-page file, but I have provided the Court with copies of both as well as copies of the emails from which those files were attached.
  - Case Numbers provided in those documents and/or identified through my review of my "Patient Records" include:
    - Case No. E20-00[50]
    - Case No. E20-00
    - Case No. E20-00[48]
  - Supplemental pages: Communications Tracker
- At this time (this juncture in My Case), I am my sole Legal Advocate and Representation. I will continue to be my only Legal Advocate/Representation until I am afforded the right to legal representation (Effective Representation) which I understand is a step in the litigation process. Until I have a formal agreement with a Lawyer / Attorney, I am considered a Pro Se litigant. Notably, I am not an Attorney or a Lawyer.
- I chose to file the Complaint (Amended) and Supplemental pages with both United States District Courts because I have recently learned that I may file in the state to which I am a citizen, as I was previously of the understanding that I had to file in the state where the events/claims took place. In the interest of justice, and with consideration for the fact that (as far as I know), I am the only party who resides in Pennsylvania and all others are in Mississippi, I came to the conclusion that I would file this Complaint (Amended) with both District Courts. I am of the understanding that District Courts work together/cooperate.
- The addresses of the United States District Court offices are as follows:

**Southern District of Mississippi**
Thad Cochran United States Courthouse
501 E. Court Street
Suite 2.500
Jackson, MS 39201

**Eastern District of Pennsylvania**
James A. Byrne U.S. Courthouse
Room 2609
601 Market Street
Philadelphia, PA 19106

- Based on my research, I am of the understanding that "If a *pro se* litigant would like permission to file documents through the CM/ECF electronic filing system, the litigant must file a motion seeking permission from the Judge assigned to the case. See Local Rule 5.1.2(4)(b)." *See* paed.uscourts.gov.
- I spoke with a representative from PACER as I created an account, and was informed it varies court to court as to whether or not Pro Se litigants can create Electronic Filing accounts in which individuals are typically lawyers. I was informed that I needed to ask the Court where I filed. This, as I remember, was prior to February 7th when I mailed the old version of the complaint (which is now replaced with this Amended Complaint).
    - I asked the Clerk in Mississippi, Pat Greene, about Electronic Filing in my case given that I am not an Attorney or a Lawyer, and I was told that I am not allowed to file documents electronically. Pat Greene did, however, provide me (via postal mail) with the "Pro Se (Non-Prisoner) Consent & Registration to Receive Documents Electronically"
    - In light of my finding out that I have the right to file in the District Court in the State to which I am a citizen and in the interest of justice I believe this to be appropriate, as well as acknowledging that I have not yet been afforded the opportunity to work with a Lawyer and/or Attorney, I have refrained from completing the aforementioned form so as to allow an opportunity for the District Court in my State of Residence to support me. I am the sole Plaintiff in this Case.
- Pending decision as to which District Court, or if we will proceed in both District Courts, I may also request permission to file documents through the CM/ECF electronic filing system on motion. Of course, I need to know if the judge(s) assigned to My Case will change in light of filing in both District Courts.

# Parties to This Complaint

## Plaintiff

Name: Carmen Marie Thompson
Address: 211 Brown Street, Unit 13, Philadelphia, PA 19123
Telephone Number: (445) 400-7328
E-Mail Address: ThompsonCarmenM107@gmail.com

## Defendants

1. Katherine B. Riley of Don Barrett, PA
2. Holmes County, Mississippi
3. Chancery Court of Holmes County, Mississippi
4. Charlie Luckett
5. St. Dominic Health Services
6. Mississippi Department of Mental Health
7. Life Help - Grenada Crisis Stabilization Unit
8. Dr. Charles Small, PhD
9. Mississippi Authority for Educational Television
10. Mississippi Public Broadcasting and/or Mississippi Public Radio
11. Mississippi Community College Board
12. Holmes Community College

**Katherine B. Riley of Don Barrett, PA**
*Important note: I do not know what "of Don Barrett, PA" means or represents. I presume "of Don Barrett, PA" means Barrett Law Firm / Barrett Law Offices / Barrett Law Group or another group/entity they have defined. Please see page 4 of the documents I received from Charlie Luckett in February 2024 as included in Supplemental pages. I assume "of Don Barrett, PA" means the Barrett Law Firm, but I do not know.*
- Jobs and/or Titles: Attorney (Court Appointed); Attorney for Holmes County, Mississippi; Board (or Brand) Attorney for Holmes County, Mississippi District Supervisors; Attorney for the city of Lexington, Mississippi; Attorney for the city of Tchula, Mississippi; Attorney (Other/Unknown)
- Address(es): 404 Court Square, Lexington, Mississippi ; Other (unknown)
- Telephone Number(s): unknown
- Email Address: kbriley@barrettlawgroup.com
- Capacity: unknown (individual and/or official)

**Holmes County, Mississippi**
- Job and/or Title: N/A - I am referencing the entire municipality (County and Court)
  *See supplemental pages: Actions Previously Taken with emphasis on email (response) from Katherine B. Riley on February 3, 2025.*
- Address: unknown
- Telephone Number: unknown, (662) 834-2508
- Email Address: charlie.luckett@holmescountyms.org; kbriley@barrettlawgroup.com; luckettcharlie@yahoo.com; jhoward@holmescountyms.org; other/unknown
- Capacity: Unknown (individual and/or official)

**Chancery Court of Holmes County, Mississippi**
- Job and/or Title: all/Chancery Court Clerk, Attorney, Clerk's office staff, unknown./other
- Address: all (old and new)
- Telephone Number: unknown, (662) 834-2508
- Email Address:
  - charlie.luckett@holmescountyms.org
  - luckettcharlie@yahoo.com
  - kbriley@barrettlawgroup.com
  - jhoward@holmescountyms.org
- Capacity: unknown. Note: I do not know if the Holmes County Chancery Court is the "ELEVENTH DISTRICT" of the State of Mississippi

**Charlie Luckett**
- Job and/or Title: Holmes County Chancery Court Clerk
- Address: unknown
- Telephone Number: (662) 834-2508
- Email Addresses: charlie.luckett@holmescountyms.org and luckettcharlie@yahoo.com
- Capacity: Official capacity (color of the law)

**St. Dominic Health Services**
- Job and/or Title: unknown
- Addresses:
  - St. Dominic's Hospital: 969 Lakeland Drive, Jackson, MS 39216
  - St. Dominic Behavioral Health which was (currently unknown) located across the street (Lakeland Drive).
- Telephone Number: unknown/multiple/601-200-6830 (medical records)
- Email Address: unknown/multiple/Rebecca.Mccullough@fmolhs.org (medical records, see supplemental pages - Actions Previously taken, including emails on February 20, 2025)
- Capacity: Unknown (possibly both Individual and Official given the appearance of functioning under color of the law)

**Mississippi Department of Mental Health**
- Job and/or Title: unknown
- Address: unknown/all
- Telephone Number: unknown/multiple
- Email Address: unknown/multiple
- Capacity: Official

**Life Help - Grenada Crisis Stabilization Unit**
- Job and/or Title: unknown/multiple
- Address:
  - 1970 Grandview Dr, Grenada, MS 38901
  - P.O. Box 1505, 2504 Browning Road, Greenwood, MS 38930 (Life Help Mental Health Services)
- Telephone Numbers: 662-227-3700 (Grenada) and 662-453-6211 (Life Help Main Office, Greenwood)
- Email Address: unknown
- Capacity: Individual and/or Official capacity

**Dr. Charles Small, PhD**
- Job and/or Title: Unknown (Dr. / PhD)
- Address: unknown
- Telephone Number: unknown
- Email Address: unknown
- Capacity: Individual and/or Official capacity

**Mississippi Authority for Educational Television (MAET)**
- Job and/or Title: unknown
- Address: unknown
- Telephone Number: unknown
- Email Address: unknown
- Capacity: Unknown

**Mississippi Public Broadcasting and/or Mississippi Public Radio (MPB and/or MPR)**
- Job and/or Title: unknown
- Address: unknown
- Telephone Number: unknown
- Email Address: unknown
- Capacity: Unknown

**Mississippi Community College Board (MCCB)**
- Job and/or Title: unknown/multiple/Board Members (emphasis towards Holmes Community College Board/Holmes Community College)
- Address: unknown/multiple/Community & Jr. Colleges Board: 3825 Ridgewood Rd. #519, Jackson, MS 39211
- Telephone Number: Unknown/Possibly – Community & Jr. Colleges Board: (601) 432-6518
- Email Address: Unknown
- Capacity: Unknown

**Holmes Community College**
- Job and/or Title: unknown/multiple
- Address: unknown
- Telephone Number: unknown
- Email Address: unknown
- Capacity: unknown

# Basis for Jurisdiction

I do not believe it is in my best interest to attempt to return to Mississippi for a trial or any part of litigation at this time. With this in mind and in the interest of justice and being of the understanding the U.S. District Courts work together, I have chosen to file this Complaint (Amended) and Supplemental pages with United States District Court for the Southern District of Mississippi (Jackson, MS) and the U.S. District Court for the Eastern District of Pennsylvania.

It is feasible and reasonable for me to be expected to attend in-person proceedings at 6th and Market in Philadelphia. It is, however, unreasonable to expect that I participate in-person in Mississippi as this will/would also adversely impact my health at this time. Additionally, I simply cannot afford to travel there.

Please allow me to make this important point of clarification for any party or non-party who may need to know: I am not a politician. I am not a Democrat and I am not a Republican. I am an Individual American citizen. My voter registration further proves this fact. I am not a judge or jury 'shopping,' but I am fighting for justice for myself while also doing the best I can to keep myself healthy.

Under 42 U.S.C. § 1983, I may sue State and/or Local Officials for deprivation of rights, privileges, and/or immunities which are guaranteed to me by the Constitution (Federal Law) as I am a citizen of the United States of America.. The Individuals listed as Defendants in this Complaint (Amended) and Supplemental pages failed to provide Due Process, including, elementary guardrails throughout various stages of the Involuntary Commitment process - both in 2019 and in 2020, while humiliating and re-traumatizing me. Other Defendants included in this Complaint (Amended) and Supplemental pages inflicted what I can only describe as Psychological Warfare surveillance and manipulation through a targeted attack to manipulate and control my behavior.

Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a Federal Question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

In this Complaint (Amended) and Supplemental pages, I have set forth claims pertaining to Katherine Barrett Riley (in her capacity as the Court Appointed Attorney ordered to represent me in 2020 and in her capacity as the Attorney for Holmes County, Mississippi - at any level or

function of government); Holmes County, Mississippi (as a municipality/body responsible for governance and administering government services); the (eleventh district) Chancery Court of Holmes County, Mississippi; Charlie Luckett (Holmes County, Mississippi Chancery Court Clerk); St. Dominic Health Services; Life Help / Grenada Crisis Stabilization Unit; Dr. Charles Small, PhD; and the Mississippi Department of Mental Health. Based on my first-hand experiences and knowledge gained through Legal Research and Analysis, I believe my request for RELIEF is supported by existing law. I do not intend to make any argument for extending, modifying, or reversing any law(s) at this time as I am not a politician. I do, however, believe there is likely substantial information that may be deduced from my case to support such actions by the appropriate parties). The claims I have provided in this Amended Complaint pertaining to the aforementioned defendants are interconnected as this Complaint (Amended) describes. I believe, based on the knowledge and information I have at this time, these claims fall under 28 U.S.C. § 1332, as I am a citizen of the State of Pennsylvania and the other parties are citizens of the State of Mississippi.

In this Complaint (Amended) and Supplemental pages, the claims I have set forth pertaining to Mississippi Authority for Educational Television, Mississippi Public Broadcasting and/or Mississippi Public Radio, Mississippi Community College Board, and Holmes Community College may fall under 28 U.S.C. § 1331 (federal question) and/or 28 U.S.C. § 1332 (diversity of citizenship). The claims I have set forth for these defendants also falls under 42 U.S.C. § 1983 in a special sense given that (1) Public Radio is funded by the government and/sponsors, and (2) it is common knowledge that "public radio" and/or "public broadcasting" is a function of the public (or government). Unlike as intended, however, Public Radio and/or Public Broadcasting, in my experience, does not provide factual/unbiased news which requires scrutiny at the highest levels.

My understanding (as a non-attorney/non-lawyer), is that federal question actions take precedence over diversity cases. As such, it is possible that this Complaint (Amended) and Supplemental pages will need to be split into two cases so that the Federal Question (28 U.S.C. § 1331) claims are distinct from the Diversity of Citizenship (28 U.S.C. § 1332) and/or Section 42 U.S.C. § 1983). Due to the complex nature of my claims, as described in this Complaint (Amended) and Supplemental pages, I believe most, if not all, of my claims will fall under 42 U.S.C. § 1983. While some of the defendants may not have been operating under color of the law, the appearance that they were is abundant. I have provided the Court with facts based on my first-hand experiences and knowledge with respect to all of the claims and pending a reasonable opportunity for further investigation and/or discovery, these claims will be supported (and/or refuted) based on the facts.

## Statement of Claims

*See also Supplemental pages*

## Katherine B. Riley *of Don Barrett, PA*

*Important note: I do not know what "of Don Barrett, PA" means or represents. I presume "of Don Barrett, PA" means Barrett Law Firm / Barrett Law Offices / Barrett Law Group or another group/entity they have defined.*

*Please see page 4 of the documents I received from Charlie Luckett in February 2024 as included in Supplemental pages. I assume "of Don Barrett, PA" means the Barrett Law Firm, but I do not know.*

The process of involuntarily committing me was constitutionally inadequate including maladministration of safeguards which should be built into the statutory/administrative procedures which facilitated the deprivation of my rights. They, the defendants in this complaint, including the so-called "Equity Court," degraded my humanity. They have done nothing to remedy the erroneous deprivation, or the harm that they caused me. It surpasses what should be expected of a citizen of this country to fathom as acceptable in our nation: an authority which abuses their privilege of discretion to (intentionally or negligently) to inflict pain on an individual. I have suffered for years as I have worked to learn how to live with the added PTSD layer on top of what any reasonable human being could understand was already complex and protracted. Had the court included me in the conversation in 2020, during the sham hearing before Judge Clark, perhaps the outcome would be different, but I was not part of the conversation at all. A copy of the hearing (recording) will prove this as will witness testimony which will be necessary given Katherine B. Riley's claims such recording does not exist (as of her email on February 3rd). Notably, I do not know in what capacity she chose to send the email given her seemingly unlimited reign over Holmes County both officially and unofficially). See Actions Previously Taken.

On December 18, 2023, I reached out to the Holmes County Chancery Court, specifically Charlie Luckett, the Clerk. The purpose of my contacting her was to request a copy of the Involuntary Commitment hearing which took place in September 2020. After months of stringing me along with bogus remarks such as "we are looking for it," "I need to find a man to lift the box because we moved and it is somewhere in a box," "We are trying to find it, it's on a tiny cassette," finally I was informed by Sheila Lewis (who had previously told me that Judge Clark was looking for it on his computer in Madison but could not find it) and informed that "My Case" was sealed. To be honest, I am not sure if Sheila or Charlie told me this first as I cannot be

certain who was on the line, but what I do know is that they (most evidently, Sheila Lewis) were covering their tracks. I could sense this and took notes and captured my own Call Logs (via Verizon) to check my own reasoning and document accordingly. This information is provided with the Complaint (Amended): See SUPPLEMENTAL - COMPLAINT FOR CIVIL CASE: Actions Previously Taken (March 2024).

Prior to being informed that "my case" was sealed (because it was an involuntary commitment case), I received two emails from Charlie Luckett in February 2024:
- On February 9, 2024, I received a 22 page unredacted document from Charlie Lucket's yahoo email address.
- On February 12, 2024, I received a 23 page unredacted document from Charlie Luckett's holmescountyms.org email address.

Based on my analysis, the 23 page document contains the same information as the 22 page document plus one page. As such, for the purposes of this Complaint (Amended) and Supplemental pages, when referencing page(s)/documents received from Charlie Luckett in February 2024, I am referencing the 23 pager.

Katherine B. Riley of Don Barrett, PA was appointed on September 8, 2020, by Judge Robert Clark III according to Case File documents sent to me by Charlie Luckett in February 2024. She had roughly 3 days (if we assume she did not know, given the variety of positions as attorney that she holds in and amongst Holmes County, until September 8th), but I only spoke with her about "my case"/the involuntary commitment hearing immediately prior to the hearing. See page 4 and page 13 of the 23 page document Charlie Luckett emailed to Carmen Thompson in February 2024.

During the hearing, there was certainly discussion of the St. Dominic incident, but only between my mother and Judge Clark as I recall. And, Katherine B. Riley of Don Barrett, PA definitely knew the "like cases" were included in this Involuntary Commitment hearing because during our meeting (first and only meeting which was immediately prior to the hearing itself) she asked me questions about 2019 which made me upset and even more confused as I did not realize any of this was about 2019. Before that portion of Barrett and my conversation - in fact, the first question I asked her upon finding out she was my "court appointed attorney" or "public defender" was "do you have (a) conflict(s) of interest?" and her response was "I don't have any conflict of interest that I am aware of." See also Local Rules about combining "like cases" while I recall reading elsewhere there is a time limit to doing such.

I recall some discussion between Judge Clark and my mother (one of the two Affiants) about me "not following the discharge plan when I left St. Dominic's Behavioral Health facility," or

something to that effect. The "Discharge Plan" from St. Dominic's was to"Follow-up with local mental health in 1-2 weeks," and that would be on my own terms given I do not believe I should have been there in the first place. Furthermore, I must also mention that I did not intend to stay at Pluto or with my parents in their home for as long as I did after returning there in 2018, however, as I continued to search for a job and attempt to understand what was going on in Holmes County (as that is the County which Pluto is contained in), I began to attend Holmes County District Supervisors Meetings while also developing an interest in community development. I could clearly see there was little to no economic development and people were hurting all around. I considered/attempted to begin the process of starting an art center/community meeting place (in the old Methodist Church on Bee Lake Road) and even received support/praise from others (not my family though). I found myself there longer than expected and attempted to make the best of it. I was not (and still am not) aware of any "local mental health" services near Pluto, Mississippi that I would want as part of my healthcare team. Going to Yazoo City was a challenge and triggered a lot of painful and intrusive memories for me. The so-called Discharge Plan from St. Dominic's and given I have yet to see how they had the Legal Authority to force me to stay there as long as they did, I remain confused as to how this conversation was even permissible to occur between Judge Clark and my mother (and possibly Julia).

I also recall my mother and Judge Clark discussing Steve Roark who I had "interviewed" as a potential therapist in August a few days before I was taken into custody by the Holmes County Sheriff's deputies. I did not think Steve Roark was the right fit for me and I did not choose to proceed with therapy services from him. I had no idea my mother (according to her testimony) had been speaking with him without my knowledge. I have attempted to reach Steve Roark several times, but he does not answer the telephone or return my calls/voice messages. In fact, I called him at least 5 times in the month of January 2025 and have yet to speak with him. Please see supplemental pages - Actions Previously Taken.

I was not allowed to contact my doctor in Philadelphia while I was at Life Help-Grenada Crisis (or Whitfield, or St. Dominic in 2019). He was/is aware of the trauma I suffered from enduring childhood abuse and the abusive relationship I was in during my 20s. He was/is additionally aware of what happened in Mississippi - both in 2019 and in 2020. He is retired now, but I was in contact with him during the summer of 2020 while in Mississippi. Of course, this is not something I mentioned during the hearing given the entire hearing was a sham and Katherine B. Riley of Don Barrett prevented me from defending myself. I retain evidence of the fact that I communicated with my doctor in August 2020 prior to the filing of the affidavit on August 31st and will provide it at the appropriate state of litigation.

Of course, I know now, as I knew back then too (just did not have anyone to talk to at Pluto) that talk therapy may be the best solution for people who suffer from PTSD. My own psychiatrist has

said this. In order for therapy to work, you must have access to it (like therapy must actually be a service provided that you can get to) and, I argue that the patient/provider must be the right fit. In an urban environment, such as Philadelphia, there is a lot that people do for one another just by being supportive neighbors. There were not many people around Pluto and my own family treated me like a piece of trash or a stain they just could not wait to remove.

Shunda Phelon's testimony was read by Daniel (the director) during the Involuntary Commitment hearing and done so gainst my explicit request to both Katherine Barrett Riley (of Don Barrett, PA) and Daniel (I do not remember his last name) who was the Director of Life Help/Grenada Crisis during the time I was there. My private healthcare information (such as prescriptions) was aired out during the "proceedings" which were a relentless series of mis-characterizations, opinions, and one-sided perspectives. The Court was informed that Life Help counted my medication upon my arrival and it was confirmed to the court that evidently I was taking medication as prescribed (in other words, not abused). Additionally, the nurse psychiatrists recommendations were read to those present at the hearing, which included, as I recall and in summary, that she did not recommend I continue to be involuntarily committed. Charles Small's remarks were not read out loud during the hearing, as I recall. Evidently, Shunda's remarks read by Daniel were ignored by the Court, whilst they also violated any right to privacy I may have had. As those conversations went about, they talked about me as though I was not there or as though I could not participate in decisions being made about my life. The experience was degrading, sub-human, undignified, and a disgrace to the values we (or at least many of us) share and consider to be what defines us as Americans.

With regards to Katherine B Riley of Don Barrett PA's non-Appearance and inability to provide effective representation during the sham Involuntary Commitment hearing in September 2020, let me begin with her apparent absence throughout the majority of the proceeding. In the event of non-appearance the court can pass an award in favor of the attending party. However, in such an instance, the Court will provide an opportunity to the absent party through a non-appearance hearing. My claims can be proven by the recording (and transcripts) of the hearing, should they magically appear (as they should exist given the hearing was recorded and should have been transcribed as well). MS Code § 9-13-1 (2020) and Mississippi Code, § 9-13-43.

I assure you, Katherine Barrett Riley of Don Barrett PA was absent during the majority for the hearing as far as I could tell and when she was there she was ineffective representation for me (the Individual she was ordered to represent).

It surpasses my ability to fathom that any public defender and/or court appointed attorney appointed and ordered to represent a Respondent could overlook the facts that were so obvious with respect to the details I have described. The fact that Katherine B. Riley of Don Barrett PA

has multiple conflicting roles surrounding my claims and makes it clear that she Intentionally chose her role to be attorney for Holmes County despite having been ordered by the court to represent me. The fact that she worked for the court (was appointed by the court) also supports my claims against the Holmes County Chancery Court and the Municipality all together as they are unable to govern ethically, responsibly or within the parameters of the Laws of the United States of America. A determination of the "lawfulness" of the detention could have been disproven by review of the documents alone, but Katherine B. Riley did not want to do that because she was/is the Attorney for Holmes County.

Due process should be an imperative in Involuntary 'Civil' Commitment

Katherine B. Riley ignored the due process needed to advocate for and (effectively) represent me. She took no no care to develop my response in the days leading up to the hearing, nor did she even observe the due process violations which occurred prior to her being appointed by the court to represent me. She ignored all of it before, during, and after the sham hearing in September 2020. One may reasonably consider what role Katherine Barrett Riley of Don Barrett PA (or not of Don Barrett PA) was actually fulfilling as I was confined and suffering humiliation, physical and mental anguish, sadness, despair, confusion,.. It must inevitably be assumed, based on what I experienced and the information I have, that her inability to (effectively) represent me was because of the proxy government firm (emphasis on "of Don Barrett, PA") and her multitude of conflicting roles as an attorney. "A 1983 action may be brought for a violation of procedural due process, but here the existence of state remedies is relevant in a special sense. In procedural due process claims, the deprivation by state action of a constitutionally protected interest in "life, liberty, or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." (See ZINERMON v. BURCH, 494 U.S. 113 (1990)). See also a wide-range of resources I leveraged to inform my decision to file this Complaint (Amended) and Supplemental Pages - See supplemental pages: Resources/Reference.

Malign Influence, Malign Interpretation, and Maladministration in Involuntary Civil Commitment Hearings

The physical and emotional toll of this wrongdoing (possibly even Intentional Infliction of Emotional Distress, or IIED) at the hands of people in positions of power has and continues to inflict pain and trauma into my everyday existence. The conduct of Katherine Barrett Riley of Don Barrett PA and the Holmes County Chancery "Equity" Court can not be deemed normal or appropriate, nor do I believe society will be willing to accept such conduct as acceptable. I do, however, see how my previous complaints (see previous actions taken) and attempts to find legal representation to help address these claims may have been arbitrarily neglected (emphasis towards Mississippi Bar Association and Mississippi Commission on Judicial Performance,

amongst others). My case is complex indeed, but I do not accept anyone throwing their hands up in dismay because they think this is too much to grasp or understand. As such, I have taken great care to inform diligently in this report. Context matters, particularly with respect to an IIED claim.

Katherine B. Riley of Don Barrett, PA ignored the due process needed to advocate for and represent me. The Holmes County Chancery Court, and a variety of the other parties listed in this complaint did the same. She took no no care to develop my response in the days leading up to the hearing, nor did she even observe the due process violations which occurred prior to her being appointed by the court to represent me and throughout all of the days leading up to the hearing. One may reasonably consider what role Katherine Barrett Riley of Don Barrett PA (or not of Don Barrett PA) was assuming during that time. It must inevitably be assumed her inability to represent me was because of the proxy government firm to which she is a party and her multitude of conflicting roles.

Katherine B. Riley did not contact me in the days prior to the hearing or advise me to prepare in any way (such as preparing a written statement that I could read to the court) even though she was appointed on September 8th and the hearing did not take place until September 11th. Meanwhile, I was essentially imprisoned, under duress, confused, scared, angry, alone, isolated, without resources (internet, legal library, etc.). After listening to all of the remarks made by the Affiants and witnesses, while also witnessing the fact that Katherine B. Riley was not cross-examining the second affiant and the witnesses, I became even more distressed and confused. The unjust and inhumane treatment I received makes a mockery of the State of Mississippi, their judicial system, and their (mental) health system.

Given Katherine Barrett Riley of Don Barrett PA's background as an attorney, any reasonable person could assume she knows that a personal injury refers to an injury of the mind, body, or emotions caused by the negligence or ill intent of another person or entity. Any reasonable person who reviewed the public information shared by the Tennessee Bar Association could assume that it is prima facie presumption that "Sarah Katherine Barrett Riley" in Mississippi is the same Katherine Barrett Riley of Don Barrett PA who was appointed by the court to represent me in September 2020. Any reasonable person may also assume that the Tennessee Supreme Court did in fact suspend (Sarah) Katherine Barrett Riley on August 18, 2020 for failure to comply with Rule 21 as she failed to complete continuing legal education requirements in 2019. Any reasonable person may also assume that Katherine Barrett Riley should be familiar with Administrative Law too, given the many roles she assumes as an attorney.

Since the burden of proof in Involuntary Commitment proceedings must be clear and convincing evidence, Katherine Barrett Riley of Don Barrett PA took the approach of doing little to nothing

to (effectively) represent me and even went as far as to silence me.Katherine Barrett Riley of Don Barrett PA (Attorney for the Respondent) did not bother to cross-examine Cathy Thompson (one of the two affiants) or any of their witnesses during the hearing. Perhaps she thought it was sufficient to only cross-examine Louie Thompson - maybe thinking he was the only affiant. However, as you can see on page 2 of the documents (emailed by Charlie Luckett to Carmen Thompson in February 2024), the attached portion of the affidavit clearly states, "Mr. and Mrs. Louie S. Thompson stated that their daughter, Carmen is in need …". Since Katherine Barrett Riley of Don Barrett PA silenced me, failed to prepare for the hearing (despite having the time between September 8th and September 11th), failed to cross-examine witnesses (in addition to affiant), and silence me after allowing for my character and humanity to be completely disparaged, I was left completely violated and stripped of any dignity that I had previously had. I was not able to inform the Court that I had been in contact with my doctor (who was based in Philadelphia, PA), he was aware that I suffered from PTSD, he did provide me with a recommendation for therapy/psychology, and I intended to continue to improve my health with the healthcare providers of my choosing. Evidence of this conversation/notes to myself are retained and will be shared at the appropriate phase of litigation.

In her official capacity as the attorney for the Holmes County District Supervisors, and/or the attorney for the city of Tchula, and/or her capacity as the attorney for the city of Lexington (pending investigation into whether or not Katherine Barrett Riley is/was hired as a direct employee and/or as a contractor by the Holmes County municipality and/or other entity operating within Mississippi to provide attorney services to Holmes County at any level of government, should this implicate tax law and/or social security/other), and/or "Brand" or "Board" Attorney (as I recall seeing her placard with name when she was present during the District Supervisor's public meetings which I attended in 2018/2029. Given the aforementioned information, and knowing that I do not know the hiring methodology for 'Don Barrett, PA' I cannot state with certaining if my contentions are against Katherine B. Riley and/or Don Barrett, and/or Don Barrett P.A., and/or the Barrett Law Firm, and/or etc. I also do not know, though if/when an appropriate and legal investigation and/or discovery takes place, a determination of the capacity in which Katherine B. Riley of Don Barrett, PA was operating: albeit under color of the law or as an Individual, will come to light.

Given the way the involuntary commitment process played out (from start to finish, including the hearing) it is clear that all parties, including the Holmes County Chancery Court in addition to Katherine B. Riley (of Don Barrett, PA), amongst others (unknown and listed as part of this Amended Complaint and Supplemental pages did not take the actions they took for me or with any intention of protecting my Individual rights (as protected by Federal Law).

See Supplemental pages for continuation of Statement of Claims for the remaining defendants, as well as additional claims pertaining to Katherine B. Riley (note interconnected claims)

# Injuries

I was re-traumatized. Not once, but twice. In other words: traumatized, traumatized, traumatized. Trauma is not just the bad experience/event/incident that happened. Trauma is the Individual has to live with following the traumatic experience/event/incident. In my case, as an individuall, I suffer from years of childhood sexual abuse, rape, and domestic violence as a young adult that pre-existed my return to Mississippi in mid-2018 through mid 2019 and June 2020 through mid-Octotober.

Over the past several years I have experienced more triggers than any one individual can reasonably be expected to live through, as I have pleaded with my family to come to me, searched for legal representation and ways to achieve justice without success - while also trying to accomplish my life and career goals but constantly facing setback after setback and hurdle after hurdle. The lack of closure with my family, never being able to share my side of their mis-characterizations and feeling immensely mis-understood has left a hole in my heart. Sometimes I feel as though the relationship with my family could be repaired while at other times I believe the only way I may overcome my desire to have them back in my life will be to learn to un-love them. The latter is devastating for me because it conflicts with my heart and soul, but my mind (based on the reality of what I have experienced) tells me that I must find a way or I may die of heartache. The Holmes County Chancery Court, including Katherine B. Riley of Don Barrett PA, abused me and abused the justice system, as did a variety of other parties as described in this Complaint (Amended) and Supplemental pages.

I have endured a lot of awful and difficult to imagine experiences. I was sexually abused as a teenager in the most disgusting and disgraceful way. In the way we don't want to talk about because it will truly make you sick to know the truth. I was not allowed to share this during the sham hearing because the Court appointed attorney: Katherine B. Riley of Don Barrett, PA, silenced me. As a young adult, I started dating someone who abused me for several years (physically, emotionally, and psychologically). When that 'relationship' ended and I began to have intrusive memories of despicable things, I could not escape the experiences I had as a child (teenager). In fact, I became worried about my family, specifically my nieces and nephews (My cousin, Michael Thompson, and his wife, Whitney's children) as my sister's children were not yet born. This began in 2018, but became more and more difficult to grapple with while I was in Mississippi. Not necessarily because I was there and faced with being in that environment, but because I could see that not much had changed when I was in Yazoo City. When I tried to work on projects to do, what I thought, was meaningful work (with the objective of building up the community and the economic opportunities to earn a living down there) I was continuously faced with judgement, barriers, and ridicule from my parents (the affiants during the 2020 Involuntary Commitment case).

As if losing my job, not being able to find another job, dealing with trauma the best I could without health insurance, arguing with my family and feeling completely unwanted and isolated, and persistently and consistently facing hurdles was not hard enough, in early 2019 I experienced something that seems imaginary, something that may seem crazy if you were not there or if you don't trust me. Then I was assaulted by three of my family members and confined against my will after reaching out to my sister. I was not allowed to describe this during the 2020 Involuntary Commitment hearing and sincerely doubt Katherine B. Riley was representing me as it seems more like she was representing my father when I consider: (1) Julia's comments via telephone while I was at St. Dominic, (2) my Dad's testimony (that I can remember) from the Involuntary Commitment hearing, (3) Katherine B. Riley of Don Barrett PA's cross-examination of my dad (only my dad, none of the others) during the hearing, (4) the fact that my Dad, Louie Thompson, is the President of the Board at Yazoo Valley. Notably, with respect to (4), I have worried immensely over fear that by providing this information my dad may get into some sort of trouble in the event that he had something to do with all of that. I have begged him to tell me and even recently (February 13, 2025) described (again) what happened that night/early morning in early 2025. My dad told me that he knew nothing about any of it and responded with something to the effect of "to me, that sounds crazy," to which I replied, "just because you think it is crazy, does not mean it is." I need the Court to understand that I love my dad so much that any thought of hurting him tears my heart to shreds. I miss him so much and as each day goes by and we get older I realize that I don't get to keep him forever. I request the Court with all sincerity to help progress My Case so that "I can get on with my life," words I remember my Daddy saying during the Involuntary Commitment hearing in 2020. I also plead with the Court not to hurt my Dad and to help us find a solution if he were to have had something to do with all that. I can forgive him but I need to know the truth, and I will not allow myself to suffer because of what I believe is injustice and/or someone not being willing to tell me the truth.

Later in 2019, without any other viable options, I enrolled at Middlebury College for a summer language program. I paid my tuition by taking out 10K from my 401K and paying in full (which covered tuition, meals, room and board though that was hardly enjoyable in the hot basement). During the second half of 2019, I returned to Mississippi twice as my older sister Julia's wedding was in November 2019. Prior to her wedding, I joined my family at Dauphin Island as Julia wanted me (in addition to our younger sister) to be her bridesmaid. Since all of the 'stuff' from earlier in 2019 had just been brushed under the rug, and I did not want to spoil her wedding or further embarrass myself, I thought it was in our family's best interest that I attempt to reconcile. Plus, I needed to get my cat, Ziggy, who was at my parent's house. In January 2020 I began graduate school. I will be honest, it was a bit of a stretch for me to even challenge myself to join a cohort of strangers, but I did it. I was carrying all sorts of ticks and unaddressed feelings/pain and unbeknown to me at the time, trauma from unresolved re-traumatization (as I have described

in this Amended Complaint and Supplemental pages). Once Covid-19 began, I switched to remote learning easily as I had worked remotely while hired by Citi (including as a contractor) for many years. I know how to perform business responsibilities in a remote environment, but I also know the value of in-person relationship building (and would argue more for that than productivity in some cases). At the end of 2019, I remember attempting to enroll in Obamacare (the affordable healthcare coverage), but as I recall, I was denied because they said I made too much money. Earlier in 2019 I had taken my severance (as offered because I needed the money and could not find an attorney in Mississippi), I took out money from my 401K to pay for Middlebury, and I took out the last of what I had in my 401K so that I had money to pay my monthly car bills and move to Massachusetts for graduate school - all of which I had to do prior to receiving Financial Aid (Student Loan money). Then, I accumulated debt by going to graduate school. Plus, I needed health insurance and Tufts University offered affordable health insurance to students. All of the aforementioned I wanted/needed to share during the hearing, to some degree, but Katherine Barrett Riley silenced me and the Court did not seem concerned with hearing my testimony. I had health insurance through Tufts until the Involuntary Commitment of 2020 (as I was there for so long that I could not continue with school during the Fall 2020 semester), so when I was finally released (in October 2020), I was without health insurance and not in graduate school so I did not even have the student loan funds that I had planned/anticipated having. My parent's house was practically a hostile environment. I had been banned from staying at my grandmother's house and the Foose House (according to my mother) had deadbolt locks installed so that I (specifically) could not go inside. Bobby T. had pulled a gun out on me on Thanksgiving night 2018 and his house was a wreck so I could not stay with him either. I had nowhere to go and very few resources to get me anywhere.

In 2020, I was treated like a dangerous person with a serious psychological problem that required involuntary commitment; I was forced into confinement without any rights or due process. I was humiliated and disgraced repeatedly, made to look like a fool. All of this has been so tremendously traumatic and I will suffer from this for the rest of my life - for certain without justice which is why I am filing this complaint and intent on suing for incalculable damages.

In Summary: Protracted abuse/social conflict targeting me (Individual), Immense emotional psychological and emotional pain, physical pain (as one cannot reasonably claim that mental and physical pain are not interconnected. E.g.: It would be immensely ignorant to ignore the benefits of exercise for mental health, and it would be immensely ignorant to deny the fact that feelings of life being so painful that someone no longer wants to live is not a physical health problem. We know that neurologists and psychologists attend the same medical schools as do cardiologists and oncologists, so urge all of us to stop arbitrarily segregating mental and physical health as if our brains are not part of our bodies). I am confident enough in my claims and contentions that I can inform the Court that I have never had thoughts of harming anyone else, and I never thought

of suicide until after the events described in this Complaint (Amended) and Supplemental pages as I have suffered from PTSD inflicted on me by way of the defendants listed as party to My Case. These claims are supported by evidence (including witness accounts) and my own first hand-experience. Due to the protracted nature of My Case (see also previously taken actions) the lack of Remedy despite my pleading and begging so desperately, including through non-conventional ways, should further inform the Court of my desire to move My Case forward swiftly and without further hurting my health. For this reason, I have chosen to file my Complaint (Amended) and Supplemental pages with both the United States District Court for the Southern District of Mississippi (Jackson, MS) and the United States District Court for the Eastern District of Pennsylvania (Philadelphia, PA).

# Relief

The amount of relief I am seeking in damages is simply incalculable at this time.

IF I am required to provide an amount (U.S. dollar figure) at this stage of My Case (Civil Case/Lawsuits), I wholeheartedly inform the Court that the figures I provide are simply a guess at what I think is reasonable in lieu of my claims (and contentions which I believe will be supported by facts with an opportunity for a lawful and appropriate investigation and/or discovery). Furthermore, I inform the Court that throughout this Complaint (Amended) and Supplemental pages, I have remained true to myself and to the Court. This section "Relief" is no exception. Given the protracted nature and complexity of My Case, as well as consideration for the magnitude of pain and suffering, as well as my gratitude for the one person who has treated me with dignity and respect (Matthew Dixon Cass) and our community in Northern Liberties, Philadelphia, please see my best guess at what I believe is reasonable. All figures are in the U.S. Dollar currency.

→ $333,000,000.00: Payment to Carmen Marie Thompson
   *Any taxes or other deductions already taken out and paid appropriately*

→ $333,000,000.00: Payment to Matthew Dixon Cass
   *Any taxes or other deductions already taken out and paid appropriately*

→ $333,000,000.00:
   *Any taxes or other deductions already taken out and paid appropriately*
   ◆ So that Matt and I can make payments (based on our judgement) to a variety of Individual people and businesses with whom I have interacted with over the past many years since moving to Philadelphia (including the time spent elsewhere, such as Mississippi, and with emphasis on the past few years since moving to Northern Liberties neighborhood) for investing in themselves, their businesses, and God willing to help me help the community around/near and of both Philadelphia and Pluto ('unincorporated community') so that we may grow supportive neighborhoods, while also improve our livelihoods with investments in food & beverage (including restaurants, grocery stores, and market stores), housing (with ability for individuals to actually own their homes (not mobile/trailers purchased by Holmes County), and health and well-being services
   ◆ Pay increases donation for Philadelphia Waste Management Services (the people who actually pick up our disgusting trash in Philly), and Philadelphia's 311 so that they may expand to support Holmes County, MS appropriately.

# Jury Trial

I am not a Lawyer. I am not an Attorney.

Based on what I understand of Civil Procedure, My Case is not yet in the phase of litigation to which a final determination about jury trial or not is decided. With this in mind, and knowing that I have not yet had an opportunity to work with an Attorney or Lawyer on My Case, I select YES (Jury Trial YES) so that I may preserve my right to a jury trial. At this time I am my Legal Advocate and Representation, but I welcome the opportunity to work with a Lawyer and/or Attorney as may be required by Law and/or so that I may move forward in my fight for justice without My Case being dismissed on a technicality.

Due to the protracted nature of My Case (see also previously taken actions) the lack of Remedy (Remedial Action) despite my pleading and begging so desperately, including through non-conventional ways, should further inform the Court of my desire to move My Case forward swiftly and without further hurting my health and well-being. For this reason, I have chosen to file my Complaint (Amended) and Supplemental pages with both the United States District Court for the Southern District of Mississippi (Jackson, MS) and the United States District Court for the Eastern District of Pennsylvania (Philadelphia, PA).

## Certification and Closing

I state for the Court: I am one individual who has suffered. I am the single Plaintiff in this case.

This Complaint (Amended) and Supplemental pages are based on the facts as I experienced first-hand. I make mistakes and sometimes misunderstand, mis-hear, read something incorrectly, and so forth, but I assure the Court that the information I have provided is not fabricated and my claims are not frivolous. I am not submitting this Complaint (Amended) and Supplemental pages for an improper purpose of any sort. My sole intent is to achieve justice for myself - please see Relief section.

My claims are supported by evidence and the factual contentions have evidentiary support and/or will likely have evidentiary support after a reasonable opportunity for further investigation and/or discovery.

I agree to provide the United States District Court Clerk's Offices, both (or as determined appropriate) for the Southern District of Mississippi and the Eastern District of Pennsylvania, with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 2/25/2025

Signature of Plaintiff: _Carmen_

Printed Name of Plaintiff: Carmen Marie Thompson

# UNITED STATES DISTRICT COURT
## Southern District of Mississippi

&

# UNITED STATES DISTRICT COURT
## Eastern District of Pennsylvania

# AMENDED COMPLAINT FOR CIVIL CASE
## Statement of Claims (Supplemental)

Carmen Thompson
*Plaintiff*

*2-25-2025*

v.

Katherine B. Riley of Don Barrett, PA
Holmes County, Mississippi
Chancery Court of Holmes County, Mississippi
Charlie Luckett
St. Dominic Health Services
Mississippi Department of Mental Health
Life Help - Grenada Crisis Stabilization Unit
Dr. Charles Small, PhD
Mississippi Authority for Educational Television
Mississippi Public Broadcasting and/or Mississippi Public Radio
Mississippi Community College Board
Holmes Community College
*Defendants*

# Table of Contents

**Statement of Claims Supplemental pages**........................................................................**3**

Chancery Court of Holmes County, Mississippi / Holmes County, Mississippi
(municipality) / Charlie Luckett / and State of Mississippi as applicable.....................4

    SPECIAL MASTER..............................................................................................6

    ORDER OF COMMITMENT................................................................................7

        ORDER OF CONFINEMENT......................................................................10

LIFE HELP - Grenada Crisis Stabilization Unit (including Dr. Charles Small, PhD) /
Mississippi Department of Mental Health / State of Mississippi as applicable...........12

    APPOINTMENT OF PHYSICIAN / PSYCHOLOGIST / NURSE PRACTITIONER/
PHYSICIAN ASSISTANT......................................................................................13

        Dr. Charles Small, PhD.......................................................................................13

        Mississippi Department of Mental Health / The State of Mississippi.......................15

    There was no legitimate habeas corpus proceeding. It was a sham: presupposed and
pre-determined......................................................................................................17

        Holmes County Chancery Court violated my Constitutionally Protected Rights at
Various Stages of the Involuntary Commitment Process.........................................18

Mississippi Authority for Educational Television, Mississippi Public Broadcasting
and/or Mississippi Public Radio, Mississippi Community College Board, and Holmes
Community College.................................................................................................19

    Targeted Attack on Me...........................................................................................21

        Yazoo Valley Electric Power Company and/or Unknown Party..............................25

Other: undefined.....................................................................................................26

St. Dominic (Health Services).................................................................................34

    Due Process was Violated in 2019 (in addition to what happened in 2020)................34

    I signed myself in with the help of my sister, Julia Thompson (now Massey) at St.
Dominic's Hospital Emergency Room in Jackson, Mississippi, in January 2019. See
Olmstead..............................................................................................................34

After St. Dominic....................................................................................................42

Final Remarks on Statement of Claims......................................................................43

# Statement of Claims Supplemental pages

Statement of Claims pertaining to Katherine B. Riley of Don Barrett PA are included in the primary AMENDED COMPLAINT FOR CIVIL CASE(S) document/report. Please keep in mind, due to the interconnected aspects of my claims, there are further references to Katherine B. Riley of Don Barrett PA as described throughout these supplemental pages. As written in the primary document Statement of Claims, I do not know what "of Don Barrett, PA" means or represents. I presume "of Don Barrett, PA" means Barrett Law Firm / Barrett Law Offices / Barrett Law Group or another group/entity they have defined.

These supplemental pages to further inform the Court of Statement of Claims describe what happened in 2019 and 2020. As such, I remind you that this is a complex case, and I have done my best to balance brevity with the appropriate amount of detail to provide a complete picture of what happened.

## Chancery Court of Holmes County, Mississippi / Holmes County, Mississippi (municipality) / Charlie Luckett / and State of Mississippi as applicable

The Chancery Court of Holmes County defines itself as an Equity Court and boasts of using creative solutions without rigid interpretation of the law to protect the rights of Individuals. They did not protect me though, they abused me by facilitating a protracted conflict through malign administration of justice. Holmes County, Mississippi does not follow or abide by Federal Law.

By way of Holmes County, the State of Mississippi not only facilitated an obstruction on the core of my bodily integrity and obstructed my self-determination; they made it impossible for me to do anything of my own free will. I could not touch or see any people or objects outside of the confines of the facilities I was involuntarily forced to stay in for a month. The month of isolation and humiliation is enough to trouble any person with decency, but it's worse because of the plethora of factors culminating in this miscarriage of justice - all of which one could hope that by the government allowing the Chancery Court of Holmes County to be granted such immense discretion and privilege that they could use this power to do remarkable things, but they did the opposite. They went beyond making my challenges more inconvenient, they put obstacles in my way which made them virtually impossible to avoid. In the years following the commitment/confinement, I have endured unthinkable pain. Pain that comes back and hurts me over and over again (PTSD).

The process of involuntarily committing me was constitutionally inadequate including mal-administration of pre-elementary safeguards which should be built into the statutory/administrative procedures which facilitated the deprivation of my rights in the first place. Further degrading me, the Holmes County Chancery Court, or so called "Equity Court," has done nothing to remedy the erroneous deprivation though they (including Katherine Barrett Riley of Don Barrett PA in her various capacities) have had ample time to resolve this matter. Put simply, they have had ample time to do the right thing. It truly surpasses my ability to accept that in the United States of America, an authority which abuses their "jurisdiction of equity with more than a rigid interpretation of law in order to protect Individual Rights," yet such authority does not have the will or aptitude to acknowledge their own mistakes and take remedial action on their own. I have suffered for years as I have worked to learn how to live with the added PTSD layer on top of what any reasonable human being could understand was already complex and protracted - had the court included me in the conversation in 2020. In other words, if I had "participated" in the Involuntary Commitment hearing on September 11, 2020.

On December 18, 2023, I reached out to the Holmes County Chancery Court, specifically Charlie Luckett, the Clerk.. The purpose of my contacting her was to request a copy of the

Involuntary Commitment hearing which took place in September 2020. After months of stringing me along with bogus remarks such as "we are looking for it," "I need to find a man to lift the box because we moved and it is somewhere in a box," "We are trying to find it, it's on a tiny cassette," finally I was informed by Sheila Lewis (who had previously told me that Judge Clark was looking for it on his computer in Madison but could not find it) and informed that "My Case" was sealed. To be honest, I am not sure if Sheila or Charlie told me this first as I cannot be certain who was on the line, but what I do know is that they (most evidently, Sheila Lewis) were covering their tracks. I could sense this and took notes and captured my own Call Logs (via Verizon) to check my own reasoning and document accordingly. This information is provided with the Complaint (Amended): See supplemental pages: Actions Previously Taken as included in this package of material.

Prior to being informed that "My Case" was sealed, in February 2024, Charlie Luckett emailed me twice: On February 9, 2024, I received a 22 page unredacted document from Charlie Lucket's yahoo email address. On February 12, 2024, I received a 23 page unredacted document from Charlie Luckett's holmescountyms.org email address. Upon further consideration of this, I believe that her holmescountyms.org email is for her work as a government official for the municipality of Holmes County, Mississippi, and her yahoo.com email address is for her responsibilities as Clerk of the Chancery Court because it published on the Holmes County Chancery webpage). Based on my analysis, the 23 page document contains the same information as the 22 page document plus one page. As such, for the purposes of this Complaint (Amended) and Supplemental pages, when referencing page(s)/documents received from Charlie Luckett in February 2024, I am referencing the 23 pager.

## SPECIAL MASTER

Let's consider the role of the Special Master: a person who is supposed to be an adjudicator to assist the court and the judge by serving as an auxiliary to the court system. A special master is not intended to have the full judicial power of a judge (or chancellor), though they operate under the supervision of the judge by providing functions such as fact finding, conducting hearings, and/or making preliminary legal determinations. In Holmes County, according to my review of their Local Rules, it seems the preliminary legal determinations (presupposed and predetermined judgements) are provided by the Clerk and/or the District Supervisors.

The Special Master function, as it is intended based on my review of cases between the United States and the State of Mississippi, is not a member of the local municipal government. Furthermore, it is simply not possible for one individual to perform the critical functions of being Judge, Chancellor, and Special Master. The very concept of an adjudicator, or Special Master, is eliminated by either scenario. The documents I received from Charlie Luckett in February 2024 prove that the judge/chancellor fulfilled the role of SPECIAL MASTER. In other words, there was no SPECIAL MASTER.



Photo I took of my hand-written notes during/after conversation with Charlie Luckett via telephone on 12/18/2023.

On page 1 and 2 of the documents I received in February 2024 from Charlie Luckett, you can see the Affidavit and attached supplemental (page 2) which should provide "Factual descriptions of recent behavior, witnesses, and where and when it occurred, if known" as filed on August 31, 2020 according to these documents. Here you can see that from the get go, statutory due process

procedures were illegitimate and not performed in accordance with requirements. You can also see there were 2 affiants: Mr. and Mrs. Louis S Thompson. In addition to these obvious statutory violations, I will further describe how the Holmes County Chancery Court, Charlie Luckett (presumably in her role as Chancery Court Clerk), their Attorney (Katherine Barrett Riley, presumably), and the municipality of Holmes County, Mississippi violated my rights guaranteed by the Constitution, specifically the procedural due process violations which to this day make me sick.

ORDER OF COMMITMENT

On pages 15 - 17 you will find the ORDER OF COMMITMENT which was FILED on September 11, 2020 at 4 pm by Dominique Bullocks, according to the documents I received in February 2024. Notably, this is the same day as the Involuntary Commitment hearing and I had been in the Custody of Life Help/Grenada Crisis since September 3rd (as I recall) and based on cross-referencing analysis with documents. The ORDER OF CONFINEMENT (on page 23) was also FILED by Dominique Bullocks on September 11, 2020.

# September 2020

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
|  |  | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 Labor Day | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 |  |  |  |
|  |  |  |  |  |  |  |

Calendar image taken from handycalendars.com

As of September 11, 2020, I had been CONFINED /COMMITTED/ PRISONER/DETAINED/IN CUSTODY since September 3, 2020. It is possible that the Holmes County Court barely made the cut-off for the hearing within the requirements of Mississippi's Rules of Civil Procedure (barely and if so, only because of the holiday on Monday, September 7, 2020). It is also possible that they did not as this is so close to the cut-off I was not able to determine with certainty.

The Court even had the audacity to "ORDER CONFINEMENT" and declare that the "examination" was properly held amongst other false remarks while also eliminating the role of special master as evidenced by "SPECIAL MASTER" being scratched through and replaced by "Chancellor" on several pages of the documents I received from Charlie Luckett in 2024. We may ask if Holmes County did that with and by the advice of their attorney.

The hearing requirement of Rule 53(b)(1) can be satisfied by an opportunity to make written submissions unless the circumstances require live testimony. The Affiants (Louis and Catherine Thompson) were prepared for the hearing as I heard them read pre-prepared testimony. I do not recall word-for-word statements made by each of the affiants and each witness, but I remember hearing Martha Foose, and possibly Cadi Thompson Appleby also reading their prepared statements, in addition to the back and forth dialogue Judge Clark had with all of them except for my Dad as Katherine B. Riley cross-examined him (and only him) as I remember.

Section I (page 15) of the "ORDER OF COMMITMENT" declares that I (the Respondent at that time) "participated via teleconference." I did not participate, but that is what Holmes County, the Holmes County Chancery Court and Katherine Barrett Riley want to appear to be factual. Katherine B. Riley wants this in her capacity as the attorney who was appointed by the court to represent me (the Respondent back in 2020) as appointed "IN THE CHANCERY COURT OF HOLMES COUNTY, MISSISSIPPI" by the "Chancellor" (NOT the "SPECIAL MASTER") as of September 8th 2020. See below. Katherine Barrett Riley also wants it to appear as though I participated in the Involuntary Commitment hearing in her capacity/role as attorney for HOLMES COUNTY, MISSISSIPPI.

This could not be further from the truth though and it is no coincidence that "Katherine Riley" (or Katherine Barrett Riley) wrote by email on February 3, 2025, "Dear Ms. Thompson: The county and Court have both searched for a copy of the hearing and been unable to find a copy. The transcript that you are requesting does not exist. Sincerely, Katherine Riley" as shown in the supplemental information - Actions Previously Taken with respect to the petition I filed with the Holmes County Chancery Court on December 24, 2024. For this reason, I ask the Court to demand all parties identified in this complaint to preserve evidence and/or information that may be relevant to this case.

In Section II of the ORDER OF COMMITMENT (page 15), The Holmes County Court claims it had jurisdiction of the subject matter, yet they did not care to hear what I had to say during the hearing. Katherine Barrett Riley certainly did not want me to speak. Furthermore, the Holmes County Court only had jurisdiction over me (as the Respondent) in 2020 because they picked me up from my parent's house where I had returned only to properly gather my possessions (and had hoped) to clarify my rationale for departing abruptly to head back North for school a few nights prior. With respect to the collusion between Holmes County Chancery and St. Dominic in 2019, I am not sure that Holmes County had jurisdiction since I was in Jackson, Mississippi, not Holmes County at that time.

Section III (still on page 15) is also a flagrant lie. The information about the medication I was prescribed to and taking as instructed was aired out to everyone during the hearing despite my straight forward instructions to both Daniel (the former Director of Life Help) and Katherine Riley not to do as I wanted to protect my privacy and autonomy from my family who had clearly failed to communicate with me responsibly or appropriately. Section IV is a mis-characterization of reality in that the medication I take helps me focus which someone certainly needs to be doing well during any type of legal proceeding. Nonetheless, I was certainly able to defend myself as I am not incompetent, Katherine Barrett Riley incapacitated me. Section V simply restates some of the concerns of the Affiants (my parents: Louie and Cathy Thompson) which I never had an opportunity to explain. Both sentences copied from their remarks/the affidavit could have easily been addressed during the hearing had Katherine B. Riley of Don Barrett PA represented me effectively.

Section VI on page 15 is blank, but they discussed this portion of the "ORDER OF CONFINEMENT" during the hearing. I want to emphasize the "(shelter)" component of this section as I cannot underscore enough how uncomfortable and unwanted I felt while at my parent's home and while at Pluto. Despite my family (specifically my Dad, uncle - William Thompson, and cousin - Martha Foose) owning houses at Pluto (and Martha, and at that time her uncle and aunt owning one giant house on a plot of land within the boundaries of Pluto which has since, to my understanding, been purchased by my uncle: William Thompson) I was not comfortable at any of them. With some exception to Bobby T.s house (he has since died), but it was filthy and I was afraid I would be bitten by a snake or a spider if I attempted to sleep in there. I had been banned from staying at Nonnee's house following the St. Dominic incident. The Farmhouse (which is the house I grew up in) had clearly become Susan and William's farm house/Michael's office (despite some of my old furniture being placed in it). There are multiple bedrooms over there but no one ever offered to let me stay there. I sort of snuck in and tried to make myself feel safe and wanted for a day or two, but could sense that I was not supposed to be there. Monk Neal (friend) had shown me how to go to the Foose house (Martha's house) and turn on the electricity. He and I had spent some time over there cleaning up Martha's stove, cleaning the house and setting up the Christmas Tree in 2018. I thought it was okay for me to go there

even though there was mold growing inside, no working plumbing, and spiders and critters living inside the house. According to my mother, the (former) owners of that house put dead bolts on the doors of the house so that I (specifically) could not go there once I was released from Whitfield in October 2020. My parent's home was no different. My mother and I were continuously fighting. I felt like I had to walk on eggshells everywhere in their giant house. I asked my mother to take down some photos of Julia, Cadi and me because they were immensely triggering for me (because I was raped by someone with close family ties with the photographer and the photos were taken during a time in my life that I was in an extremely abusive relationship). When I told my mother that I was raped by aforementioned, her response was "I don't believe you," yet she never mentioned this during the hearing.

Page 16, section VII of the ORDER OF COMMITMENT does not list any "clear and convincing evidence," yet the Court confined me for approximately one month in 2020 (on top of the time they had unconstitutionally and illegally held me against my will in 2019). And again, I claim that it is not a coincidence that the County (Holmes County, Mississippi - or the municipality) and the Court cannot find the transcript (claim it does not exist) according to Katherine Barrett Riley on February 3, 2025.

ORDER OF CONFINEMENT

Section VIII of the ORDER OF CONFINEMENT (page 16) contains difficult to read/interpret hand-written remarks under "Each of said alternatives considered are found not suitable as treatment because:" through as I can make out the hand-written text and based on what I recall from the hearing, I think those notes may mentioned one of 2 or both of the following 1.) St. Dominic (2019) which was more than a year prior to this debacle , and 2.) Steven Roark. I recall my mother having a discussion with Judge Clark during the hearing and from what I was able to hear (at that time) and remember now, they discussed both (1) and (2).

With respect to St. Dominic, there were no "strict" instructions provided by them to me upon release, nor should I have been forced to stay there as long as I did. I have yet to receive any documentation of the legal authority which permitted that to happen in the first place. Furthermore, the malign testimony provided by my mother (one of the Affiants in 2020) about my private medical information may be a violation of my rights under HIPAA to which she and or Steve Roark may be found negligent/responsible if/when they are added as defendants/parties to this case. The Holmes County Court, on the other hand, never should have allowed any of this testimony to be part of the hearing as it is hearsay at best - but Katherine Barrett Riley of Don Barrett PA (Attorney for the Respondent) did not bother to cross-examine Cathy Thompson during the hearing. Perhaps she thought it was sufficient to only cross-examine Louie Thompson - maybe thinking he was the only affiant. However, as you can see on page 2 of the documents

(emailed by Charlie Luckett to Carmen Thompson in February 2024), the attached portion of the affidavit clearly states, "Mr. and Mrs. Louie S. Thompson stated that their daughter, Carmen is in need ..." As such, I defer back to Katherine Barrett Riley of Don Barrett PA in her capacity as the Court Appointed Attorney listed as a Defendant in this case.

With respect to Mr. Roark, I had "interviewed" Steven Roark as a potential therapist a few days prior to being picked up by Holmes County sheriff's deputies. He was not/is not the therapist for me. I never discussed this with my mother but apparently, according to her testimony, she had discussions with him (I add, she and Steve Roark would have done so without my permission). I have tried to contact Steve Roark several times, but he does not answer the phone or return my calls. Please see Actions Previously taken - communications log.

The second half of page 16 encompasses text following Section IX "There is no suitable alternative to judicial commitment," a conclusion determined because Katherine Barrett Riley (of Don Barrett, P.A.) failed to effectively represent me as I could have informed the court of these facts had my Due Process rights not been violated already (for example, notice of the hearing). Rather than representing me (and/or defending me) Katherine Barrett Riley continued to violate the Constitution of the United States and in doing so humiliated and re-traumatized me. (See also Primary Complaint - Amended)

On page 17, which appears to be page 3 of 3 of the ORDER OF COMMITMENT, you can see that "Katherine B. Riley APPROVED AS TO FORM ONLY" and "w/ permission" in her capacity as "ATTORNEY FOR RESPONDENT" which raises questions about delegation and who actually signed the form. For example, was it someone from the Chancery Court Clerk's office? Was it someone from the Barrett Law firm? How is said person paid? All relevant questions in terms of fraud, corruption, and mal-administrion. (See also Primary Complaint - Amended)

Also on page 17, there is a signature for "CHANCELLOR" (typed into form template) with the printed name "Robert G. Clark III" whereas "JOHN M. GILMORE SPECIAL MASTER" (evidently typed into the form template as well) is scratched through. Thus, it is sufficiently clear that the Judge was the Chancellor and the Chancellor was the Special Master according to these documents. This page is dated as September 11th - the day of the sham hearing. It is my opinion that any attorney who was effectively representing the respondent at the time could have dismissed all of this on the basis of mal-administrion, but Katherine Barrett Riley is one of the responsible parties for the mal-administration of justice (and healthcare in this case) thus she did nothing and as a result, I suffered. I continue to suffer for that matter.

## LIFE HELP - Grenada Crisis Stabilization Unit (including Dr. Charles Small, PhD) / Mississippi Department of Mental Health / State of Mississippi as applicable

*Note: I have included the Mississippi Department of Mental Health services because of their role, presumably, at various stages of all of this. As I understand, Life Help/Grenada Crisis is funded in part or in whole by the State of Mississippi's Department of Mental Health.*

With respect to the comments written by Dr. Charles Small (PhD) about my "feelings" that my Civil Rights were being (actively) violated, I claim and plan to prove that my rights were in fact violated at multiple stages of the Involuntary Commitment process. It would have been interesting for his testimony to have been read out loud for all in the Court to hear instead of just Shuna Phelon's testimony - on September 11, 2020 (the hearing). The Court, however, evidently intentionally read-aloud some remarks while not reading aloud other remarks. I suspect they did so with the advice of their attorney who is presumably Katherine B. Riley. Katherine B. Riley (of Don Barrett, PA) was the Court Appointed Attorney who was ordered to represent me as of September 8, 2020 according to the documents I received from Charlie Luckett in February 2024.

I was the only person saying that I thought my civil rights were being violated and no one did anything until after the hearing. And just barely even then. As I recall, the day of or shortly after the hearing, the director of Life Help / Grenada Crisis (Daniel, I don't remember his last name), called me out of my confinement unit and walked me to a different unit (the other group was eating or on break so no one else was in the room), handed me a post-it note with a telephone number written on it, and said "you said you think your civil rights are being violated. Here is the telephone number to the Attorney General you can call them." I called the number he provided me with and a man answered the phone. He said something to the effect of "We can't help you. You can get in touch with the FBI when you get out and maybe they can do something/maybe they can help you." I ask the Court to properly investigate these claims as I am providing the information I remember and cannot state with 100% certainty that that the number he provided me was that of the AG's office or if possibly said something different (like District Attorney, and if that is what he said, what district would he have referred to). This should be accessible via phone records and/or included in my Patient Records which I requested from Life Help but have yet to receive (mailed February 6, 2025 via certified mail). See also supplemental pages: Actions Previously Taken.

I would be remissed not to share with the Court that I mentioned this to Tony Geiger (who I understand works with Lynn Fitch) during a telephone conversation in early 2024. Tony was kind during our conversation, and we both acknowledged that if I brought a suit against

Katherine B. Riley we would be on opposing sides of the case. In fact, I was thinking out loud of what I thought would be the case (in terms of sides of the case) and Tony confirmed. He told me he was sorry for what happened to me and just spoke to me like a human being regardless of the side. See Actions Previously Taken and Communications Tracker

## APPOINTMENT OF PHYSICIAN / PSYCHOLOGIST / NURSE PRACTITIONER/ PHYSICIAN ASSISTANT

On Page 5: "APPOINTMENT OF PHYSICIAN / PSYCHOLOGIST / NURSE PRACTITIONER/ PHYSICIAN ASSISTANT" (of documents provided to me by Charlie Luckett via email in February 2024), "SPECIAL MASTER" is scratched out and replaced with "Chancellor" and signature (no printed name), presumably that of Judge Clark. This page is dated as of September 8th which is the same day as Katherine B. Riley of Don Barrett PA was appointed to represent me according to these documents (see page 4). Page 5 is of great interest here because I met with Shunda Phelon well in advance of September 8th. As I recall, I met with her on Friday, September 4th (possibly even September 3rd), which is proven by page 18 which also shows this page was transmitted via fax between LIFE HELP and HOLMES CO CHANCERY C (Holmes County Chancery Court) on September 3rd and 4th (as well as another date which has been concealed).

Dr. Charles Small, PhD

Bringing your attention now to pages 18, 19, and 20, I inform the Court that I did not meet with Dr. Charles Small PhD. I recall, however, having been escorted into a room (the same room I "joined" the video conference for the hearing in on September 11th) and seeing someone on video (I think he had grey or white hair). Simultaneously, someone else (I think Daniel who had walked me over to that room) said passively that I did not have to meet with him. I said, "okay, I am not meeting with him," and that is all that was said about that meeting with who I presume to be Dr. Charles Small. I know that at that time (September 3rd or 4th) I was extremely upset, confused, concerned, embarrassed, and so forth.

The page faxed "TO THE CHANCERY COURT OF HOLMES COUNTY, MISSISSIPPI," (page 18 which appears to be the cover page for pages 18 - 20), signed as of September 4, 2020, should have shown the Attorney sufficient information to stop all of these shenanigans in light of the abundance of obvious illegalities. Katherine Barrett Riley of Don Barrett, P.A. Let the injustices continue though, and I have suffered immensely as a consequence. It's astonishing to me that she did not bother to share the documents the Court had received from Life Help with me directly, especially since she was appointed on September 8th. I did not know that LIFE

HELP/Grenada Crisis/Mississippi Department of Mental Health/Dr. Charles Small provided FALSE information. I also did not know of any of the legal aspects of "My Case" nor did I have access to any resources to prepare.

You may ask why I have included Dr. Charles Small, PhD, as a defendant listed in this claim and not Shunda Phelon. That is because, while she was not physically in attendance at the hearing, she did at least prepare remarks which were presented to the court by Daniel (the director). I don't recall Dr. Charles Small being in attendance or any statements/remarks prepared by him being read to the court. Shunda's "interpretation" of my behavior/state of mind (as of September 4th) is a poor interpretation of reality given that I had just been detained by Sheriff's deputies, was confused, scared, angry, and felt abundantly violated, in addition to having been abruptly taken off of manication. The truth is, especially knowing what I know now about my health, I should have been provided medication to alleviate the acute panic that I was experiencing after being detained (the Affidavit was not even in compliance with requirements necessary for a writ). And, I assure you, my insight and judgement are not poor and they were not poor then either.

Both pages 19 and 20 (in addition to 18) appear to have been signed by Dr. Charles Small, PhD. He, Life Help/Grenada Crisis, and the Mississippi Department of Mental Health more broadly, claimed that I had been informed of: (1) Purpose of examination, (2) Possible consequences of the examination, (3) Right to refuse to answer any questions, and (4) Right to have his or her attorney present. This is completely FALSE. I was not informed of any rights (other than passively that I did not have to speak with Dr. Charles Small on September 3rd or 4th, and following the hearing when Daniel handed me the post-it.

On page 19, specifically (which based on what I remember hearing Judge Clark say at the conclusion of the sham Involuntary Commitment hearing, seems to be the default judgement he relied on to commence the "proceeding(s)"), Dr. Charles Small, PhD, had the audacity to refer to "Psychosis at St. Dominic 18 months ago." He went on to simply restate claims included in the affidavit filed on August 31, 2020, all of which I could have addressed during the hearing had I been afforded an opportunity to be heard in a fair hearing. The hand-written notes also state, "The Patient denies all accusations by family and feels her civil rights have been violated." I suppose, at that point, based on what I understand now, my Constitutionally protected rights were in the process of being completely violated, amongst other illegalities (such a legal malpractice). However, by proceeding to have a sham hearing in which both the 2019 and the 2020 were combined, my Constitutionally protected rights were violated not once, but twice. The question remains, why were Shunda Phelon's remarks read out loud to all in attendance at the Involuntary Commitment hearing, but Dr. Charles Small's remarks were not read out loud for all to hear.

Pages 19 and 20 show the Court that Dr. Charles Small / Life Help - Grenada Crisis / (and thus) Mississippi Department of Mental Health provided the court false statements and the Court and Court Appointed Attorney (Katherine Barrett Riley of Don Barrett PA) denied me the opportunity to defend/represent myself and no one else did it for me: (1) The facility and specific individual - Charles Small said they had evaluated me when in fact I never met with him. (2) The facility and specific individual - Charles Small said that I had been advised of a variety of rights which absolutely did not happen at Life Help - Grenada Crisis. Quite notably, the Nurse Psychiatrist at Whitfield wanted to be sure that I saw their page posted near the nurses station listing Patients (and Confined/Committed Individuals) rights. I did not arrive at Whitfield until September 23, 2020 (according to Patient Information I requested and received on behalf of myself from Whitfield). This seems like an attempt to cover themselves (Life Help) at my expense and suffering all things considered.

Mississippi Department of Mental Health / The State of Mississippi

Given the shifting of laws/statutes as far as I have been able to discern (particularly during this precise time frame), it is possible that Holmes County, Life Help/Grenada Crisis (including Dr. Charles Small), Mississippi Department of Mental Health, and the State of Mississippi are collectively responsible for the failure to "inform me of my rights" and failure to provide for those rights (e.g., right to have attorney present) as required by law.

It is not 100% clear what the roles/responsibilities and timing of legal requirements in terms of providing involuntarily committed individuals with their rights, when the State of Mississippi "officially" began requiring that "State Mental Hospitals" were required to provide "patients" with their rights. Though I was not a "patient" as I was absolutely a "prisoner" (I even arrived at Life Help with shackles around my ankles). Based on my assessment, the State of Mississippi delegated the responsibility of requiring Mental Health/Behavioral Health facilities to inform their "patients" ("prisoners") with their rights sometime as I was being involuntarily held (Committed and Confined). I think while I was at Life Help/Grenada Crisis and just before the sham hearing. Regardless of exact timing, that transition of a legal requirement into a law (and whose responsibility it was to fulfill it), it should not be my responsibility to bear the burden of the failure of Mississippi's judicial/governance system and/or (mental) healthcare system failures.

The burden should fall on the State of Mississippi and parties identified in this complaint as defendants. I believe there was a (Mississippi specific) legal mechanism in place at/around the time of the hearing which required such facilities (like Life Help/Grenada Crisis) to inform/visibly post signage of Patient's/Individuals Rights. I presume this is the reason for Daniel (the former Director at Life Help) providing me with the phone number of the Mississippi Attorney General and allowing me to make the phone call (as previously mentioned). Also, I noticed that once I arrived at Whitfield and began the "onboarding process" on my floor, the

nurse psychologist lady (blond hair/don't know her name) was was a bit aggressive towards me, pointed out a piece of paper they had hanging on the wall next to the nurses station which listed patient's/individuals rights. Such did not exist at Life Help - not before the hearing or after the hearing.

After the hearing, it seemed as though Shunda Phelon thought that I would get out sooner/quicker if I took medication. I don't recall if she actually said these words, or if there was a head nod, or something like that, but I definitely got that impression. As such, I agreed to take something but did not want to and did not think I needed to. Immediately after I started taking it, she (the person who prescribed it to me) disappeared. I think first because it was the weekend and maybe afterwards because of Covid (as I was told). After multiple attempts to reach her and for a day or two or three with immense pain in my stomach so much so that I was slouching over in agony, I began spitting that "medication" (which was more like a drug) out. The staff (at least one person) knew it. Truthfully, I don't think any of them (or most of them) thought I should have been there. There were also some inappropriate sexual remarks made to me by a man who worked at Life Help, but I am choosing not to disclose those at this time as that was the least of my problems during this ordeal. Notably, I informed the medical team at Whitfield that I was spitting out the drugs (medicine) provided to me at Life Help as aforementioned.

Daniel and I walked outside together as I asked him if I could have a few minutes (like to breath and get my emotions/behavior together before returning to my even more confined confines. I recall him saying something like "don't worry about it, you don't have to go to Whitfield, you can just stay here." I also remember him saying something like, "wow. they threw you under the bus," as we walked outside where I cried for a few minutes before going back inside.

The day I was transferred to Whitfield. I remember hearing the sound of grass being cut and something in my gut as I laid in my cement cell bed told me, you're getting out today. Shortly after (possibly even while the grass was being cut), I heard a woman (I think she went by the name "Porky" or something like that) say something such as "Carmen, come on. You gettin out today." I quickly threw my things into a brown paper bag and the luggage my mother had bought for me. I went out the side/back door (through the laundry room), and there was a sheriff's deputy outside waiting for me. We put my stuff into the trunk and took off (I was in the back seat). We arrived in Lexington at the Sheriff's station and picked up a woman sheriff's deputy. She got into the front passenger seat. Then, the man started driving in the opposite direction of Pluto/my parent's home. I was shocked! I asked him where we were going and he said, "You're going to Whitfield." I asked permission to use my cell phone and asked permission to hit my vape. They granted permission for both. As we drove toward I-55, I called Life Help and asked to speak with Daniel. I asked Daniel what was going on and he said something like, "We wanted/needed a second opinion." I could not and could believe this all at once. Given all that I had already endured, I was not actually surprised, but it still just blew my mind that I was being

treated in this way. The Sheriff's deputies and I arrived at Whitfield, then had to wait in some sort of line because Covid-19 precautions were going on. After some time, the Whitfield people were finally ready to check me in. I exited the Sheriff's vehicle and went through the whole process of handing over my possessions and being humiliated and degraded all over again.

There was no legitimate habeas corpus proceeding. It was a sham: presupposed and pre-determined.

Habeas corpus proceedings are a legal process that allows a prisoner to challenge the legality of their detention or imprisonment. The process involves a writ of habeas corpus, which is a court order that requires the custodian of a prisoner to appear in court. The purpose of the writ is to determine if the prisoner's detention is lawful. Were both Holmes County and Life Help/Grenada Crisis/Mississippi Department of Mental Health custodians of me (their prisoner)? The fact that I had knowingly and intentionally refused to check myself in to seek 'mental healthcare help' only days prior to being 'detained/captured' by Holmes county Sheriff's deputies is proof that these shenanigans would not have happened anyway had Holmes County not interfered with my life. As such, I am not seeking just nominal damages. See Relief section of primary Complaint for Civil Cases (Amended).

Page 23, "ORDER OF CONFINEMENT PENDING HEARING" is bizarre in and of itself simply because of one word: "PENDING." A "pending hearing" indicates that a case is not yet resolved and in an active stage during which parties can file motions, exchange discovery and prepare for the upcoming hearing. The "statutory examination" (section II) was illegitimate and not in accordance with Law. At the bottom of page 23, you see "that Willie E. March, Sheriff, is [was] hereby appointed, authorized and directed to immediately deliver respondent to said facility [Grenada Crisis]." This page was FILED on September 11, 2020 at 4 pm by Dominique Bullocks, after the Involuntary Commitment hearing. In reality, Sheriff's deputies picked me up from my parent's home on September 3rd 2020 and took me to Life Help where I was held until and after the sham hearing on September 11, 2020. I was picked up again (after being told I was going home) by a Sheriff's deputy and taken by two Sheriff's deputies (after picking up another at the station in Lexington) to Whitfield on September 23rd. I was finally released on approximately October 1, 2020 (according to my Patient Records as I received from Whitfield via email on January 23rd 2025, though I have in mind that I was allowed to leave October 2 or 3rd as I had to wait until my family returned from their vacation in Florida so one of them could pick me up).

Holmes County Chancery Court violated my Constitutionally Protected Rights at Various Stages of the Involuntary Commitment Process

You see Dominique Bullock's name on page 22 as well. I am outright offended that I was placed on some "Federal Prohibited Person" list by the Mississippi Department of Public Safety (Reason being "Mental Commitment"). I would like to know when Dominique Bullocks/Holmes County Chancery filed this with the Mississippi Department of Public Safety because as you can see on Page 21 (same set of documents), also signed by Dominique Bullocks (this page has a date of October 9th written in), I was released from Whitfield. Evidently, THE COURT OF THE COMMITTING COURT, did not get the memo: I should not have been committed (in summary), but yet, they put me on a Nationally Prohibited Persons list and didn't even tell me they had done so. Holmes County further violated my Constitutional Rights by doing this. I don't know if Dominique Bullocks (specifically) did this intentionally, but at the very best it is incompetence, carelessness, and incompetence. Mistakes which impacted my future well beyond the stent I spent in Psych wards for a month in Mississippi. Even as of 2023, when I joined The Fletcher School on the D.C. Career Trip quite possibly, I was denied access with our group to the United States Treasury for unknown reason. I stood out in the cold and waited as every person in our group was cleared except for me. I was told the Secret Service could not clear me and not told anything beyond that. After coming across this page, I felt I may have discovered the reason. A proper and lawful investigation should be able to determine for sure.

## Mississippi Authority for Educational Television, Mississippi Public Broadcasting and/or Mississippi Public Radio, Mississippi Community College Board, and Holmes Community College

Because I was not afforded a fair hearing with an opportunity to be heard (including what I allege to be legal malpractice by Katherine B. Riley of Don Barrett, PA), I was not able to share with the Holmes County Chancery Court what I experienced leading up to checking myself in at St. Dominic's ER (albeit very emotional). See Olmstead. And let me be very clear, as of 2020 when I returned to Mississippi during summer break from graduate school in Massachusetts after spending one month in Philadelphia, I was not even considering these aspects of 'My Case." Any attempt by other defendants (or others) to apply "if not but for" to defend their malpractice/violations of due process would be factually inaccurate. Nonetheless, I include this aspect of My Case (contentions or claims) because my goal is to provide the U.S. District Court(s) with a complete set of facts surrounding this debacle.

Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a Federal Question case. As mentioned in the primary Complaint (Amended), in the Basis for Jurisdiction section, I am not 100% clear as to whether or not this component of My Case falls under 28 U.S.C. § 1331 and/or 28 U.S.C. § 1332, and I remind the Court that I am not an Attorney and should be offered an opportunity to work with an Attorney at the appropriate state of litigation. As of now, however, I am my Primary and Sole Legal Representative. As such, I have researched the Law and informed myself accordingly as I prepared this Complaint which includes non-frivolous claims and contentions which will likely be supported after a legal/appropriate investigation and/or discovery.

I understand that the Mississippi Public Radio and/or Mississippi Public Broadcasting is owned by the Mississippi Authority for Educational Television (MAET), which is an agency of the State of Mississippi. I do not know all of the Entity's by which Public Radio (or Mississippi Public Radio or Mississippi Public Broadcasting) operates under and/or delegates to. I have, however, listened and watched portions of recent Congressional footage of Senator John Kennedy of Louisiana in which he informs about NPR, PBS, and so forth with respect to the State of Louisiana. He has many years of experience as a Senator as well as resources (including staff members) to help in form and prepare his presentation. I do not have those resources nor do I have the bandwidth to investigate the intricacies of Mississippi's Public Radio. I ask the Court to perform a proper investigation of my claims based on the information I am sharing so that we can resolve these claims. In addition to MPB/MPR (whatever I was listening to in my car in 2019), I have included MAET, Mississippi Community College Board, and Holmes Community College based on my research. I provided an explanation for MAET's inclusion above. MCCB

and Holmes Community College are included in light of MS Code § 37-35-1 (2023)[1], MS Code § 37-35-5 (2023)[2], and MS Code § 37-35-7 (2023)[3]

In light of matters stemming from January 2019 being consolidated into the proceedings (if you call a sham hearing a lawful proceeding) before Judge Clark (Robert Clark III) in September 2020, it is necessary to take a step back and look at the bigger picture. I remind you that this is complex. The precise laws that were broken I am unable to identify without causing myself more

---

[1] MS Code § 37-35-1 (2023):

The Mississippi Community College Board is authorized and directed to prescribe rules and regulations, which said rules and regulations when properly promulgated and not inconsistent with the provisions of this chapter shall have the force and effect of law, under which a program may be established, maintained and supervised for the purpose of supplying educational advantages to adults, which shall include all persons sixteen (16) years of age and over, not enrolled in school or required to be enrolled in school by the compulsory school attendance law, Section 37-13-91, Mississippi Code of 1972. The aim and purpose of such a program shall be to reduce illiteracy and to provide a general plan of continuing education in the fundamental principles of democratic society, citizenship, public affairs, forums, home family life, arts and crafts, general cultural subjects with priority to be given to academic training through high school and training in technical skills and trades needed by industries, and such other subjects as the Mississippi Community College Board may prescribe for the social and economic advancement of adults. The Mississippi Community College Board is authorized to employ such additional supervisory, secretarial and clerical personnel as may be necessary to carry out the provisions of this chapter.
*Codes, 1942, § 6240; Laws, 1940, ch. 177; Laws, 1960, ch. 293; Laws, 1992, ch. 538, § 1; Laws, 1993, ch. 375, § 1, eff. 7/1/1993.*
*Amended by Laws, 2014, ch. 397, HB 460, 33, eff. 7/1/2014.*
https://law.justia.com/codes/mississippi/title-37/chapter-35/section-37-35-1/

[2] MS Code § 37-35-5 (2023)

For the purpose of supporting the adult education program authorized in this chapter, the Mississippi Community College Board is authorized to accept for and on behalf of the State of Mississippi, federal funds made available to the state for the purpose of adult education. Such funds shall be used by the Mississippi Community College Board for the administration of the program and to supplement the local funds made available by any school district, provided such program is conducted under the rules and regulations established by the Mississippi Community College Board. All programs of adult basic education administered by the State Department of Education on July 1, 1992, shall be continued with at least the same level of funding, until July 1, 1995, provided that such programs are financially and programmatically sound and meet the requirements of federal rules and regulations. Nothing in Sections 37-35-1 through 37-35-11 shall be interpreted in a manner to prevent or interfere with the independent operation or administration of adult education under the Department of Human Services, including, but not limited to, those programs administered by the Governor's Office of Literacy and Workplace Enhancement, or of any general educational development preparatory instruction and testing administered by a school district in an alternative school program.
*Codes, 1942, § 6240; Laws, 1940, ch. 177; Laws, 1960, ch. 293; Laws, 1992, ch. 538, § 2; Laws, 1993, ch. 375, § 2; Laws, 1997, ch. 604, § 3, eff. 7/1/1997.*
*Amended by Laws, 2014, ch. 397, HB 460, 34, eff. 7/1/2014.*
https://law.justia.com/codes/mississippi/title-37/chapter-35/section-37-35-5/

[3] MS Code § 37-35-7 (2023)

Any funds that may be appropriated by the State Legislature for the purpose of carrying out a program of adult education may be used to supplement local funds or to meet the minimum requirements of the federal government for a program of adult education in the state, provided such program is conducted under the rules and regulations established by the Mississippi Community College Board.
*Codes, 1942, § 6240; Laws, 1940, ch. 177; Laws, 1960, ch. 293; Laws, 1992, ch. 538, § 3, eff. 7/1/1992.*
*Amended by Laws, 2014, ch. 397, HB 460, 35, eff. 7/1/2014.*
https://law.justia.com/codes/mississippi/title-37/chapter-35/section-37-35-7/

stress and possibly more triggered PTSD symptoms at this time. What I can tell you is that what I experienced (none of which I was allowed or advised to share during the sham hearing in September of 2020) was what I can only describe as psychological warfare. Again, I ask the Court for support to perform a proper investigation so that we may know the truth and pursue justice.

Targeted Attack on Me

I believe I was targeted while at Pluto, my family's farm in Mississippi in 2019. Technically, once I got onto Bee Lake Road[4] whilst in my vehicle. I was not allowed to share any of this information before Judge Clark during the hearing in 2020. The injustices described throughout my Statement of Claims are unchanged in light of the forthcoming claims which led up to me calling my sister, Julia, and then checking myself in at St. Dominic with her assistance on January 6, 2019.

I was listening to Mississippi Public Radio while driving on Bee Lake Road towards Hwy 49 as I intended to drive to Tchula to purchase an Al Capone cigarillo (during that time, I was trying to quit smoking cigarettes and was occasionally smoking a cigar/part of a cigar/cigarillo). On the car radio (I suppose AM/FM, but it could have been Sirius Radio, or even a ham radio for all I know - pending appropriate investigation). Mississippi Public Radio or Mississippi Public Broadcasting was playing and I remember hearing that/seeing on the screen of my vehicle. I recall hearing a woman talking and mentioning something about tobacco or cigarettes (but I was not listening for long enough to understand the gist/context of the conversation). I recall her saying something like "let's see what happens when the lights go out," or "let's see what happens when the power goes off." For a second or two (if even) I continued driving towards the highway with the intention of purchasing a cigar or cigarillo once I arrived in Tchula. Then, boom! I recall

---

[4] Historical note: Bee Lake Road was once a Private road, as I understand, but it is now (or at least as of when I was last there, back in October 2020) and has been for as long as I can remember a Public road. As the story goes (as I have been told by my parents), when I was very little, a deer jumped our vehicle because the county (Holmes County municipality) was not cutting the grass. My parent's could not see the deer and it jumped on the windshield of my parent's vehicle. I got cut really bad and they had to take me to the house and put me in a tub of peroxide. I have discussed this with Julia, my sister, and she says she remembers. I was very young and have no recollection of this, but I do think about the story I have always been told because all my life I have watched my dad and his farm crew, as well as Michael (my cousin) and his farm crew, cut the grass - not just at the farm, but all along the roadside at Pluto. I have cut the grass at Pluto quite a bit myself too, when I was younger. As I have been told, my dad and the farm in general, have cut the grass because the county simply will not/would not do it. Since I got cut up so badly from the collision with the deer, the farm has flipped the bill (time and resources) to make sure the grass was cut so that (ALL) people driving down the road through Pluto are safe.

Note: In my first hand experience, Holmes County (the municipality) does little to nothing to maintain Bee Lake Road. I paid an immense fee to purchase a car tag for my vehicle (same one I was driving in 2019) despite being unemployed, looking for work, etc. I remember seeing something about the fee being for "roads and bridges privledges."

hearing the boom and the light outside of the church went off. The one "street" light in my purview was out. I turned around to head back to my grandmother's house to check on her as I was staying at her house (owned by Pluto) at that time.



Mississippi Community College Board (.edu) - Community College District Map. Emphasis on 6. Holmes Community College. I was in my Subaru Impreza (loan through JP Morgan Chase), listening to MPR/MPB, driving on Bee Lake Road approximately 1 mile from Pluto headquarters - January 2019 (as I recall and substantiated by other records, i.e.: St. Dominic Patient Records)

When I arrived at Nonnee's house (Mary Stigler Thompson, my paternal grandmother, who is now deceased), the lights were all off. I did not think to open the fridge as I assumed the power was out. I did not consider that someone may have been manipulating/messing with me and the breaker was switched off. In hindsight, I realize this is a possibility too. At the time, all indications pointed to the power being off at Pluto. I assumed that everyone on the farm lost power, including whoever was at the Farmhouse that night as I had seen vehicles in the driveway there after having dinner at my parent's house. I assumed that Fort Bridgeforth was visiting as I

noticed Louisiana plates on a truck parked amongst a few other vehicles at the farmhouse. I had even attempted to visit them, but the doors were locked (which was unusual).

Back at Nonnee's house, I checked in with the nurse/caregiver (young blond haired girl. I do not recall her name) who was sitting with Nonnee overnight. I was of the understanding that Nonnee had a device monitoring her heart rate/breathing patterns/and so forth and that it would go out if the power went out, but there was some sort of backup battery. I went to the back porch and checked on the Mama dog and her puppies (they were still very young and their eyes were not open yet). I brought one of the puppies into the house and took the little one to the caregiver who was sitting in a chair in my grandmother's bedroom. She smiled and seemed happy to hold the puppy for a while. I began making my way through the house to light candles.

As I lit the candles, I became surprised by how many candles were set out. I had not noticed them before, but there were so many I discovered as I lit them one by one. I continued lighting them. I walked into the den and lit those, including a candelabra. I found a stray candle in "the girls room;" I lit that one too. As I became inthralled with the beauty of the candle light, I realized there wasn't a candle lit in Nonnee's room, so I carried the beautiful candelabra into her room and placed in the bathtub of her bathroom (so as to avoid a fire and so that she could see her way into the bathroom). As I walked back to the other side/half of the house (Bee Lake Road side) I realized that all of the candles - except for the candelabra I had just carried into Nonnee's bedroom/bathroom - were on one side of the house - the Bee Lake Road side of the house (south facing towards the front yard and across the street from the house that used to be owned by Elsie Foose). I began to feel frightened. I felt like a puppet and someone/something was manipulating me. I wondered if everything I had just done was designed as though I performed for some other party. Those feelings made me feel watched. Feeling watched by someone/something and I did not know who or where they were. I no longer felt safe at Pluto.

Then, I remembered what Kenny King had rambled on about as we had dinner in Jackson some nights prior:
- What I understand is that Kenny went to school with my parents at Cruger Tchula Academy. Kenny and I connected on Facebook some years prior. As I remember, he was working on the design of a building (perhaps in Japan) at that time and living in San Francisco. I saw Kenny and others at my mother's class reunion at my parent's home in October 2018 (approximately).
- As I recall, I reached out to Kenny when I was in Jackson searching for an attorney to review my severance package agreement with Citi (as they recommended I do), my former employer. I had actually gone to the Barrett Law Firm in Lexington, MS, and asked them for help. The woman at the reception desk said they could not help, but wrote down the names/phone numbers of two or three attorney's she/they recommended. I contacted someone in Jackson, I think his name is/was Michael Brown. I spoke with said

attorney at his office downtown in Jackson. I remember feeling like he was telling me what to do rather than listening to what I wanted (which was to request 8 years worth of severance pay rather than 3 since I worked at Citi for 8 years: 3 as an FTE and 5 as a contractor). He (the aforementioned attorney) insisted that the negotiation with Citi was about healthcare, but he failed to explain to me why he thought that. I don't think he even read the severance package agreement before determining the severance negotiation needed to be about healthcare.

- After the meeting with the attorney, I reached out to Kenny King. We met for dinner. He rambled on for a while about some astonishing YouTube video he had seen. He said the video was of a house burned exactly in half. Kenny went on about this, sort of out of nowhere and he seemed slightly distressed about it because, as he was convinced, the house did not burn naturally (as they had said). He was convinced that something (man made) caused the house to burn down. He said there was no way the house could have burned like that on its own and that the fire had to have been caused by something else. He may have said they said it was lightning, but again, was persistently telling me that there was just no way house burned in ½ could have happened naturally.
- Kenny went on about this for long enough, that the memory of him talking about it has stuck with me, and I recalled his talking about this now that I looked back at the candles I lit at Nonnee's house.

I was frightened. What had just happened? Was it coincidental that Kenny told me that story? Was it a warning that I missed? I started feeling incredibly alone and unsafe. I felt watched and manipulated - and as though my life was no longer in my control whatsoever.

I completed my capstone research (graduate school) on PSYCOMS & PSYWAR in August 2023. Even when trying to work on that requirement (to graduate), I struggled as I was haunted by the traumatic events that disrupted my life while in Mississippi in 2019 (and again in 2020). It was nearly impossible to keep the intrusive memories at bay and I suffered from nightmares and flashbacks. What I learned, however, by completing my research on these topics informs my opinion and belief that what I experienced was an act of Psychological Warfare while in Holmes County, Mississippi in 2019 prior to calling my sister, Julia, on January 6th 2019.

Yazoo Valley Electric Power Company and/or Unknown Party

I do not know how or why the power/electricity/lights went out at Pluto (including the 'street' light) outside of the Church on Bee Lake Road. I contacted Yazoo Valley Electric Power in Yazoo City on February 6, 2025 to request information about this. See supplemental pages: Actions Previously Taken. Because I had received my 'Patient Records' from St. Dominic's which included the dates I was there and I recall the fiasco (MPR/MPB radio, lights out, candles lit) happened a day or two prior to my sister taking me to St. Dominic, I was able to provide the people I spoke with at Yazoo Valley with a time frame of which I was seeking information about. During the telephone conversation on February 6th, I spoke with two women: Mamie and Jessica. We discussed what I was looking for, and I explained to them that the account(s) were/are not in my name and I also disclosed to them that my Dad, Louie Thompson, is the Yazoo Valley Board President (full-disclosure for them and for the Court as well). Maimie and Jessica told me that they did not/do not have any record of an outage during the first week of January 2019. I informed them that even if there was not an 'outage' there should be a record of 'activity' or some sort of indication/records of the power going out because every indication I received on the night in question represented a power outage. I urged them to escalate my request. The two women, Maimie and Jessica, told me someone named Rebecca would call me on Monday, February 10th because she was OOO (on Feb 6th when I called) and would not be back until Monday. I did not receive a phone call from Yazoo Valley or anyone named Rebecca on Monday, February 6th, 2020 or any time for that matter.

It is possible that someone (and/or multiple people) manipulated the power so as to create the appearance of a power outage. I assure the Court, however, that the power was off and my claims can/will be confirmed by the woman who was caring for my grandmother (Mary Stigler Thompson who is now deceased) on the night described. Louie Thompon and/or William Thompson should be able to provide the Court with the name of the woman and/or the name of the Company hired to help care for my grandmother.

In lieu of what I have described above, I have not listed Yazoo Valley Electric Power company as a party (defendant) in this Complaint (Amended), but reserve the right to amend (again) my Complaint for Civil Case(s) (Amended) in the future as necessary and required/allowed by Law. As with all aspects of my Complaint (Amended) and supplemental pages, I believe all of my claims and contentions will be supported with evidence given a reasonable opportunity for a legal and appropriate investigation and/or discovery.

## Other: undefined

*The Next Night: Choke Hold Assault, Video of my Reaction. I was Alone, Scared and I Felt Like 'the World was Out to Get Me'. I Felt Like 'the Weight of the World was on My Shoulders and It was Too Much' for Me to Handle on My Own.*

The next night, January 5, 2019, there was a huge argument (more like physical assault) at my parent's house involving my younger sister (Cadi Stigler Appleby, who was 8 months pregnant), my brother-in-law (Will Appleby), and my father (Louis S. Thompson).

I recall speaking with Glen Manko the following morning (following the message on MPR/MPB, lights out, candles lit, etc.). I remember laying on the couch in the den of the house, near the front door (one of two) close to where the Mama dog had given birth to her puppies not long before (during a thunderstorm). Glen suggested I take a selfie with the Mama dog and send it to him. He sent that photo to my mother not long afterwards, and she (my mother) came down to Nonnee's house from her and my dad's house. She said she was going to help me find my lost car key and suddenly seemed determined to help me find the car key whereas previously she did not seem to care at all.

> The Lost or Stolen Car Key
>
> Some time prior, maybe a few weeks at most, as I had been attending bi-weekly Holmes County District Supervisors meetings open to the public in Lexington, I went to lunch with three women who were also in attendance at the Supervisors meeting that day. The name of one of the women was/is Linda Salis. I do not recall the names of the other two women. I realized, after lunch that day, that I could not find one of the car keys (the electronic one) that I had. I could only find the spare key (the non-electric car key that you have to manually stick in the door to unlock it versus clicking a button). I searched around the parking lot for it. I thought maybe I had sat it on top of my car. I could not find it anywhere. This was really frustrating because when I unlocked my car with the spare/non-electric key, the alarm went off. This was so obnoxious because no matter where I was I set off an alarm when simply trying to get into my vehicle.

My mother had suddenly garnered an interest in finding my car key. At Nonnee's house, she insisted on looking in my car for the car key even though I told her that I had already searched everywhere within my car for it. I allowed her to rummage through my vehicle and search for it. I knew that I had medication bottles in the console of my car (or packaging indicating what medication I took), but I allowed her to see as I was "taking a page out of Michael Thompson's (my cousin) book," and allowing myself to be vulnerable and unashamed as I did not think I needed to keep that a secret despite me feeling so untrusting of everyone at that point (including

my mother). I had noticed, however, that Michael left his medicine sitting out on the bathroom counter at the farmhouse. I wanted to feel safe and at home too so I let my guard down and just allowed my mother to rummage through my vehicle as she insisted on looking for my car key.

She did not find the key as far as I know. Later that afternoon/early evening (still light outside), I went to my parent's house (from Nonnee's) to ask my sister, Cadi, to administer three dewormer shots to the Mama dog.

> I had gotten the dewormer from the veterinary clinic in Yazoo City (the one that used to be operated by Jack Varner, but he was retired.) Jackie, who had worked at "Dr. Varner's veterinary clinic" for as long as I could remember, had provided me the medicine in unmarked tubes. I did not realize that until I pulled them out of the paper sack, and when I realized there was no labeling, I became nervous. Probably because my dog (Marley) had died a few weeks/months prior (in October/November 2018). When I realized that Marley was really sick, I took her to the Yazoo City veterinary clinic and saw a vet (who I later found out was only the temp/visiting vet) who quickly examined her and prescribed her a cough suppressant. I did not think that was what she needed (gut feeling), and sure enough, I was right. I later took her back to the clinic and the regular/real vet was there. He quickly did an X-Ray and told me to get Jackson to the Emergency Clinic with her as quickly as possible. This was traumatic because I lost her abruptly and I would have provided her more love and comfort at the end had I been properly informed.

Since I was feeling so uncomfortable about giving the Mama dog the medicine which she needed to protect herself and her newborn puppies, I went to my parent's house to ask Cadi if she would do it. When I arrived at my parent's house (my brother-in-law's godparents were [still] visiting - and this was the second night as I remember). I did not see anyone there except for my mom and my younger sister, Cadi (who was 8 months pregnant at the time). I think Will and his godfather were duck hunting. I remember feeling unwelcome from the moment I walked into the kitchen and saw my mom on one side of the kitchen and Cadi on the other, sitting in one of the chairs. Even so, I asked Cadi to administer the dewormer to the Mama dog. She seemed even more annoyed because of my request.

I felt as though they just really did not want me around, perhaps because Will's god-parents were visiting and as though I was an embarrassment to my family.

I did not want any trouble or to further annoy anybody so I decided to leave. I still felt like I needed to be in the company of someone though as I felt so alone. I needed someone who actually wanted me around and could just be nice to me for a little while; maybe have a conversation with me and possibly even discuss the fiasco that had occurred with the lights going

out/Mississippi Public Radio/MPB. I told my mom and Cadi that I was going to go to Mary Kay Phillip's house and drink some wine with her. Mrs. Mary Kay and I had bounced around the idea of getting together and sipping on some wine for a while. She was the only person in the vicinity that I could think of who may be able to treat me like a friend, a daughter, a sister, a niece, a cousin, a human being.

I drove to Yazoo City and went straight to Wine & Spirits on Hwy 49/Jerry Clower Blvd. I purchased two bottles of red wine (as I recall). Instead of getting back on Highway 49 and driving north, I pulled onto hwy 49 going south, then immediately into the center lane to turn left. I was going through nicotine withdrawal and wanted/needed to ease that cessation given the immense stress of the very strange happenings. In fact, I think at that point, the stress of all the strange activity was far more dangerous/acute than smoking. I wanted to pull into the gas station, formerly known as Texaco, but I felt unsafe doing so - like the people who were trying to help people stop smoking were watching me and waiting to pounce. Unwarranted feelings or not, that is how I felt. As I turned towards Sunset Blvd, I recall seeing someone in their truck wearing camouflage (like to go hunting) and I made an inappropriate and misdirected gesture by flipping a bird finger. That was not good behavior, but that is what I did. Instead of turning into the gas station, I continued up Sunset Blvd, up the hill and then while going down the hill (on the country club side of Sunset) I bumped into a brown cocker or springer spaniel dog running up the hill.

There had been stray/abandoned/lost dogs popping up all over the place in Holmes County, so when I saw the dog, I thought, gosh, here we go again. The dog seemingly was not a stray. It wore a collar and looked kept. Nonetheless, the dog was running around on the street and could be injured. Of course I picked the little guy up. I had no intention of keeping him, I just wanted to make sure he was safe until I reunited him/her with his/her owner. As I recall, I looked for the address, but got turned around. It had been 10 or 10.5 years since I last was in that area. I think I went to the house where my old classmate, T. Peaster's parents lived, but did not see anyone home. I remember seeing a garage loaded with taxidermied deer. That is not really my thing and I did not want to hang out there and wait. I was also hungry and getting hungry and I was continuing to go through nicotine withdrawal. As I attempted to find the house the dog lived in, I pulled into a driveway with a car parked next to the house which had plates/car tag/ornamental decor around the plate (or something of that nature) indicating the owner of the vehicle was a Navy Veteran. Phew! I thought, let me ask these guys. There were two people, a man and a woman. I think they were a couple - visiting or living there or a relative lived there - something like that. I asked them if they could help me locate the owner of the dog and told them I was just trying to pick up some wine and go have a few sips with a friend. They offered me a glass of wine. I took a few sips but remember rejecting anymore as I did not want to drink and drive. We contacted the owner of the dog (I do not recall if we used my phone or theirs) and the owner responded via text something like "hunting. Be back in 30 minutes." Well, I had had enough. I

informed the Navy Veterans that I was going to head back to my family's farm with the dog and we could sort it out from there (while keeping in mind that Jamie Peaster and his wife had purchased the house at Gum Grove. I had seen Jamie a time or two. He even stopped at the old church I was working to clean up and seemed excited about. He told me that I could go down to Gum Grove and stay anytime, told me where the key was and/or that it was always unlocked. Since, as I recalled, Jamie and his wife also owned a home on Sunset Blvd, in addition to the house at Gum Grove, I figured he may be able to help transport the dog back into town).

I parted ways with the veterans and drove down Sunset. I remember glancing at the cracked screen of my cell phone and seeing a plethora of WhatsApp messages coming through from the group of people (from Mexico) who I worked with in Oaxaca via Citibanamex back in August 2018 with. They were texting non-stop, in Spanish, and I just could not keep up with them as Spanish is not my first language (barely even a second language, especially back then). Instead of getting on Hwy 49 and going north towards Holmes County (including towards Mary Kay Phillip's house) and back to Pluto, I went to Shell gas station on Grand Boulevard (and I forget the cross street name) and purchased a pack of cigarettes. I felt calmer just having them. I did not smoke one as the dog and I drove to Pluto and then to my parent's house.

I pulled down their long driveway and parked before getting too close to the house because there were more than a few vehicles in the driveway in addition to Will's godparent's RV/camper. I don't remember at exactly what point I realized that Cadi and Will's dogs (Bonnie and Bougie were running around) and remembering that they (Bonnie is now deceased) were quite wild (like killing our parent's chicken's wild) so I had to keep them away from the dog I had just picked up. The dog was frightened by them - I remember that for certain. I remember first attempting to enter my parent's house through the side door (laundry room and then to the kitchen as we always did). The door was locked and that was unusual. I think at this point, I had put the dog back in my car to keep it safe from Bonnie and Bougie (windows cracked). I walked around back and I could see my mom, dad, Cadi, Will, and Will's godparent's (not sure if Cadi's friend, Meme, was still there or not) having a candlelit dinner. The ambiance looked calm, comforting, warm, inviting, but the doors were locked. Again, this was very unusual. As I recall, the dog I had picked up came scurrying around as if Bonnie and Boujie were after it and I was just trying to get inside the house (my parent's house. Like a place someone thinks is their home. I was just trying to get inside and keep the dog safe).

Cadi came around (not directly as she could have done) to the kitchen and unlocked the doors. She was not happy. As I remember, she was actually very aggressive. I was trying to say something like "please open the doors. I have a dog, please unlock the doors." As Cadi opened the doors and heard my words, she said "No, Carmen. You stole this dog," and simultaneously snatched the leash and dog from me. I did not hand her the leash/dog, she snatched it from me and accused me of stealing it." I realized that Cadi was very pregnant, but I had had enough of

this nonsense. I attempted to snatch the leash/dog back but she refused. She wasn't letting go. Will and my dad came around to join in on the apparent dispute. I remember trying to push back (verbally) on Will saying, "She is my sister!" and Will responded (yelled/angry/aggressive tone which is unusual for him) "She is my wife!" I allowed them to hold onto the leash/dog and walked over to the other side of the kitchen. I was hungry. I do not eat duck, but I was really hungry so I served myself a bowl of the duck gumbo Will had made. There was combativeness and commotion all around. I really did not understand why. Furthermore, I was exhausted because of the whole power outage/candle thing, and hungry.

I recall Will snatching the bowl of duck gumbo from my hands and the spoon or something clicked on my tooth. They were being incredibly aggressive and accusatory. Before I knew it, I could see (as if it were happening in slow motion, but it wasn't) what I interpreted as Will telling my Dad he was putting me in a choke hold (the right way). My dad, Louie Thompson, was behind me and put one of his arms around my neck so that I was sort of forced to lean back on him. At that point, Cadi, Will, and my Dad (with me in a choke hold) forcefully dragged me out of my parent's home (out of the kitchen, through the laundry room, out the door, through the carport and sort of slung me out into the driveway (remember, my car was parked a little ways down because of the vehicles and RV/camper). They chased me towards my car after they essentially assaulted me, as if they wanted me to hurry and go elsewhere. But, I could not find my car key, and they were chasing (not following) or herding me towards my car. As I looked back towards them (facing my parent's carport) I noticed that Cadi was filming me. She was filming my reaction to them assaulting me.

There is no doubt in my mind that the video Cadi filmed of my reaction to her, our father, and her husband assaulting me shined/s a false light over my character. Afterall, I had just been assaulted by my own father, my 8 months pregnant sister, and her husband. I remember screaming something to Cadi, Dad and Will - something to the effect of "Yall look like deer in headlights," and they looked so angry. I threw my phone on the ground, shattering it. The screen was already broken, but now it was inoperable. I could hear my mother coming out of the house and saw her then too. She was sort of jovial and half way laughing as I heard her say, "I didn't see anything," presumably speaking to Will's god parents (and possibly Meme). Then Will's godfather, Tom, came outside and attempted to be the peacemaker. He ushered everyone else back inside and approached me. I was crying and clearly upset. I asked him if he smoked. He said no. I asked him if he would mind if I did. He said something like "doesn't bother me." He said, "you don't really fit in down here do you?" and I responded "no, not really." He said, "Is there anybody you can call, somebody you trust?" and I responded, "Yes." Tom replied, "Then why don't you just leave?" I paused, then stuttered, "my cat... he is at Nonnee's." Tom quickly responded, "That can be arranged." I did not want to leave Ziggy (my cat) nor did I want to run away (again) as I had been running from my family, out of Mississippi my whole life. I just

wanted to feel safe. I felt so much so that I was under attack though, I had to. I got in my car and drove fast down the driveway, taking a left onto Bee Lake Road.

I drove through the Pluto headquarters. I did not stop at Nonnee's house or at the Foose house which had the lights on (probably Monk and Donald). I did not stop there and I did not stop at Bobby T.'s house (though, in hindsight, I wish I would have as I had felt safe going to Bobby T., Donald, and Monk always in the past). I was just so frightened. I drove to Hwy 49 and took a left - going north on the two lane road. I stopped in Cruger at my grandparent's house (Meme and Dede are deceased). It was cold in there and very isolated out in the woods. I could hear the sounds of my uncle's hunting dogs howling in the background. Normally, I would feel compelled to open their cage and allow them to run free, but all I could think about was safety for myself at that time. And, at that time, safety meant getting out of Mississippi as quickly as possible.

I grabbed some blankets because I thought I may have to sleep in my car, but I still did not feel safe - not safe enough to sleep in my car there. I drove to Starkville. First I drove past Will Stagger's house (Whitney Staggers Thompson's brother). All of the lights at his house were off, so I did not knock on his door. Then, I drove across town to Will and Whitney's parents (Buddy and Missy Staggers) house. The lights at their house were off too, so I did not stop and ring their doorbell. Notably, my cell phone was broken as previously described.

I drove to Walmart, parked my car and went inside. I purchased a go phone/tracfone. When I got back in my car I realized that I could not get the phone to work. I was so tired and had nowhere to go, so I drove back to Pluto to my grandmother's house. I parked my car and went into "the girl's room." I remember looking out the window and seeing what I thought was an astonishingly close and bright star (though it could have been a drone, space station, or something else). I went outside and walked out to Bee Lake Road. I walked a little ways down the road, while looking at the magnificent object. Then, I went back inside the house, to 'the girl's room,' and I went to sleep.

The next morning (or later that morning technically) when I woke up, I immediately walked into the living room and called Dr. Julius Arash Danesh (Ari), my friend at the time and former neighbor. I called him from the landline telephone at 215-939-5777, I still have his number memorized. I was too embarrassed (and exhausted) to tell him everything. Afterall, I attempted to hide the fact that I was a very regular cigarette smoker from him for the duration of our "friendship" years prior. And, I had so much pain buried (not forgotten) that during the course of our friendship that I was beginning to process properly - he never really knew the authentic person I am. Somehow, I think he already knew though. I felt that way. We spoke for a little while then he calmly said, "Call that sister of yours, the older one, the doctor. Tell her that you feel like the world is out to get you. She can help you."

I looked up Julia's telephone number in Nonnne's hand-written rolodex. I called her and said (as I recall), "I don't feel good. I feel like the world is out to get me." She responded softly, "Okay, let me call my med school friend, you know, the one you met in New York when we went to see Daniel [Foose, our cousin], the girl I went to med school with, you remember. I will call you back." A few minutes later Julia called me back and said (as I recall), "Ok, I spoke to Brenda Hines and I know what to do. I am really glad you called me. It sounds like the weight of the world is on your shoulders and it's just too much to bear. I will see you in a little while." She may have also said, "you are going to be okay," or something like that. I immediately began to feel better just because I talked to Ari and Julia, and especially because I talked to Julia. I began to feel less alone.

Not long after speaking with Julia, Aunt Sister (Laurie Thompson Metcalfe) and Uncle Leslie (her husband, now deceased) arrived at Nonnee's house as they did on weekends with pre-prepared lunch. Aunt Sister and Helene Malone, a woman who helped care for my grandmother and her home, were in the kitchen getting lunch ready. I recall fixing myself a V8 drink. Getting some vitamins and nourishment, I began to feel a little better, but by no means was I un-frightened. I was terrified and in so much emotional pain.

I walked to the back porch and let the puppies and the mama dog outside. I sat in the grass of the back yard with them for a little while. I remember feeling the sunlight on my skin and I began to feel a little better, but I was still so scared and sad.

I put the puppies back on the back porch. The Mama dog went out into the yard to have some time for herself I suppose (she had so many puppies. She needed a break). I walked to the front porch where Nonnee and Uncle Leslie were sitting. Nonnee was sitting in one of the rocking chairs and just as happy as she could be. It was cold outside, but the sun was bright and warm. I think she may have said, "Helen, could you fix us a glass of wine?" - which always tickled me. Helen seemed to be in a really good mood too. Perhaps she was entertained by all the drama, or maybe she was just happy. Bobby T. wheeled over and began showing Nonnee some artifacts while Leslie sat (back facing Bee Lake Road), stone faced. He usually chain smoked on the front porch, but I don't remember if he was smoking on this particular day. I asked Bobby T. (in an unpleasant tone of voice, as I was in an unpleasant mood), "What is that?" in reference to the artifact he was describing in great detail to Nonnee. He snapped back, "It's Art, Carmen." Then, I saw Julia's white Mercedes SUV pull into the driveway.

Julia walked to me, and quickly directed me to get into her car. She walked me to her vehicle and I got in the passenger seat. She asked if there was anything I needed from inside (Nonnee's house). I said yes and told her to get my purse, makeup/hygiene bag and small bag which were beside or already in my oversized purse. Julia went inside and quickly returned with exactly what I asked her to retrieve. We departed Nonnee's house, took a left onto Bee Lake Road, then onto

Highway 49. As we drove towards Jackson, I was crying and mumbling a variety of things. I was so sad and as I talked I became more upset, but I did not describe well or accurately what I had experienced. There is no way Julia could have interpreted what I said into what I experienced. What I do remember, however, is saying "We are just two old maids," and she responded "Yeah, we are." I also remember her saying, "We are going to get your life back." At that time, I was prescribed medication to alleviate acute panic attack/anxiety. I may have taken some of it before I went to sleep prior to waking up and calling Julia, but I don't think I took anymore of it. I did not ask Julia for it and she simply would not have had any way of knowing that I had that medicine available to me because I never told her. It is worth noting that I had never discussed the medication I was taking with Ari either. If I had, it's possible that one or both of them would have suggested I take it.

Julia drove us straight to St. Dominic's Emergency Room and parked directly in front of the ER door. We got out of her vehicle and walked inside of the ER. I was checked in and ushered back quickly. There wasn't a wait. In fact, I don't think I ever sat down in there. There may not have been anywhere to sit, but either way, I know I was checked in quickly.

## St. Dominic (Health Services)

*Important note: In addition to St. Dominic (Health Services), this Complaint may be updated during the appropriate stages of litigation to include specific people/individuals. Given the pending information from St. Dominic's / FMOLHS (and/or other affiliates) as requested on February 21, 2025 (not yet received), I do not have sufficient information to make an informed determination as to who (if any) of these potential additional defendants may be. Also, I am of the understanding that after submitting this Complaint, I should not have contact with St. Dominic/ FMOLHS. As such, I am of the understanding that such investigation and/or discovery will take place after I am afforded an opportunity to work with a Lawyer/Attorney.*

Due Process was Violated in 2019 (in addition to what happened in 2020)

Due Process and Civil Procedure were violated in 2019 too. I have yet to obtain/receive any documentation showing that Holmes County had legal authority to put a "writ" forcing me to be held at St. Dominics. Said documentation was not included in my Patient Records from St. Dominic, nor was it part of the documents that Charlie Luckett emailed to me (twice) in February 2024. Take note of the approximately 17 - 18 months gap between the St. Dominic incident and the August 31, 2020 Affidavit/September 11, 2020 hearing, and the Local Rules about combining 'like-cases'. See supplemental pages of Previously Taken Actions as I requested ACCOUNTING OF DISCLOSURES from St. Dominic and/or FMOLHS/etc. (in addition to the Patient Records received from St. Dominic in February 2025 following my request.

I signed myself in with the help of my sister, Julia Thompson (now Massey) at St. Dominic's Hospital Emergency Room in Jackson, Mississippi, in January 2019. See *Olmstead*.

On January 6, 2019, I signed myself in with the help of my sister, Julia Thompson (now Massey) at St. Dominic's Hospital Emergency Room (date included in Patient Information documents received recently from St. Dominic and the date seems correct based on what I recall). I remember being too emotional to read the sign-in information, and looked back at her over my right shoulder towards Julia. She said, "it's okay, you can sign it," or something to that effect. As I recall, we may have had a very brief back and forth about her being my medical person or something like that (but I do not remember for sure as it all happened really fast). I do not recall her signing me in, but I recall signing the paperwork myself and not being in the emotional state to read the tiny disclosure text that they required for me to be evaluated in the Emergency Room.

I also recall feeling rushed upon check in. For example, I was standing up for the duration of check in. In other words, I was handed a clip board and told to sign; I was not handed a clip board and told to look it over and sign it before being checked in even though I was not in imminent danger (like with blood gushing out from a gunshot wound). See Olmstead.

What I know, according to the recently requested and more recently provided "Patient Information" for Carmen Thompson and requested by Carmen Thompson is the following:
- Julia's phone number was listed where my phone number should have been listed. Perhaps because I had broken my phone after my father put me in a choke hold and with the help of Cadi, my sister and my father (Louie Thompson), and Will Appleby (my sister's husband) dragged me out of my parent's home.
- Julia did not sign the sign in form according to my "Patient Records" which I received in February 2025 following my request in January 2025. I recall that Julia did not sign any forms in the ER. In fact, my mental state was as such that I can remember this now (even after slightly more than 6 years).
- Julia's feedback to St. Dominic about my mental state was included in my Patient Records - all of which was hearsay and factually inaccurate (as it was apparently provided to her by my parents)
  - There is one exception that I identified which is where Julia quoted me verbatim stating "not the best thing for me," with respect to my decision to have returned to Mississippi in the first place (back in 2018) and living at my family's farm where I was clearly unwanted and in light of the PSYCHOLOGICAL WARFARE tactics targeting me (as I describe).
  - There are a variety of different names throughout my "Patient Records" from St. Dominic of St. Dominic staff who allowed this information into my record whilst not discussing it directly with me. Had they done so, I could have told them that I did not paint my face black; my face was painted orange-ish and it was done so by women who worked at the makeup counter at Macy's department store in Philadelphia. We giggled and had a bit of a fun time when we did it. My parents were not there, but I told them about it, not knowing that they would think it was so crazy (as clearly they do not understand art or the artistic side of me very well).
    - Of course Julia would have been concerned if she thought I had painted my face black. Julia knows that I cringe at the idea of someone/anyone mis-interpreting me as racist or of the character or type of person who would paint black face on my face - especially because of where we grew up as children and the pre-existing our existence history which I am sensitive to. She may be as well, I don't know.

Very soon after arriving at the ER, I was signed in and almost immediately ushered to the back and into a tiny closet-like room where two people worked on computers. I went through that

room and into another tiny room with a bed. As I recall, the whole check-in, evaluation, and decision part of this lasted about 30 to 45 minutes, but I cannot say for certain. I only saw Julia once more after I went through the doors and into the tiny room that led to another tiny room, when she popped her head through some doors and said she was going to drop some stuff off for me. She was quickly told to leave, but it was almost as though she wanted to be with me but was not allowed to be. I saw sadness and pain in her face. I wish she would have been with me the whole time and helped me get out of there as soon as I wanted to leave. At that point, I did not know they were going to make me go to another facility and most definitely did not know they were going to keep me there.

After the "evaluation" in the ER (tiny room) I was handed my clothes that I had originally had on which were at that point placed in a clear bag. I carried those and followed two women to a bus. The woman in front (the driver of the bus or shuttle) was dressed like a park ranger. You know, like you would see in a park or on a Smokey the Bear commercial. I sincerely do not know what was up with that. There was another woman too. I think she was wearing standard nurse attire - scrubs. I may have put on my pink coat and/or my sunglasses too. I remember thinking, this is strange, I look like a hot mess and I am being escorted by a park ranger and a nurse. The three of us shuttled across the street to St. Dominic's Behavioral Health facility.

I was informed that I was required to stay there for a 72-hour hold after I arrived at the Behavioral Health facility and on the appropriate floor with my possessions in a locker and taken to my "chambers" (a room with a bed and a bathroom and a camera watching me 24 hours a day). This was not mentioned to me or discussed with me when I was at the ER despite being able to communicate clearly and effectively with the people in the tiny room (and then the other tiny room) as I began to calm down - because I thought I was safe and still had the autonomy of a normal adult.

What I can tell you based on what I experienced and my memory of the events:
- There were green and white pens all over the nurses station (the area where they all huddle) with Bank Plus branding and advertising. Any person looking in that direction should have noticed them. Possibly unlike some of the other people there, I have seen many of those pens in my day just because my uncle, William Thompson, was employed there for his entire career as far as I know - first in Yazoo City, then out of the Madison office. He has somewhat recently retired. I have never had an account at Bank Plus and my father has told me that he has never banked there either - ever since Bryan Jones denied him a business loan for Thompson Fisheries many years ago. He was just like, nope, and started banking with BYC, as did I when I turned 14 years old. Still have the checking account my Dad and I opened together. It's empty though.
- Julia brought me a target bag with comfy clothes and hygiene products.

- Upon learning, first, about the 72 hour hold, I immediately began to panic and make phone calls (to telephone numbers I knew by heart and/or requested from others I was able to call). I think I first called Julia. I don't remember how many times I called her or how many times she called me but I remember that she was able to contact me even though I did not provide her with my PIN (a number I was supposed to have and share with people who I wanted to reach me by telephone).
- Some of the phrases I recall hearing Julia say to me (over a period of a few days) include (quoting as I remember):
    - "Carmen, you're tearing this family apart," as she sobbed. I think she was at my parent's house or had made contact with them.
    - "Do you remember when you had to go to court because of Kris Briles, and Dad was the only one who would stand with you?"
    - I remember being surprised that she would bring that up since it was not of my immediate concern.
    - "Dad has already called his lawyer, Katherine Barrett."
    - "Daddy put a hold on you. He already called Bill Luckett (she may have said Charlie Luckett, but I am certain she said Luckett and thinking she may have said Bill. And, I think Bill was Charlie's husband and also most often present during those Holmes County District Supervisor meetings along with Charlie Luckett, Katherine Barrett Riley and others)"
    - I didn't even know what a hold or a WRIT was at that time.
- Disclosure: this sounds crazy, but I share anyway because it is what I remember. Once when I attempted to use the telephone (I don't remember who I was calling), there was someone else on the line (they said they were from a different floor and I assumed they meant within the building). I heard them (a woman) say (as I remember) something about three pins/pens. I quickly dismissed whatever remarks I heard because it felt like someone trying to trigger a response out of me in light of things that happened prior. Notably, after reading through my "Patient Records," I see Dr. Patel continuously mentioned something about the number three many times. The number three was a triggering factor for me at that time, but I was learning how to let that go (regardless of the three syringes situation regarding the Mama dog) but was still worried about the Mama dog not getting the medicine she needed for her and her puppies. All things considered, any mention of the number three by me was due to acute stress/PSYWAR tactics/having been assaulted by my family in the days leading up to Julia taking me to St. Dominic's ER. Hearing someone mention 3 pins/pens completely out of nowhere in conjunction with Dr. Patel's remarks makes me wonder if St. Dominic hospital/Behavioral Health intentionally tried to trigger a reaction from within their confines. I request the Court to investigate this properly should the Court be able to access recordings of the calls where I was held.
- I called Ari (Julius Arash Danesh)

- o I remember him telling me that I was going to be okay and describing the effects of the medication they could possibly force upon me in very somber terms. He did not advocate for or against me taking the medicine. He said it could make me hunch over and drool a little bit. I saw a patient on the floor doing that and immediately understood perfectly well what Ari was describing.
- o There was no way in hell I was going to willingly allow them to force me to receive such medication. I knew what I had experienced and still to this day believe it to be true, and I will continue to believe that everything I experienced was real until and unless proven otherwise.
- o I knew how the legally prescribed, received, and administered medication affected me as I was prescribed one of the two medications since I was 20 years old. I had been very diligent to take the medication correctly and as prescribed for years so I definitely knew the effects of it.
  - One of the medications I was taking was to provide stress/anxiety relief during acute times of hyper-stress. Like if I was having a panic attack. I was prescribed a very low dosage and seldomly took it because it made me so tired. I should have taken this medicine before and/or after calling Julia on the morning of January 6, 2019.
  - Julia would have had no way of knowing what, if any, medication I was prescribed) to, otherwise, she may have suggested that I take it prior to her taking me to St. Dominic ER. Perhaps if I would have taken it, I could have calmly and effectively described to Julia what had happened prior to me calling her.
- I called Glen Manko. I remember Glen telling me/recommending to me, "take the medicine. Take whatever they give you. That's the only way you are ever going to get out of there."
  - o I recalled his words when I was in confinement/committed at Life Help/Grenada Crisis in 2020, after the hearing when I first took whatever medicine they gave me in hopes of getting out of there. As explained, I spit the medicine out because it was making me very sick (and I did not believe I needed it but thought I had to take it to get out).

As I remember, I only met with Dr. Patel three times (possibly four) while confined at St. Dominic's Behavioral Health facility. Our sessions lasted roughly 5-10 minutes. During each of the sessions, I remember sitting in a very small (closet size) room. He was on one side of his desk and I was on the other with my back facing the door, which I think was always left open. There was a woman in the corner who did not make any facial expressions (straight faced) and just wrote notes the entire time (she was on his left hand side. In other words, in front of me on my right hand side). Dr. Patel seemed to come up with his own conclusion which was that what I had experienced (why I became upset, called my sister, and told her I felt like the world was out

to get me) was because I was having a reaction to the medication I was taking. I did not share insight with him about what I experienced the nights leading up to Julia taking me to St. Dominic for the following reasons:

- I did not think my experiences or healthcare was any of his business,
- I felt like the truth of what I had experienced (PSYWAR and the choke hold assault) would be mis-interpretted and/or he would accuse me of being crazy/making it all up,
- I had just been driven across the street from someone who looked like a Smokey the Bear park ranger,
- St. Dominic locked me in their Behavioral Health facility against my will and did not even bother to discuss the 48 hour hold with me until I was there, but they were very quick to have me sign the paperwork in the ER even though I was taken there by my sister and clearly very emotional,
- As the days went on, I just could not believe they were allowed to keep me there against my will (in other words, I did not develop an increasing amount of trust with the people or the system of St. Dominic),
- Julia was receiving malign-information (one-sided) and I felt as though she had abandoned and betrayed me (especially by bringing up the abusive relationship I was in as a young adult over the telephone after I was confined, given that had nothing to do with me calling her on January 6th specifically),
- At some point during my time there I attempted to use the phone and the person on the line mentioned 3 pins/pens so I felt like the people there were intentionally trying to upset me,
- I was going through nicotine withdrawl, and
- I felt so rushed during the sessions with Dr. Patel and I did not know anything about his credentials (like many people, I want to choose my healthcare providers).

I did not want to stay at St. Dominic any longer. I was quite upset that during the week of January 7th I was unable to commence the tour of the Greenwood recycling plant I had organized with and for the Holmes County District Supervisors, as well as an informational interview with an FBI agent in Knoxville, TN arranged (verbally) by my cousin. I had an upcoming informational interview in Little Rock, AR with Lindsay Kinkade at the Rockefeller Foundation and did not want to miss that too as I was trying to find a job. I convinced my mother to convince my dad to remove the hold/WRIT (or as I would state it now, rescind the affidavit) by telling her the "theory" that Dr. Patel had come up with (that I was experiencing psychosis from the medication I took, despite not having observed me on the medication or knowing what I had experienced in the days prior.

# January 2019

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| | | 1 New Year's Day | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 MLK Jr. Day | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 | | |
| | | | | | | |

Calendar image taken from handycalendars.com

As shown in the documents I recently received (as requested on January 8, 2025 from St. Dominic for myself and on behalf of myself) and at least somewhat in line with what I recall, after convincing my mother to convince my father to rescind the affidavit (which he did quickly as I remember), I had to wait for Dr. Patel to return to work before I could leave St. Dominic. This is evident from Dr. Patel's notes in my Patient Records, but I do not have any of those documents as they were not included in the documents Charlie Luckett sent me in February 2024). Again, as evident from the notes in my Patient Records, none of the people working in the area to which I was confined could validate the hold (issued by Holmes County) was removed, so I waited a few additional days (through the weekend) until Dr. Patel returned to work. I was never served/provided an affidavit or any paperwork showing that I was being lawfully confined to St. Dominic's Behavioral Health facility. In total, I was at St. Dominic Behavioral Health from January 6, 2019 through January 14, 2019.

Holmes County (Chancery Court) and St. Dominic colluded with one another to hold me involuntarily in 2019. I have yet to see any paperwork (legal authority) which actually allowed them to do that. In 2020, I was denied due process and the "like-cases" were strung together, whereas in fact, the two situations had nothing to do with one another. Holmes County, Life Help/Grenada Crisis / Mississippi Department of Mental Health / Dr. Charles Small PhD took it

upon themselves to combine the cases as evidenced by both remarks in the documents I received from Charlie Luckett in February 2024 and the sham Involuntary Commitment hearing. I do not believe it is a coincidence that Katherine B. Riley (kbriley@barrettlawgroup.com) wrote "The county and Court have both searched for a copy of the hearing and been unable to find a copy. The transcript that you are requesting does not exist." See Supplemental pages of Previously Taken Actions.

Whether proven negligent and/or intentional, their actions should be held unconstitutional and in violation of Federal Law. My objective is to hold them financially liable and I am prepared to set a new precedent before the Supreme Court if that is what this comes down to.

## After St. Dominic

In 2019, I requested my Patient Records from St. Dominic. I remember picking them up in-person, but I do not recall the exact date. I remember, however, that once I began going through the stack of papers (which as I remember was noticeably thicker than the stack I received from St. Dominic in February 2025), I was so immensely triggered that I had to slowly and carefully review all those details as I could not handle the triggers (trauma) as I reviewed them, particularly in January 2020 as I also began graduate school.

After spending the summer at Middlebury in 2019, I returned to Philadelphia. I was trying to figure out how to move forward with my life. I applied for jobs and considered applying to law school (began trying to study for the LSAT at the Public Library) and considered graduate school programs. As I was attempting to study for the LSAT at the library, I was interrupted by an extremely loud group of people. They were so loud that I could not ignore them and decided that since I could not focus with all of their noise, I should see what they were creating so much commotion for. They were eating pizza and shared a slice with me. I ate it. A man walked in with a bag of peaches too. There was a preacher there too. I met a man who said he was a lawyer (public defender) but as I found out from him (then and/or as we discussed in later days), he was on probation for a year (as I remember). His name is Ben. From what I understood of the shenanigans in the library, the people there were protesting because they believe(d) that Philadelphia should be a sanctuary city for all people, not just immigrants. I found this fascinating especially as there was a very loud woman (and her young son) speaking in Spanish. I could not tell what all she was saying, but it appeared as though she was making videos and/or live streaming. Some of the people who were protesting chose to be arrested as they remained in the library after closing hours. I think the preacher was amongst the people who chose to be arrested. I remember standing across the street from the entrance of the library with Ben as we watched the arrests.

After some discussion (over a few weeks) about the St. Dominic's incident, Ben informed me (not as a lawyer, as a friend) that he thought I could sue my sister for legal malpractice. I, personally, was of the opinion that (1) I did not want to sue my sister, (2) I felt like Julia had been provided malign information from our family as I was confined at St. Dominic. In fact, I know now that I recently received my Patient Records from St. Dominic, she received false information from our family (or at least it was incorrect/mis-characterized by the time the information got back to me via records). Ben seemed to understand that I had no desire to pursue a lawsuit against my sister even though I did not share with him all of the context leading up to St. Dominic. He informed me that I could at least correct/amend the Patient Records - which was my primary concern at the time. And so, that is what I began to work towards (identifying all of the errors/mis-characterizations/etc in the records). This was a painstaking process though because so much of it was triggering for me.

Additionally, because context matters, I inform the Court:
- I asked Cadi (my sister), who is listed as my Guardian in the paperwork I received from Charlie Luckett in February 2024 for reasons I do not know or understand, directly at some point in 2019: who all did she share the video of me (post choke-hold assault on the night of January 5th approximately) with.
  - She told me via text a long list of names (I think all family members). I asked her to send it to me and she did, followed by her telling me that she deleted it and did not want to discuss it again.
  - I don't remember who all was on the list of names and I did not watch the video. I experienced that and did not need to be triggered or further abused by watching the video she recorded.

I worked on going through the pages of records while also moving and adapting to a new environment in Massachusetts and starting graduate school. Then the Covid-19 pandemic started which caused all sorts of challenges. I think I transported those records back to Pluto as I had left Massachusetts around April 2020, then spent about a month in Philadelphia, then drove south. As I drove to Pluto/my parent's home, I stopped in North Carolina for a weekend, joining my mother, Cadi, her husband (Will Appleby), and their son (a minor). After the weekend trip in North Carolina, I drove to Pluto/my parent's home. They all left North Carolina together (no one offered to ride with me nor did I ask them to). The Patient Information records I obtained in 2019 (in person) from St. Dominic may still be at my parent's house. The other possibility is that I threw them out in the trash as I was also throwing out papers, jewelry, artwork and anything else that reminded me of my family that I never see and no longer have a relationship with. The pain is and has been real and immense.

## Final Remarks on Statement of Claims

St. Dominic and Holmes County (including the Chancery Court) should be liable for damages for violating my Constitutionally protected rights in 2019. St. Dominic should also be liable for damages for the Medical Malpractice aspect of Civil Rights violations (and/or Tort Claims) with respect to 2019. St. Dominic held me within their confines, appearing to do so under color of the law and without Legal Authority (pending further legal and appropriate investigation and/or discovery). Holmes County Chancery (including Charlie Lucket - the Chancery Clerk), Life Help/Grenada Crisis (including Dr. Charles Small, PhD)/Mississippi Department of Mental Health violated due process at multiple stages of the Involuntary 'Civil' Commitment process in 2020. Katherine B. Riley of Don Barrett, PA, failed to effectively represent me at every stage (including during the sham hearing). As such, she/her firm ("of Don Barrett, PA) should be

responsible for damages due to legal malpractice (applicable under Civil Rights Violations - Section 1983).

I struggle to understand how it is possible for the Department of Justice - Civil Rights Division to have 'carefully reviewed' the report I submitted to them on September 5, 2023 and revert back to me such an insensitive and offensive response as they did on September 12, 2023, stating "How you have helped: While we don't have the capacity to take on each individual report, your report can help us find issues affecting multiple people or communities. It also helps us understand emerging trends and topics. Thank you for taking the time to contact the Department of Justice about your concerns. We regret we are not able to provide more help on this matter." See supplemental pages to AMENDED COMPLAINT FOR CIVIL CASE(S) - Previously Taken Actions.

# September 2023

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| | | | | | 1 | 2 |
| 3 | 4 Labor Day | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| | | | | | | |

Image above of calendar taken from handycalendars.com

I do not believe it is ethical or legal, is for the DOJ to use my experiences and information to support their own lawsuits and/or criminal investigations and/orcharges while ignoring the immense amount of damage all of this has done to my life, well-being, health, safety, and ability to earn a living and enjoy my life. My objective, by reaching out to the Department of Justice was not to help multiple people or communities or to help the DOJ understand emerging trends

or topics. That is their job. My objective was to seek support in my fight for justice for myself. Their careless response left me, once again, feeling abandoned and alone in my struggle to right the wrongs that have so gravely affected my life.

 Gmail

Carmen <thompsoncarmenm107@gmail.com>

**Response: Your Civil Rights Division Report - 341310-BNH from the Disability Rights Section**

**DOJ Civil Rights - Do Not Reply** <civilrightsdonotreply@mail.civilrights.usdoj.gov>
Reply-To: civilrightsdonotreply@mail.civilrights.usdoj.gov
To: thompsoncarmenm107@gmail.com

Tue, Sep 12, 2023 at 10:42 AM



**U.S. Department of Justice**
**Civil Rights Division**

civilrights.justice.gov

Dear Carmen Thompson,

You contacted the Department of Justice on September 5, 2023. After careful review of what you submitted, we have decided not to take any further action on your complaint.

## What we did:

Team members from the Civil Rights Division reviewed the information you submitted. Based on our review, we have decided not to take any further action on your complaint. We receive several thousand reports of civil rights violations each year. We unfortunately do not have the resources to take direct action for every report.

Your report number was 341310-BNH.

Image above taken from an email I received from the DOJ on September 12, 2023 in response to my complaint/report submitted on September 5, 2023. See supplemental pages to AMENDED COMPLAINT FOR CIVIL CASES - Actions Previously Taken

# UNITED STATES DISTRICT COURT
## Southern District of Mississippi

&

# UNITED STATES DISTRICT COURT
## Eastern District of Pennsylvania

## Actions Previously Taken
## Supplemental to AMENDED COMPLAINT FOR CIVIL CASE

2-25-2025

Carmen Marie Thompson

Table of Contents

September 2020 - While at Life Help / Grenada Crisis Stabilization Unit.....................................3
After Life Help/Grenada Crisis & Whitfield/Mississippi State Hospital......................................3
Requested copy of Involuntary Commitment Hearing/Transcript...............................................4
Other.............................................................................................................................................5
Petition requesting my Involuntary Commitment Case to be Unsealed - October 21, 2024..........5
U.S. Attorney's Office, Southern District of Mississippi............................................................6
Petition to the court for motion on good cause to issue an ORDER to unseal "my case" as of
December 24, 2024......................................................................................................................6
Other.............................................................................................................................................9
Filed Complaint for Civil Case(s) with the United States District Court for the Southern District
of Mississippi (Northern Division - Jackson, MS) on February 7, 2025.....................................10
Communication Log (personally maintained)...........................................................................12
Patient Records, Accounting of Disclosures............................................................................18
    St. Dominic...........................................................................................................................19
    Steve Roark...........................................................................................................................20
    Life Help / Grenada Crisis....................................................................................................20
    Whitfield / Mississippi State Hospital....................................................................................21
Communications Tracker (conversations documented during 2024)...........................................22

September 2020 - While at Life Help / Grenada Crisis Stabilization Unit

- While at Life Help / Grenada Crisis Stabilization Unit in September 2020 I repeatedly told staff that I believed my Civil Rights were being violated.
- While at Life Help /Grenada Crisis Stabilization Unit I called the Attorney General's office because I believe(d) my Civil Rights were being violated.
  - The Director of Life Help/Grenada Crisis (Daniel), handed me a post-it with a telephone number written on it as he took me from the area I was confined to and into a different area (the people who stayed in this area were at lunch or having a break outside).
  - When I called the number, a man answered and I told them what had happened to the best of my ability (notably, I think this was sometime AFTER the sham hearing). The man I spoke with told me something like "We can't help you. You can get in touch with the FBI when you get out and maybe they can do something/maybe they can help you."

After Life Help/Grenada Crisis & Whitfield/Mississippi State Hospital

- I made a report with the FBI in early October 2020 (approximately 1-3 days after being released from Whitfield) at the Jackson, Mississippi office.
  - I did not receive a file/record number, nor have I followed up with them about the information I provided. I do not recall the agent's name, but I do recall he was a man and we spoke outside.
- Sometime in 2021 or 2022 I called a number for Mississippi Public Defenders (as I recall, but I did not keep record of this). The man who answered said something to the effect of "There aint a thing we can do for you down here, darlin."
- I have pleaded with my family to have conversations on a variety of topics which have been stuck with me since the sham Involuntary Commitment hearing in September 2020, including:
  - I asked my Dad to correct the record or adjust his statements (I vaguely recall suggesting this as a solution back in 2022 or 2023)
  - I spoke with my brother-in-law in 2022 (as I recall) and he told me that he had a Private Investigator put a tracking device on my vehicle when I was at Debbie and Rocky Bond's house in West Point, Mississippi on the days prior to Holmes County Sheriff's deputies picking me up at my parent's house on Sept. 3rd 2020.
  - I have not seen my family in approximately 4.5 years with the exception of my Dad visiting me twice (one by himself and once with my mother) and my Mom (2 or 3 times by herself and once with my father when they took a road trip to Maine). The last time my mother was here (in Philly), in March 2024, I attempted to discuss with her the reality of the childhood abuse I endured. She became furious, checked herself into a hotel the following day, and left Philadelphia.

- o I wrote a letter/a card to Whitney Staggers Thompson (one of the witnesses), but she did not respond.
- o A variety of other text messages/phone calls attempting to gain closure to the immensely painful experience during which I was humiliated and picked apart without an opportunity to defend myself, whilst the Court Appointed Attorney - Katherine Barrett Riley of Don Barrett PA did little to nothing to effectively represent me.
- I requested Legal Assistance sent to AMERICAN CIVIL LIBERTIES UNION OF MISSISSIPPI on July 6th, 2023.
  - o They rejected my request for assistance on the same day per email response received from ACLU of MS's Legal Director, Joshua Tom.
- Sent email to Taylor Vance at "taylor.vance@journalinc.com" <taylor.vance@journalinc.com> on Thu, Jun 8, 2023, 4:29 PM, requesting a meeting with him after reading article 'Director of Mississippi Department of Mental Health to retire in January'.
- Submitted a complaint/report to the U.S. Department of Justice - Civil Rights Division on September 5, 2023.
  - o They responded to me on September 12th informing me that they could not/would not help me, citing insufficient resources.
- I submitted a complaint about Katherine B. Riley to the Mississippi Bar Association
  - o I don't recall the exact date I submitted the complaint but I believe it was addressed to the Mississippi Bar Association, attention Glenn Waddle.
  - o I sent an email with Word Doc. attachment in response to Katherine B. Riley's response to the complaint. This email was sent to Ogc@msbar.org - the Mississippi Bar - General Counsel (Mr. Kilgore) on March 6th 2023.

Requested copy of Involuntary Commitment Hearing/Transcript
- Requested a copy of the 2020 Involuntary Commitment hearing from Charlie Luckett (Holmes County Chancery Court Clerk) on **December 18, 2023**. I spoke with Charlie Luckett on the telephone and we agreed to speak again the week of January 1, 2024.
- **February 9, 2024** - Charlie Luckett sent me 22 pages of "court file" documents (unredacted) from luckettcharlie@yahoo.com
- **February 12, 2024** - Charlie Luckett sent me 23 pages of "court file" documents (unredacted) from charlie.luckett@holmescountyms.org
- On approximately **March 26th, 2024**, Sheila Lewis and Charlie Luckett informed me that my involuntary case was sealed.
  - o They told me my case was sealed after months of back and forth (mostly me calling to follow up with them) during which time they told me a variety of things such as "Judge Clark is looking for it on his computer in Madison," "it's on a

cassette tape and in a big box and I need a man to help me get the box," "we are still looking for it," "we moved offices so it is in the basement of the old building")
  - Throughout the course of the approximately 4 months of back and forth in my attempt to get a copy of the involuntary commitment hearing, I added others to the email thread in an attempt to find support in my pursuit of justice.
- In **late March or early April 2024** (as I recall), after feeling defeated by Holmes County once again and after months of back and forth with Sheila Lewis and Charlie Luckett who said they were looking for the copy of the recording, only to finally be told that I could not obtain a copy of the recording of the hearing/transcript because my case was sealed (**March 26th, 2024**), I was immensely upset and desperately searching for a solution.
  - I called Attorney General Lynn Fitch's office and spoke with Tony Geiger.
    - I explained to Tony (the best I could given how emotional I was) what had happened. Mr. Geiger was kind and said something to the effect of, "I am so sorry that happened to you." I was not a lawyer then just as I am not a lawyer now. I recall during our conversation me stating (in a questioning way as I was trying to understand how this scenario worked) that if I filed claims against Katherine B. Riley we (Tony and I) would be on opposing sides. Tony responded to my statement (which was really a question) with yes/confirmation that that would be the case. Tony provided me with his cell phone number and told me to call/reach out to him if/when I needed to.

Other
- I requested help from Temple Law School on February 8, 2024, but did not receive a response.
- I filed a complaint with the Mississippi Commission on Judicial Performance in 2024

Petition requesting my Involuntary Commitment Case to be Unsealed - October 21, 2024
- On October 21, 2024, I sent a petition to the Holmes County Chancery Court requesting "my case" to be unsealed, following instructions from Sheila Lewis from March 26, 2024. In fact, I called Sheila Lewis to clarify who exactly I needed to email the petition to and she told me to email it to Jordan Howard at <jhoward@holmescountyms.org>.The Petition/Attachment to the email was titled: Petition_MotionRequesting_Order_To_HolmesCoChanceryMISSISSIPPI_From_Carmen _Thompson_21Oct2024
  - Added and subsequently removed PA Representative Mary Issacson's office to the email thread

- o **November 1, 2024** - Tony Geiger added to the email thread (we also spoke over the telephone)
- o Added and subsequently removed Vangela Wade at the Mississippi Center for Justice
- o I attempted to reach Jordan Howard/Charlie Luckett via telephone numerous times and sent follow up emails without response from them.
- **November 21, 2024** - Finally spoke with Charlie Luckett over the telephone. I sent a confirmation email which included a summary of our conversation and with the remaining question directed to Jordan Howard (Charlie Luckett refused to answer over the telephone and diverted back to Jordan Howard with respect to "our lawyer"). Jordan never responded or clarified in any way.

U.S. Attorney's Office, Southern District of Mississippi
- **November 25, 2024** - I attempted to make a complaint with the U.S. Attorney's Office, Southern District of Mississippi by calling 601-973-2825 on November 25, 2024 at approximately 2:25 PM EST.
  - o I left a brief voicemail and indicated that I would continue working on my complaint/report.
  - o No one returned my call.

Petition to the court for motion on good cause to issue an ORDER to unseal "my case" as of December 24, 2024
- **December 24, 2024 at approximately 1:22 pm EST-** I send a revised petition to request an order to unseal "my case" to the Holmes County Chancery Court: "Petition to the court for motion on good cause to issue an ORDER to unseal "my case" as of December 24, 2024". This version was signed and dated
  - o I also included the names/email addresses of all individuals who to the best of my knowledge were parties to the Involuntary Commitment that happened in 2020 (including Affiants/witnesses) and/or their representatives as I recall(ed) Sheila Lewis saying something like (after months of back and forth when she told me the case was sealed), "you cannot just get a copy of the hearing there are other people that were party to your case," alluding to perhaps the people who actually were allowed to speak during the hearing would not want it to be unsealed. As such, when I made the request (for the second time) via petition (the second time signed/dated), I did my best to inform everyone who may have participated (with exception to the people whose email addresses I did not have).
  - o I replied all on December 24th to include Julia Thompson in the distribution list of emails as I mistakenly did not include her email address when I sent the first email. There was no change other than to include her in the email thread.

- ○ Between December 25, 2025 and February 3, 2025 I added and removed people included in this email distribution list. As time went on and the continued unwillingness and/or inability of people in Holmes County to communicate with me about a situation that has adversely impacted my life I became desperate for help with this matter.
  - ■ I copied a variety of emails in my desperate attempt for help with this but nothing happened.
- ○ On February 3, 2025, Katherine Barrett Riley <KBRiley@barrettlawgroup.com> responded to the email thread claiming that the transcript I had been requesting since December 2023 does not exist. I find this particularly suspicious given the amount of time that passed since my initial request to Charlie Luckett in December 2023.

| | |
|---|---|
| date: | Feb 3, 2025, 6:40 PM |
| subject: | RE: Petition to the court for motion or good cause to issue an ORDER to unseal "my case" as of December 24, 2024 |
| mailed-by: | barrettlawgroup.com |
| signed-by: | BarrettLawGroup.com |
| security: | 🔒 lecnet.com did not encrypt this message Learn more |

Image above is from the email Katherine Barrett Riley <KBRiley@barrettlawgroup.com> sent on February 3, 2025. As shown it was mailed-by and signed-by: BarrettLawGroup.com.

 Gmail

Carmen <thompsoncarmenm107@gmail.com>

**RE: Petition to the court for motion on good cause to issue an ORDER to unseal "my case" as of December 24, 2024**
1 message

**Katherine Barrett Riley** <KBRiley@barrettlawgroup.com>                                      Mon, Feb 3, 2025 at 6:38 PM
To: Carmen <thompsoncarmenm107@gmail.com>, "luckettcharlie@yahoo.com" <luckettcharlie@yahoo.com>, "harlie.luckett holmescountyms.org"
<charlie.luckett@holmescountyms org>, "jhoward holmescountyms org" <jhoward@holmescountyms.org>, Tony Geiger <tony.geiger@ago.ms.gov>,
"USAMSS.CivilRights@usdoj.gov" <USAMSS.CivilRights@usdoj.gov>, "usamss.public.affairs@usdoj.gov" <usamss.public.affairs@usdoj.gov>
Cc: Louie Thompson <tfisheries@aol.com>, Cathy Thompson <crtrnc@aol.com>, "wmtpluto@gmail.com" <wmtpluto@gmail.com>, "jathompson2@outlook.com"
<jathompson2@outlook.com>, "ceure@house.ms.gov" <ceure@house.ms.gov>, "kford@house.ms.gov" <kford@house.ms.gov>, "khoran@house.ms.gov"
<khoran@house.ms.gov>, "hzuber@house.ms.gov" <hzuber@house.ms.gov>, "cmickens@house.ms.gov" <cmickens@house.ms.gov>, "jkeen@house.ms.gov"
<jkeen@house.ms.gov>, "tjamesjones@house.ms.gov" <tjamesjones@house.ms.gov>, "ljackson@house.ms.gov" <ljackson@house.ms.gov>, "jhood@house.ms.gov"
<jhood@house.ms.gov>, "jhines@house.ms.gov" <jhines@house.ms.gov>, "sfoster@house.ms.gov" <sfoster@house.ms.gov>, "lbyrd@house.ms.gov"
<lbyrd@house.ms.gov>, "bclark@house.ms.gov" <bclark@house.ms.gov>, "aboyd@house.ms.gov" <aboyd@house.ms.gov>, "lblackmon@house.ms.gov"
<lblackmon@house.ms.gov>, "dbell@house.ms.gov" <dbell@house.ms.gov>, "Dannywarchild@gmail.com" <Dannywarchild@gmail.com>, "warnold@house.ms.gov"
<warnold@house.ms.gov>, "janderson@house.ms.gov" <janderson@house.ms.gov>, "oanthony@house.ms.gov" <oanthony@house.ms.gov>, "one-ordinary-average-
guy@pm.me" <one-ordinary-average-guy@pm.me>, "roberta_baskin@yahoo.com" <roberta_baskin@yahoo.com>, Stanford Law School <admissions@law.stanford.edu>,
Drexel Kline Law Admissions <lawadmissions@drexel.edu>, "howard@regmemphis.com" <howard@regmemphis.com>

Dear Ms. Thompson:

The county and Court have both searched for a copy of the hearing and been unable to find a copy. The transcript that you are requesting does not exist.

Sincerely,

Katherine Riley

Image above is from the email Katherine Barrett Riley <KBRiley@barrettlawgroup.com> sent
on February 3, 2025

Other
- I have added and subsequently removed a variety of individuals from my working documents/research in a desperate attempt to find someone who is willing to help with my case. These email addresses include friends and Law Schools to which I had not yet been rejected. Of course, I also informed them that any information shared was strictly in light of my efforts to achieve justice (not as a law school applicant) and removed any law school which I had copied/included in communications when they rejected my application(s) to their program(s).
- I reached out to Mary Isaacson - Pennsylvania State Representative as her office is in the neighborhood where I live. I was informed by them, however, that they cannot offer legal advice or get involved in a legal matter. They recommended that I reach out to Community Legal Services (CLS) in Philadelphia.
  - I attempted to reach out to CLS (sometime in 2024 or early 2025) at 215-981-3700 and their voice message said to contact lawyer referral service at 215-238-6333 / lris.philadelphiabar.org. I do not recall if I reached out to the latter, but I think I was getting pretty fed up with chasing lead after lead and decided that I was better off proceeding with the knowledge I have gained through my legal research.
- I have contacted several law firms/lawyers, including in Mississippi and in Philadelphia.
  - I spoke with a man back in 20222 (as I recall), but I do not recall his name. I remember that he ran a firm with his father who was also a lawyer. I remember he was kind and eventually agreed to handle the trial aspect if I could find someone up here in Philly to handle litigation. Again, I was so emotionally and psychologically exhausted from the trauma (including having to re-tell my story over and over only to hear that I was on my own) and my efforts to find a lawyer/legal support that I never followed up with him because I did not find anyone to handle any aspect of this case in Philadelphia.
  - I do not recall the other law firms/lawyers I contacted in Philadelphia.
  - I have contacted a number of firms/lawyers in Philadelphia as well, including firms/law offices/lawyers found online, neighbors, and through word of mouth.
    - One lawyer told me "lawyers don't sue other lawyers."
    - I am not a lawyer.

Filed Complaint for Civil Case(s) with the United States District Court for the Southern District of Mississippi (Northern Division - Jackson, MS) on February 7, 2025

- On **February 7, 2025** I mailed signed and dated copies of the COMPLAINT FOR CIVIL CASES (10 pages plus an additional page "Audit Trail" because I used an e-Signature/date) and an application to proceed in forma pauperis which included a supplemental attachment - Sent to the United States District Court for the Southern District of Mississippi (Northern Division - Jackson, MS)
  - o I included copies for the defendants listed in the Complaint as I was of the understanding that if/when my Pauper's Request (abbreviated as IFP for in forma pauperis), that someone from the U.S. Marhsal's Service would/will deliver the defendants a copy of the complaint
- I called the United States District Court for the Southern District of Mississippi on February 11th, 2025. According to my phone's call records I called (601) 608-4000 at 1:41 PM EST and 1:45 PM EST (each call lasting 3 minutes). Additionally, according to my phone's call history, I called +1 (601) 608-4018 on February 11th 2025 at 1:55 PM EST. I do not recall calling them three times, but it's possible and that is what my phone says.
  - o The woman I spoke with confirmed receipt of my complaint and provided me with the case number (as included in header, minus the 0s leading up to the 96), then she told me she was going to transfer me to Pat Greene (the Clerk) so that I could get my docket information.
  - o I spoke with Pat Greene and she provided me with the Case Number: 3:25-CV-96 and the Judge's initials KHJ-MTP. Pat Greene also informed me that they returned (via mail) the additional copies of the complaint to me as a courtesy and that in the future I should include a stamped envelope for any return material. She also told me that she put a copy of the required CIVIL COVER SHEET in the mail for me to fill out and return to them. I asked Pat if I would be able to access PACER for electronic filing and she said no because only lawyers/attorneys were allowed to do that, but she would send me a Pro-Se (Non-Prisoner) Consent & Registration Form to Receive Documents Electronically.
  - o I have received the returned copies of the COMPLAINT FOR CIVIL CASES (which were intended for the defendants listed), the copy of the CIVIL COVER SHEET, and the Consent & Registration form as mentioned above.
- I called Pat Greene (U.S. District Court Clerk for the Southern District of Mississippi in Jackson, MS) at 601-608-4000 on February 14, 2025 at approximately 2:50 PM EST.
  - o I asked her if I was required to complete the CIVIL COVER SHEET and reminded her that I am not an Attorney, noting the the form states "INSTRUCTIONS FOR ATTORNEY COMPLETING CIVIL COVER SHEET FORM JS 44". Pat Greene informed me that I can just scratch out Attorney and

put my name there instead as the form is required. Pat Greene and I had also discussed the fact that I want(ed) to update the COMPLAINT (revise it) and she said that was fine and that I would just mail the Amended Complaint. I also told Pat that since I am a citizen of Pennsylvania and reside in Philadelphia and I had recently learned that I am allowed to file in the State/District to which I am a citizen, that I would be filing with the U.S. District Court for the Eastern District of Pennsylvania, but since I am unsure about how to proceed with this (multidistrict litigation I presume), I would send the amended complaint for civil cases and supplemental material to both District Courts. Pat Greene told me that they (her office) only deals with Mississippi and did not say anything beyond that. I understand that the Clerk cannot offer legal advice as Pat reminded me of that the first time we spoke.

## Communication Log (personally maintained)

| Topic | Action | Date and Time |
|---|---|---|
| Petition to Holmes County Chancery Court - December 24, 2024 | Moved Roberta Baskin, Danny Rodriguez, and Chase Hansin to cc. Removed the holmescountymississippi.org email address. Added screenshots of Representatives profiles. Re-affirmed request to Luckett and Jordan. | 1/14/2025 12:55:00 |
| | Replied all and added the attachment from Dec 24th | 1/14/2025 12:59:00 |
| | Added Penn, Berkeley, and Stanford Law Schools (Admissions) to email thread (origniating on December 24, 2025) | 1/14/2025 13:35:00 |
| | Replied all, removed Berkeley Law, thanked Penn for acknowledging receipt, re-affirmed my request with Charlie Luckett and Jordan Howard. | 1/15/2025 9:11:00 |
| | Adam Moore email | 1/15/2025 9:33:00 |
| | Responded to Adam Moore's reply | 1/15/2025 10:17:00 |
| | Sent form to Senator John Fetterman | 1/15/2025 14:48:00 |
| | Called Congressman Brendan Boyle's office as per number received from Mary Issacson's office. The number is 215-982-1156. I spoke with Carl Dash. | 1/15/2025 14:51:00 |
| | Per conversation with Mr. Dash in Congressman Brendan Boyle's office, I FW (in confidential mode) the email thread | 1/15/2025 15:09:00 |
| | Carl Dash sent email stating "Ms Thompson, I need you to fill out the attached privacy release form." | 1/16/2025 9:04:00 |
| | Dash due to trust issues (on my end). Carl Dash insisted that I had to complete the form first and that we could not meet inperson until I did so and that even then they may reject to help with this matter. | 1/16/2025 14:01:00 |
| Requested support | Carl Dash called me from +1 (267) 687-1983. As communicated to him via email. I will call him at approximately 2:45. | 1/16/2025 14:22:00 |
| | Called Carl Dash at (215) 982-1156. During this conversation, Mr. Dash said that he could not open the email and that he FW it to his IT Guy, who subsequentially told him not to open it. Mr. Dash requested that I send the email not in confidential mode and that I send him/Representative Boyle's office the forms. Call lasted approximately 7 minutes. I spoke with Mr. Dash while at the NL Mailbox Store on Fairmount St. | 1/16/2025 14:46:00 |
| | Sent email FW (not in "confidential" mode) as Carl Dash said his/their IT team told him not to open it. When I FW to him I copied Penn Carey Law, Chase Hanson (That Guy email address), and Danny Rodriguez (War Child email address). | 1/16/2025 14:59:00 |
| | Printed Carl Dash email and attachment (privacy form) at NL Mailbox store | 1/16/2025 15:00:00 |
| | Drafted summary report regarding the (as I allege) violations of my constitutionally protected rights by Holmes County Mississippi and Katherine Barrett Riley in September 2020. | 1/16/2025 17:57:00 |
| Administrative | Printed draft summary report, signed, dated, notorized. Heather (at NL Mailbox Store) began to scan accordingly to fax both the privacy form and the summary report. By this point, it was approximately 6:30 PM or a little after and the mailbox store needed to shut down for the night. As agreed with Heather, we post-poned fax transmision of this information until the following day. It is possible that one fax (the one to the Bustleton location went through at that time. TBR with Heather 1/21/2024 when she get's to the shop around 1 PM | 1/16/2025 18:30:00 |
| Requested Support | Updated draft summary report. Named Addendum_BRIEF. | 1/17/2025 8:30:00 |

| | | |
|---|---|---|
| Administrative | Addendum_BRIEF sent to NL Mailbox Store. | 1/17/2025 8:32:00 |
| Petition to Holmes County Chancery Court - December 24, 2024 | Updated addendum again and included Penn, Stanford, and Drexel via Share mode in Google docs. Named "BRIEF_01-17-2025_Carmen_Thompson_downloaded_1134AMEST" | 1/17/2025 11:34:00 |
| Requested Support | Emailed NL Mailbox store (Heather) and requested her to print the revised document. I infomed her that Brother (my dog) and I would be over to the store soon to print, sign, etc. | 1/17/2025 11:37:00 |
| Administrative | I signed and dated the updated BRIEF addendum. Heather nototized it. She and I synced regarding the fax locations the documentation was to be sent. Heather advised me that it would be better for everybody if I gave her some time to send the faxes (according to the origianlly blue header text on the privacy forms which listed the offices of Rep. Boyle). Heather mentioned that it was going to take a long time to send all the pages to the various fax numbers. I obliged. Time is approximately the time I went to NL mailbox store. Refer to "Communications Management Report TX/RX" as provided to me from Heather for specific times of faxes sent (according to NL Mailbox store owner, Heather). | 1/17/2025 12:00:00 |
| Administrative | I picked up the one-sided copies (as necessary to be scanned and faxed) and communications report from Heather. Time is approximate. | 1/17/2025 16:00:00 |

| Topic | Action | Date and Time |
|---|---|---|
| Requested Support | I sent email to Carl Dash with the following in cc: Penn Carey Law <contactadmissions@law.upenn.edu>; Penn Carey Law Admissions <admit6204@law.upenn.edu>; Dannywarchild@gmail.com; one-ordinary-average-guy@pm.me; Stanford Law School <admissions@law.stanford.edu>; Drexel Kline Law Admissions <lawadmissions@drexel.edu>; nlmailboxstore@gmail.com Attachments included front and back of the origianal flyer from Brendan Boyle's office and picture/screenshot of the "Communications Management Report TX/RX" | 1/17/2025 17:38:00 |
| Petition to Holmes County Chancery Court - December 24, 2024 | I sent a follow up email to Carl Dash and in cc: Penn Carey Law <contactadmissions@law.upenn.edu>; Penn Carey Law Admissions <admit6204@law.upenn.edu>; Dannywarchild@gmail.com; one-ordinary-average-guy@pm.me; Stanford Law School <admissions@law.stanford.edu>; Drexel Kline Law Admissions <lawadmissions@drexel.edu>; nlmailboxstore@gmail.com; RepIsaacson@pahouse.net. I identified some irregularities in the "Communications Management Report TX/RX" (which I will discuss in person with Heather 1/21/20225 in the afternoon), and requested Carl Dash to confirm receipt and advise whether or not it is necessary to continue trying to fax the office locations that the fax report said the transmission did not go through. I also added in cc. Mary Isaacson's office in case her office is able to help with communication logistics (especially in light of the fact that Susanne, in her office, provided me with Rep. Brendan Boyle's telephone number previously, and becasue Mary's office is located near where I live). | 1/18/2025 14:59:00 |
| Administrative | Went to NL Mailbox store. Meredith informed me that Heather will be in at 1 PM today, so I will go back and speak with her this afternoon. I went at approximately 10 am | |
| Petition to Holmes County Chancery Court - December 24, 2024 | Added Drexel and Stanford to Google spreadsheet tracker (VIEW) mode and adjusted others invited (share) from commenters to viewers. synchrony since no one was commenting anyway - or commuticating with me about any of this at all for that matter. Approximately 1:15 PM | 1/21/2025 13:15:00 |
| Requested Support / Administrative | I walked to NL Mailbox store again. Heather and Meredith were there. I spoke with Heather. Basically, the only fax that went through (with a confirmation) is on Girard. Pending Carl to engage in dialogue/conversation/acknowledge receipt and communicate accordingly before I spend more time and money (and before NL mailbox store spends more time) trying to communicate with this Carl guy who I do not even know (same goes for Brendan Boyle) they (Brendan Boyle's office and/or Mary Isaacson's office - in light of them giving me the telephone number) need to communicate directly and completely with me! I went to NL mailbox store at approximately 2 pm | 1/21/2025 14:00:00 |

| Topic | Action | Date and Time |
|---|---|---|
| Requested Support | called +1 (267 687-1983 (the number Carl Dash called me from on the 16th at 2:22 pm). The phone rang and rang, but no one answered. | |
| | called (215) 982-1156. The phone rang and rang, but no one answered. Spoke with Michelle. She said that Carl is OOO and will return on Thursday. She said she would give him the message. She said I could call back on Thursday. Not helpful. These people seem super shady! | 1/21/2025 15:13:00 |
| Petition to Holmes County Chancery Court - December 24, 2024 | Called Holmes County Chancery Court (clerk's office) at (662) 834-2508. Requested to speak with Charlie Luckett. Ms. Luckett said that I need to submit a 1040 form. Basically, she demanded that I submit the 1040 form in addition to my origianl pauper claim which based on a quick scan of Mississippi Courts pauper forms they seem to all require an individual to be a resident of the state of Mississippi to file a simple pauper form. So, now I need to file my taxes early for 2024 so as to stay in synch with the IRS and because a 1040 form is standard when filing taxes. I am going to to review my 2023 taxes for the form as well because I made this request on December 24th to Ms. Luckett and becasue 2024 taxes are not yet due to be filed. | 1/21/2025 16:18:00 |
| Administrative | Began working on my 2024 taxes so that I can provide luckett with a 1040 | |
| | Carl Dash confirmed receipt of fax via email. I responded to him at 11:19 AM. | 1/23/2025 8:44:00 |
| Requested Support | Digitized documents faxed to Carl Dash | 1/23/2025 13:15:00 |
| | Emailed Stanford, Penn, and Drexel digitzed copy of what was faxed to Carl Dash on 1/17. | 1/23/2025 13:40:00 |
| Petition to Holmes County Chancery Court - December 24, 2024 | Sent follow up email to "origianl" thread + people/entitites added and - people/entitites removed since then. In the "update" email, I included the digitized copy of the BRIEF addendum and other documents faxed to Carl Dash (Rep. Boyle's office) on 1/17.

The TO distribution list: luckettcharlie@yahoo.com, "harlie.luckett holmescountyms.org" <charlie.luckett@holmescountyms.org>, "jhoward holmescountyms.org" <jhoward@holmescountyms.org>, kbriley@barrettlawgroup.com, Tony Geiger <tony.geiger@ago.ms.gov>, usamss.civilrights@usdoj.gov
The CC distribution list: Louie Thompson <tfisheries@aol.com>, Cathy Thompson <crtrnc@aol.com>, wmtpluto@gmail.com, howard@regmemphis.com, jathompson2@outlook.com, usamss.public.affairs@usdoj.gov, ceure@house.ms.gov, kford@house.ms.gov, khoran@house.ms.gov, hzuber@house.ms.gov, cmickens@house.ms.gov, jkeen@house.ms.gov, tjamesjones@house.ms.gov, ljackson@house.ms.gov, jhood@house.ms.gov, jhines@house.ms.gov, sfoster@house.ms.gov, lbyrd@house.ms.gov, bclark@house.ms.gov, aboyd@house.ms.gov, lblackmon@house.ms.gov, dbell@house.ms.gov, dannywarchild@gmail.com, warnold@house.ms.gov, janderson@house.ms.gov, oanthony@house.ms.gov, cwharton@randomhouse.com, one-ordinary-average-guy@pm.me, "roberta_baskin@yahoo.com" <roberta_baskin@yahoo.com>, Penn Carey Law <contactadmissions@law.upenn.edu>, Stanford Law School <admissions@law.stanford.edu>, Drexel Kline Law Admissions <lawadmissions@drexel.edu>, Penn Carey Law Admissions <admit6204@law.upenn.edu>, "Dash, Carl" <carl.dash@mail.house.gov>
------------Your message to cwharton@randomhouse.com has been blocked. (as shown previously)
---------------------- also, it seems that howard@regmemphis.com may have been mischievious and included "himself" in cc when he replied | |

| Topic | Action | Date and Time |
|---|---|---|
| Administrative | Completed Federal and State taxes (so now I have the 1040 form). | 1/23/2025 15:07:00 |
| | Requested NL Mailbox store to print. | 1/23/2025 15:11:00 |
| | Printed all State and Federal tax documents, signed them, etc. | 1/23/2025 16:00:00 |
| | Found out that I do not have to File taxes because I am so poor | 1/23/2025 16:00:00 |
| Petition to Holmes County Chancery Court - December 24, 2024 | Sent email to Charlie Luckett, etc (same DL as above) stating that I do not have to file a 1040, and requested Luckett to tell me what she needs in order for me to prove to her that I am poor. Again, message to cwharton@randomhouse.com has been blocked. | 1/23/2025 17:00:00 |
| | Emailed Luckett/all (see DL above) copies of documents shared with LS which allowed me to continue receiving healthcare. Removed the randomhouse email (see above notes) | 1/23/2025 17:37:00 |
| | Replied all with same message sent at 5:37 to include the Confidentiality Notice in my signature. | 1/23/2025 17:40:00 |
| | Replied all with a minor edit clarifying that I meant to write December 24, 2024 not December 24, 2025 | 1/23/2025 17:49:00 |
| Requested Support - DENIED | Carl Dash sent me an email stating that "Because it is a legal/court issue and does not concern a federal agency I've been instructed to direct you to seek legal counsel. Two resources for you to contact: Philadelphia Bar Association Legal Referral Service – 215-238-6333 Philadelphia Community Legal Service – 215-981-3700," however because I have already attempted to reach both of these resources for legal help and/or they do not provide services applicable to my needs for this particular matter, these resources are not helpful and I will continue to advocate and represent myself (legally, pro so). | 1/24/2025 9:42:00 |
| Requested Support - INFORMATIVE (but I already knew what he said) | Carl Dash also confirmed by email "The Mississippi Public Radio is owned by the Mississippi Authority for Educational Television, which is an agency of the state of Mississippi." This is important as the Public Radio / lit up house after power went off matter will be part of the lawsuit. | 1/24/2025 12:02:00 |
| | printed copies of LS Financial Support application form and 1040 at NL mailbox store and redcated private/personal information to the best of my ability. I marked up the documents in red ink to indicate these copies were being sent to Charlie Luckett. I applied date/time and my signature, then emailed digital copies to myself. | 1/27/2025 15:00:00 |
| | Emailed Charlie Luckett the two attachments of documents printed, redacted, and digitized/emailed to myself from NL mailbox store. Removed 2 email addresses for Penn Carey Law as I discovered in the Law Hub app that they Declined my application on 1/22/2025 | 1/27/2025 15:58:00 |
| | called charlie luckett. she received the two attachements and said she would "talk to our judge." | 1/27/2025 17:36:00 |
| | sent follow up email to every person in the email DL from 3:58 PM an update following conversation with Charlie Luckett | 1/27/2025 18:20:00 |
| | Called Charlie Luckett (662-834-2508) at 3:50 CST. I was transferred to her line then a woman named Ebony picked up and said Ms. Luckett had stepped away. Ebony took a message as I re-explained what Luckett and I spoke about earlier in the week. I explained to Ebony that I wanted to know if Charlie had "gotten a hold of" the judge. I gave Ebony my telephone number and she said she would pass the message to Ms. Luckett | 1/31/2025 16:50:00 |
| | Called the Chancery court's office again (same number) and spoke with Ebony. She said she gave Ms. Luckett my message but that Ms. Luckett had someone in her office. I asked Ebony what time they leave the office and she said 5 pm. I asked her to ask Charlie Luckett to call me before she leaves the office. | 1/31/2025 17:36:00 |
| Petition to Holmes County Chancery Court - December 24, 2024 | Sent follow up email to group thread directed towards Ms. Luckett with update from 1/31/2024 at 5:50 pm | 1/31/2025 17:50:00 |
| | I called the Holmes County Chancery Court's office. Ms. Luckett was at a board meeting so I asked to be transferred to Jordan Howard. The voicemail said she was on the phone. Her mailbox was full so I could not leave a message. | 2/3/2025 10:49:00 |

| Topic | Action | Date and Time |
|---|---|---|
| | I called again and spoke to the nice lady who answered the phone previously. I left a message simply asking Ms. Luckett to call me and left my phone number. | 2/3/2025 10:52:00 |
| | I called Holmes County Chancery Clerk's office and asked to speak with Charlie Luckett. I was transferred to a different line and the phone rang. Ms. Luckett did not pick up the phone. I got a voicemail and the message said the person at extension 404 could not receive any more calls (voicemail box full) | 2/3/2025 15:15:00 |
| Petition to Holmes County Chancery Court - December 24, 2024 | I called the Chancery Clerk's office again. Before I could complete what I was saying, the "nice lady" I spoke with several times already said hold on one minute and transferred me. An unusual message came on and said "the number you have called is incorrect. Please check the number and dial again." | 2/3/2025 17:07:00 |
| | I called again. Someone else answered (the voice sounded familiar - maybe Ebony or Jordan Howard). She said "I think she is in a hearing right now, hold on one second and let me check." She then placed me on hold. I asked who was speaking when the woman returned. She said her name is Ebony. She said all she could do was relay the message and I simply underscored that I have called multiple times and Ms. Luckett appears to be avoiding me. I mentioned communication and the need for it on Ms. Luckett's end. The total call time was roughly 2 minutes. | 2/3/2025 17:08:00 |
| | Sent Email update to all - attention Charlie Luckett | 2/3/2025 17:30:00 |
| | Katherine Barrett Riley email from Barrett Law Group email address. She stated that the transcript I have requested does not exist and that the County and the Court have looked for it. This was the last email in this particular group thread. | 2/3/2025 17:14:00 |
| Investigation/Request for Information | called Yazoo Valley at 662-746-4251 (though I see in my hand written notes 3372, and I do not recall what that umber is for/to). I spoke with someone named Jessica and by the end of the converdation was on the phone with two people - I requested their names as I could tell I was speaking with two different people and that is when I was informed that I was speaking with someone named Mamie in addition to the woman my conversation began with (her name was Jessica). According to those two women, someone named Rebecca was supposed to call me on Monday, 2/10 as she was OOO. Call lasted roughly 12 minutes. Notably, no one from Yazoo Valley (named Rebecca or otherwise) called me on Monday, 2/10 according to my call log/missed/received calls. | 2/6/2025 16:56:00 |
| COMPLAINT FOR CIVIL CASES V1. MAILED TO U.S. DISTRICT COURT for the Southern District of Mississippi on 2/7/25 | called U.S. District Court for the Southern District of Mississippi (601-608-4000) and confirmed address | 2/7/2025 13:39:00 |
| | mailed complaint, 9 copies of the complaint, and pauper's form | 2/7/2025 16:15:00 |
| | Called U.S. District Court and was provided a case # then transfrered to the line with person who has docket information. Reached the VM of Pat Greene. Left VM with my name and telephone number. | 2/11/2025 13:40:00 |
| | Called the District Court (clerk) back (same number as before which is 601-608-4000) to inform her that I reached Pat Greene's voicemail. She told me that Pat is in the office and she will contact me. I also asked the woman who answered (both previously and this time) about PACER. She said that if/as a pro-se litigant I will have to mail or hand deliver documentation. As far as leveraging PACER that will need to be sorted out as the case evolves. | 2/11/2025 13:45:00 |
| | Pat Greene called me from +1 (601) 608-4018 at 1:155 PM in the District Court Clerk's office called me back. We discussed a few items including: she mailed a packet including the required cover sheet and other information to me, she confirmed that I will not be able to file electronically but that I can receive confirmation when something is electronically filed (She said she would send me that form) and those filed docuemtns will be mailed to me, I can mail the court the ammended complaint form (emphasis to ubpdate IV. Relief section) as she and I discussed. Because she said she would prefer to receive it all at once, I am planning to send the updated / ammended complaint form along with the other required material (as per our conversation) which is in the mail. The call lasted roughly 12 minutes. I wonder, is she the woman who told me "what I needed to do" prior to my filing the complaint with the "Comission on Judicial Performance"... | 2/11/2025 13:55:00 |

| Topic | Action | Date and Time |
|---|---|---|
| Investigation/Request for Information | I called Mississippi Community College Board at 601-432-6480 in accordance with their form which says "Please submit this request (Request for Pbulic Records) to one of teh following" which includes "By U.S. Mail", "By facsimile", and "By email". After ringing for longer than average time, I received a message that said something like "your message cannot be completed at this time.....", "welcome to Verizon wireless...." | 2/12/2025 17:10:00 |
| Request for Information / Conversation with my Dad, Louis S. Thompson | I spoke with my Dad, Louie Thompson. Not in my wildest dreams would I have ever thought that I would have to add his name to a communications tracker regarding a legal situation, but here I am. I begged him to tell me if he had anything to do with that night the power went out (the night I was listening to MPR/MPB in my car when the lights went out. This was also the night prior to him, Cadi, and Will assaulting me -- Dad putting me in a choke hold and they dragged me out of my parent's house). I described what happened to him (again) - telling him that I was driving down Bee Lake Road, what I heard on the radio, that I turned around and went back to Nonnee's house to check on her, lit the candles, and that I (at that point) recalled what Kenny King had told me when he and I met for dinner prior to this all actually happening. My Dad told me he knew nothing about it. He also said "See, to me, that sounds crazy!" I told him that just because he thinks something is crazy does not mean that it is or that it did not happen. I quickly rapped up the conversation with my Dad as I could feel myself being triggered by this conversation. I just needed to ask him one more time about all this becasue I know that he is on the Board (and in fact the President of the Board at Yazoo Valley) and I just find it hard to believe that he would not know anything about this. I wanted to ask him becasue the last thing I ever want to do is to hurt my dad or get him into trouble. He insisted, however, that he knew nothing about it. Notably, I had asked my Dad some nights prior (when we talked on the phone) if I wanted information about power outages/etc. from Yazoo Valley how would I go about getting that since they are a private company. He said he did no really know and I should just call them and ask (which is what I ended up doing and was going to do anyway). The last point I need to mention here is that if my Dad is telling the truth and let's assume for a minute that Yazoo Valley had nothing to do with that. What happened then? Who flipped the power/lights out? This is a question I must raise with the Court | 2/17/2025 17:30:00 |

Patient Records, Accounting of Disclosures

Since December 2024, I have been making efforts to obtain my Information from a variety of Healthcare providers. Below I have provided information to the Court from my Communications Tracker with respect to St. Dominic/Franciscan Missionaries of Our Lady Health System, Life Help/Grenada Crisis Stabilization Unit, Steve Roark (because his name was audibly mentioned during the Involuntary Commitment hearing), and Whitfield/Mississippi

## St. Dominic

| Action | Date and Time |
|---|---|
| Called St. Dominics at (601) 200-6830. The lady I spoke with said they are just waiting on the doctor to sign off. | 1/22/2025 16:19:00 |
| Called St. Dominic again (at 601-200-6830) on 1/29/2025 to request an update. The woman I spoke with said they are in back office. The doctor signed off and now they are just checking to make sure they have all the records. The woman I spoke with said they (the records) should be put in the mail today (Wednesday, 1/29/2025). | 1/29/2025 13:56:00 |
| Called St. Dominic again (at 601-200-6830) on 1/30/2025 and spoke with Leon. He said that the records have been processed and they should be shipped out this evening or first thing in the morning. | 1/30/2025 16:08:00 |
| called St. Dominic (at 601-200-6830) and spoke with Leon to verify that the information I requested was in fact put in the mail. Leon informed me that it went out on the 29th (in the mail). | 2/3/2025 17:14:00 |
| I called CIOX Health at 1-800-367-1500 on Thursday, February 6th at 12:22. The call lasted 3 minutes according to the records on my telephone (as I am updating this tracking record on 2/14. I am thinking that I requested a call back (but 3 minutes seems like a long time to wait just to request a call back). At 12:37 I received an incoming call from "CIOX HEALTH LLC" as shown on my cell phone device. There is not a verication check mark provided by Verizon. The call lasted 4 minutes according to the information stored on my hardware device. When I spoke with the woman (Whether it was in the first of second call, I really just cannot recall right this second, she told me the department or LLC she was in only provides/d information about payments. I see that now as I look back at the sheet I took the number from "PAYMENTS ONLY" and she informed me that for questions about the information contained in the records, I would have to speak directly with St. Dominics | 2/6/2025 12:30:00 |
| called St. Dominic (at 601-200-6830). Spoke with Bria. Our conversation lasted approximately 7 minutes. I asked her about: (1) where is the record showing that I obtained my records in 2019? (2) where is the information about the legal authority to keep me held in the hospital? ... Per our conversation, she said they would not have any information/documents pertaining to the affidavit (number 2 in the items I wanted to discuss) . As we discussed number (1) we also incorporated the fact that I picked up my records in 2019 and there is no idication that I did so. We also discussed what is shown on the bottom left of page 1 of 48 of the records I recently received "Registration last updated by Thompson, Mary..." As discussed with Bria, this point also needs clarification. Bria told me to call back tomorrow morning around 9 am CTS (10 am EST) to speak with Beck (the supervisor in the Medical Records department). Becky's phone number is  601-200-6834 | 2/19/2025 17:24:00 |
| Called St. Dominic's Medical Records supervisor, Becky Mccullough (Medical Records) at 601-200-6834. I explained to Becky that I did not see in my Medical Records if/when any individual (party) obtained my medical records and that I knew someone had because, I obtained my Medical Records from St. Dominic at some point in 2019 directly/in-person, and I did not see any record/indication of that in the pages I received recently. Special report/special request that I have to do is request records about who/if anyone obtained my records and what was the legal authority to do so. Request for Accounting of Disclosures. Becky said she will email me a the form. I provided her with my email address. Waited on the phone while she got the form(s) together so that she could email them and I could verify that I received the forms while we remained on the phone.  I sent the forms back to Becky at her email then she will FW to data integrity then they will reach out to me and Becky will no longer be involved (according to our conversation). When Becky and I hung up, I had not yet received her email, but I informed Becky that I would be on the look out for it and call her back if I don't receive it. We chit-chated a little/small talk (mostly me, be friendly, with mild candor). Becky asked for my contact phone number so that she could share it with who she is going to to send the completed forms to after I complete them and send back to her.  The call lasted for a total of approximately 14 minutes. | 2/20/2025 11:05:00 |
| email received from Becky: Rebecca.Mccullough@fmolhs.org | 2/20/2025 |
| printed forms received from Becky | |
| converted completed froms to digital and emailed to myself | 2/20/2025 17:45:00 |
| emailed completed forms (digital copies) to Becky at Rebecca.Mccullough@fmolhs.org. Forms said St. Dominic, but I also clarified for Becky the request is for FMOLHS and/or any entity that may have purchased St. Dominic | 2/20/2025 18:31:00 |

## Steve Roark

| Action | Date and Time |
|---|---|
| Called Steve Roark | 1/14/2025 16:00:00 |
| Called Steve Roark. Left Voicemail | 1/15/2025 11:46:00 |
| Called Steve Roark (+1 (662) 571-7803) at 4:09 & 4:15 on 1/22/2025. No answer (again). | 1/22/2025 16:09:00 |
| called Steve Roark at +1 (662) 571-7803. No answer. Left voicemail (again) | 1/29/2025 13:22:00 |
| called Steve Roark at (662) 263-9823. Received the same voicemail that I received when I called the 571-7803 number. I left him a voicemail (again). | 1/29/2025 13:28:00 |

## Life Help / Grenada Crisis

| Action | Date and Time |
|---|---|
| Called Life Help Main Office (Greenwood): (662) 453-6211. Pressed 4 for medical records. Spoke with a woman and provided her my name and birthday as well as where I am located (Philly) and location of "services". She told me to hold on then someone else came to the phone. I was transferred. The (second) woman I spoke with asked for my birthday, location, location of "treatement" and said they would need to send me a release of information form. She was wondering how to get that to me in Philly. I asked her if they could email it to me and the woman said that her manager would not do that but she would ask. The woman also told me there is a $20 fee for records. The second woman I spoke with (named Ann), after speaking with her supervisor), said she is putting a release form in the mail. I provided her with my mailing address. The form she is sending me has to be signed and witnessed (not necessarily by a notary) as discussed with Ann. | 1/29/2025 13:39:00 |
| I called Life Help/Grenada Crisis (the Grenada location) at (662) 227-3700 at 4:40 PM and spoke with a woman named Debra. As I explained to Debra, I was wondering if Daniel was still the Director. Debra told me that he was no longer there. She asked if I wanted to speak with the new Director, so I explained to her why I wanted to speak with Daniel. The reason being I wanted to confirm the number on the post-it that Daniel provided me when I was there and claiming that my rights were being violated. I think it was the Attorney General, but it's possible that I am incorrect - afterall, he handed me the telephone on a post-it and then allowed me to make a "private" phone call while the other group was on break or eating . When I called the number Daniel provided me and spoke with a man, I did my best to explain what was happening to them (of course, under immense duress. I do not recall if this was before or after the hearing... I think after). The person I spoke with said something like "naw, we can't help you. maybe contact the FBI when you get out and maybe they can help you." As I explained to Debra during this conversation on 2/4/25, this information will hopefully be in the information I receive from Life Help but as of today, I am still pending the release of information form in the mail as the woman in Greenwood I Spoke with insisted that it had to be mailed to me (cannot retrieve online - strange). Debra informed me that Sonya Aycok is now the Director (replaced Daniel). I remember her name/her from when I was there back in 2020. She was the "therapist" and as I told Debra during this call, I don't think that Sonya and I connected in any meaningful way. Those details are irrelvant to this note, but certainly relevant in terms of the "care" or "treatment" I received as ordered by the court. | 2/4/2025 16:40:00 |
| received Life Help forms | 2/4/2025 17:00:00 |
| Purchased Money order of $20 using coins at ACME as this was required by Life Stance so that I could obtain my records. | 2/6/2025 23:13:00 |
| mailed Life Help forms (certified mail) | 2/6/2025 15:00:00 |

## Whitfield / Mississippi State Hospital

| Action | Date and Time |
|---|---|
| Called Mississippi State Hospital at (601) 351-8000<br>Was transferred, then transferred to legal. Spoke to Amanda. She said I fill out an authorization form.<br>Received form. Spoke with Amanda about the fee/prices per page. I asked her about pauper's affidavit. She suggested I speak with Janet French. Transferred me to Janet.<br>Janet and I discussed reducing the cost using electronic formatting. She also said she was going to speak with their director and look into the pauper's affidavit.<br>Janet took down my telephone number so she can call me back today to discuss the most cost effective way to go about me obtaining this information. She never called me back | 1/15/2025 12:07:00 |
| Sent Authorization form to Whitfield from Northern Liberties Mailbox Store. Heather signed and notorized. | 1/15/2025 13:30:00 |
| Called Mississippi State Hospital (Whitfield) at (601) 351-8000 and spoke with Janet French. She could not find my request that was sent on 1/15 via fax and said that she would have to "get with Amanda" about that but Amanda is OOO. I informed Janet that I could email her a copy of the documents/forms I faxed on the 15th, along with the fax report. her email address as she provided to me over the telephone is janet.french@msh.ms.gov. | 1/22/2025 16:23:00 |
| Janet (at Mississippi State Hospital/Whitfield) called me back and said she located the documents that were faxed on 1/15. She pointed out that I needed to update the form so the "Release TO" section was updated as I inadertanly did not update that previously. She also told me to include my email address because otherwise the documents would be (hard copy) mailed to me. I added my email address in the Release To section, though I had actually already completed the form correctly in requesting the information to be released electronically. My email address was included on the fax cover sheet which I emailed to Janet. Additonally I updated the form so that my email address is very clearly the destination for this information. I scanned the information and emailed the digital copies from NL mailbox store. Sent email to Janet from computer at 211. | 1/22/2025 17:37:00 |
| Janet French at Whitfield emailed me a zipped copy of my Protected Health Information at no charge. I responded to her email at 11:26 AM. | 1/23/2025 10:13:00 |
| Spoke with Janet French at Whitfield with some questions (primarily from the Legal Chapter of documents she sent to me). Based on my analysis and further expaned upon based on conversation with Ms. French, it is clear of some points that will be added to Litigation/Trial arguments. | 1/24/2025 15:50:00 |

# Communications Tracker (conversations documented during 2024)

## March 2024

*The following communications log came directly from my Verizon call log (columns with headers in dark blue, A-C and E-F). Columns D, G, and H are inputs from me. Row 1 is frozen and duplicated in the below images to retain formatting consistency.*

| | Date | Time (EST) | Destination | transcription | Number | Minutes | To/From | comments |
|---|---|---|---|---|---|---|---|---|
| 2 | 03/22/2024 | 5:52 PM | LEXINGTON | Outgoing call | 662-834-2508 | 7 minutes | Chancery Court Clerk - Charlie Luckett | On Friday, March 22nd, after reading Sheila's respopnse that Judge Clark checked his computer in Madison for a copy of the recording but couldn't find it, and she suggested I reach out to Charlie Luckett, I had even more questions. In Madison --- was the hearing in Lexington or Madison (I realized that perhaps I needed to question this also). Why would Judge Clark check his computer for a copy of the recording when I had previously been told it was on a cassette. So, I finally reached Ms. Luckett at approximately 5:52 PM EST. During this conversation, Ms. Luckett said that they had not yet found the recording and that it was on a "micro-casette." I asked her why Judge Clark was looking on his computer for it if the recording was on a micro-casette, and she did not have an answer. She then said that the hearing/case was closed and that I would need someone to transcribe it for me. The transcription point was well taken, and in fact, I assumed the recording would likely be transcribed from the beginning, but she now used these words, whereas previously she had not done so. Ms. Luckett also - and for the first time - said the case/hearing was "Closed" and she would not tell me anything else other than to ask / call Sheila. So, I sent an email to both Sheila and Charlie Luckett at 6:12 PM EST on Friday, March 22nd. |
| 3 | 03/22/2024 | 5:51 PM | LEXINGTON | Outgoing call | 662-834-2508 | 1 minutes | Chancery Court Clerk - Charlie Luckett | Someone answered, said to let them check if she was available, transferred me, someone picked up and hung up on me. |
| 4 | 03/22/2024 | 5:02 PM | LEXINGTON | Outgoing call | 662-834-2508 | 5 minutes | Chancery Court Clerk - Charlie Luckett | Briefly spoke with a woman/transferred, but Ms. Luckett was not available. Call lasted closer to 4 minutes. |

| | Date | Time (EST) | Destination | transcription | Number | Minutes | To/From | comments |
|---|---|---|---|---|---|---|---|---|
| 5 | 03/22/2024 | 5:01 PM | LEXINGTON | Outgoing call | 662-834-1285 | 1 minutes | Judge Clark's office - Sheila Lewis | no answer. Voicemail for an extension. (8 second call) By Friday, March 22nd, I had not heard anything back from Sheila, so at 10:46 AM EST I sent an email to her with a reminder that I was expecting her feedback by the end of the day. At 12:59 PM EST (still Friday, March 22nd), Sheila Lewis <sheila.lewis@madison-co.com> wrote: "Judge Clark attempted to check his desktop computer in Madison County to see if he had a copy of the recording, but unfortunately, he couldn't find it. Therefore, I suggest that you contact Mrs. Charlie Luckett from the Holmes County Chancery Office for further assistance." |
| 6 | 03/15/2024 | 3:16 PM | LEXINGTON | Outgoing call | 662-834-1285 | 1 minutes | Judge Clark's office - Sheila Lewis | no answer. Voicemail for an extension. (4 second call) In lieu of no one answering the phone at Judge Clark's office and Sheila not responding to emails, I sent an email to both Sheila and Patricia (even though Patricia's email bounced back with an error) at Friday, March 15, 2024 3:20 PM EST. On Mon, Mar 18, 2024 at 4:41 PM Sheila Lewis <sheila.lewis@madison-co.com> said she would let me know by the end of the week if they found the recording. |
| 7 | 03/15/2024 | 3:10 PM | LEXINGTON | Outgoing call | 662-834-1285 | 1 minutes | Judge Clark's office - Sheila Lewis | no answer. Voicemail for an extension. (9 second call) |
| 8 | 03/15/2024 | 12:23 PM | LEXINGTON | Outgoing call | 662-834-2508 | 1 minutes | Chancery Court Clerk - Charlie Luckett | As I recall, I was told Ms. Luckett was out for lunch. See email thread in which I sent a follow up email to Sheila Lewis (admin for Judge Clark) in lieu of having not yet been able to reach Ms. Luckett, to see if she (Sheila) had received the email thread which she did not acknowledge previously, but did acknowledge an email which had a larger audience (sent at 12:27 PM EST). |

## October 21 - November 21, 2024

*The following communications log came directly from my Verizon call log (column on the left). The second column (on the right) includes commentary from me (initially for my own record keeping/tracking purposes, though these notes have become contextual and relevant to the overall claims set forth in this report).*

| | A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|---|
| 1 | Date | Time (EST) | Destination | transcription | Number | Minutes | To/From | comments |
| 9 | 03/15/2024 | 9:37 AM | LEXINGTON | Outgoing call | 662-834-2508 | 2 minutes | Chancery Court Clerk - Charlie Luckett | As I recall, I was told Ms. Luckett was not yet in the office. |
| 10 | 03/14/2024 | 5:20 PM | LEXINGTON | Outgoing call | 662-834-1285 | 8 minutes | Judge Clark's office - Sheila Lewis | Last phone conversation with Sheila. I asked her to inform Judge Clark and she said she would. She said they still had not located the recording, but that I could call back and that she would be there everyday. Informed her that I would do that, and that I would call her the following day (Friday, March 15th, after calling Charlie Luckett) |
| 11 | 03/14/2024 | 9:46 AM | LEXINGTON | Outgoing call | 662-834-1285 | 2 minutes | Judge Clark's office - Sheila Lewis | I called Judge Clark's office back and spoke with Sheila only (to my knowledge). I told her that Patricia's email address (that she had provided in previous call) returned a server error indicating that my message did not go through. Sheila said to send the email to her and provided her email address. You can see that I added Sheila to the email thread at 9:50 AM. |
| 12 | 03/14/2024 | 9:29 AM | LEXINGTON | Outgoing call | 662-834-1285 | 12 minutes | Judge Clark's office - Sheila Lewis | First time I called Judge Clark's office. Spoke with Sheila and Patricia |
| 13 | 03/14/2024 | 9:24 AM | LEXINGTON | Outgoing call | 662-834-2508 | 5 minutes | Chancery Court Clerk - Charlie Luckett | |
| 14 | 03/08/2024 | 5:48 PM | INCOMING | Incoming call | 662-834-2508 | 3 minutes | Chancery Court Clerk - Charlie Luckett | |

| | A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|---|
| 1 | Date | Time (EST) | Destination | transcription | Number | Minutes | To/From | comments |
| 15 | 03/08/2024 | 5:41 PM | LEXINGTON | Outgoing call | 662-834-2508 | 3 minutes | Chancery Court Clerk - Charlie Luckett | |
| 16 | 03/08/2024 | 5:41 PM | LEXINGTON | Outgoing call | 662-834-2508 | 1 minutes | Chancery Court Clerk - Charlie Luckett | |

# UNITED STATES DISTRICT COURT
## for the
## Northern District of Mississippi

| | |
|---|---|
| Carmen Marie Thompson | ) |
| *Plaintiff/Petitioner* | ) |
| v. | )    Civil Action No. 3:25-cv-00096 |
| Katherine B. Riley of Don Barrett, PA / et al | ) |
| *Defendant/Respondent* | ) |

## APPLICATION TO PROCEED IN DISTRICT COURT WITHOUT PREPAYING FEES OR COSTS
### (Short Form)

I am a plaintiff or petitioner in this case and declare that I am unable to pay the costs of these proceedings and that I am entitled to the relief requested.

In support of this application, I answer the following questions under penalty of perjury:

1. *If incarcerated.* I am being held at: _____ .
If employed there, or have an account in the institution, I have attached to this document a statement certified by the appropriate institutional officer showing all receipts, expenditures, and balances during the last six months for any institutional account in my name. I am also submitting a similar statement from any other institution where I was incarcerated during the last six months.

2. *If not incarcerated.* If I am employed, my employer's name and address are:

My gross pay or wages are: $ _____ 0.00 , and my take-home pay or wages are: $ _____ 0.00 per

*(specify pay period)* _____ .

3. *Other Income.* In the past 12 months, I have received income from the following sources *(check all that apply)*:

| | | |
|---|---|---|
| (a) Business, profession, or other self-employment | ☐ Yes | ☑ No |
| (b) Rent payments, interest, or dividends | ☐ Yes | ☑ No |
| (c) Pension, annuity, or life insurance payments | ☐ Yes | ☑ No |
| (d) Disability, or worker's compensation payments | ☐ Yes | ☑ No |
| (e) Gifts, or inheritances | ☑ Yes | ☐ No |
| (f) Any other sources | ☑ Yes | ☐ No |

*If you answered "Yes" to any question above, describe below or on separate pages each source of money and state the amount that you received and what you expect to receive in the future.*

See supplemental

4. Amount of money that I have in cash or in a checking or savings account: $ _____ 0.00 .

5. Any automobile, real estate, stock, bond, security, trust, jewelry, art work, or other financial instrument or thing of value that I own, including any item of value held in someone else's name *(describe the property and its approximate value)*:

See supplemental

6. Any housing, transportation, utilities, or loan payments, or other regular monthly expenses *(describe and provide the amount of the monthly expense)*:

See supplemental for additional context

I cannot afford to make loan payments which include (1) BYC credit card, (2) Student Loans to repay for my master's program student loans, (3) medical bills

7. Names (or, if under 18, initials only) of all persons who are dependent on me for support, my relationship with each person, and how much I contribute to their support:

8. Any debts or financial obligations *(describe the amounts owed and to whom they are payable)*:

$5,873.71 - amount owed to pay off debt accrued by use of BYC (mastercard) credit card (notable, a vast amount of the outstanding debt is due to my travels to visit my family in Mississippi, survive as began graduate school in January 2020, and from 2018-2020 after losing my job at Citi (I had planned to pay off the credit card debt with my severance payment, but needed the credit in light of not finding employment). I also owe pproximately (possibly slightly less than) $200K - student loans (graduate school). Matt Cass has been my sole provider for several years now.

*Declaration:* I declare under penalty of perjury that the above information is true and understand that a false statement may result in a dismissal of my claims.

Date: _____02/24/2025_____

_____
*Applicant's signature*

_____Carmen Marie Thompson_____
*Printed name*

## APPLICATION TO PROCEED IN DISTRICT COURT WITHOUT PREPAYING FEES OR COSTS (Short Form)
### Application to proceed in forma pauperis
### SUPPLEMENTAL (Amended)

This information (supplemental and amended) is to support my request to proceed in District Court without prepaying fees or costs. I am poor and unemployed despite actively applying for jobs and being very well educated. I provide the Court with these detailed accounting records of my possessions as I file the COMPLAINT FOR CIVIL CASE (AMENDED) forms/reports and Supplemental pages.

3. *Other Income.*

In the past 12 months, I have received income from (e) gifts, and (f) other sources (note, (f) may not be applicable to this section, however, I have provided information should it in fact be relevant. For questions (e) and (f), which I marked as "Yes", I have described the source of money and stated the amount that I received (to the best of my knowledge) and what I expect to receive in the future.

(e) Gifts (not inheritance)

1. Christmas gifts 2024
    a. $350 **Amazon** gift card (gift card and gift certificate are used interchangeably in this document) from Cadi Thompson Appleby (my sister) (who informed me this was from her, Will Appleby, Louie Appleby, Louie Thompson, and Cathy Thompson). I have used $324.25 of the Amazon gift card (with $25.75 remaining)



b. $100 cash from Julia Thompson Massey (my sister) (the card stated this cash, along with the other gifts such as dog toys/treates, cheese straws were from her, Michael Massey, their children (step-children), and their pets (dogs and cats)).
2. Birthday gift (2024)
   a. Gift certificate to ME on 2nd from Maureen Cass and Bill Cass in the amount of $150 (I do not recall exactly). The remainder of my hair services and products cost was paid by Matt Cass (as a gift). My hair appointment was on October 30, 2024.
   b. Gift certificate to Nirvana Wellness Medspa Beauty in the amount of $300.00 from Cathy Thompson (my mother) and Louie Thompson (my father).
      i. Services and Products purchased in October 2024. See: (e)(2)(b) Nirvana Wellness Medspa Beauty - Gift Card Transaction History









3.   Silver (gifts from my aunt and uncle: Susan Thompson and William Thompson over
     several years for Christmas). The value is unknown. See image below.



Silver cutlery given to me for Christmas for many years by Aunt Susan and Uncle William
(Thompson). I do not know the value of this silver cutlery but I value it because Aunt Susan and
Uncle William gave it to me. Aunt Susan told me that she enjoyed picking out the pieces that she
gave to Julia, Cadi and me. As you can see, mine is used and a bit tarnished. Matt and I use this
silver mixed in with the other cutlery on a daily basis. I think of Aunt Susan and Uncle William
(and the rest of our family) each time I grab a fork (etc.). Sometimes this is too much sadness
and loss for me to handle emotionally, so in light of preparing this amended pauper's affidavit I
have decided to put the silver aside for a while given the emotional toll all things included in the
Complaint (Amended) and Supplemental pages share with the Court.

4.   The remaining objects I own which may have some (unkown) value include a tiny
     jewelry holder from my aunt (Laurie Metcalf) and uncle (Leslie Metcalf, now deceased),
     a tiny basket given to me for Christmas or birthday by my aunt and uncle (Susan
     Thompson and William Thompson), two baskets (one from my younger sister and
     brother-in-law, Cadi Thompson Appleby and Will Appleby and the other one from my
     aunt and uncle, Susan Thompson and William Thompson or purchased for myself in
     2017 or 2018), a baseball cap from my father (Louis S. Thompson), and some clothes
     (the clothes I still have/the clothes I have not sold at a thrift shop).



Basket from Cadi and Will. Given to me by Cadi for Christmas 2018. I do not know the monetary value of this basket, but I value it because it was a gift from my sister and her husband. I still remember Cadi bringing it to me when I was staying at Nonnee's house during the winter of 2018. I remember her bringing it over and back to the girl's room where I was.



Basket either given to me by Aunt Susan and Uncle William (Thompson) or purchased for myself (2017 or 2018). I do not know the value of this basket, but I value it (though I do not know exactly where it came from) because it is one of the few 'things' I own and it is useful.

 

Tiny basket (2 images) given to me by Aunt Susan and Uncle William for Christmas in the past few years. I do not know the monetary value of this object, but I value it because Aunt Susan and Uncle William gave it to me.



Small, ornamental "holder" (I call it a jewelry holder). Given to me by my aunt and uncle (Laurie and Leslie Metcalf) many years ago for Christmas when they lived in Hong Kong. I do not know the value of this object, but I value it because Aunt Sister and Uncle Leslie gave it to me. I think of her fondly, but have not seen her in so many years now, nor was I able to attend my uncle's funeral because I have been too afraid to return to Mississippi for 4.5 years now.



Baseball cap given to me by my Dad when our family was together at Dauphin Island, Alabama in 2017. I do not know the value of this hat but I value it because my Dad gave it to me and because I have enjoyed the time I have spent with my family at Dauphin Island.

5. Headphones (used) given to me by Matt Cass



Matt purchased these headphones for his work trip overseas. He gave them to me afterwards. I think the original purchase price was approximately $50. I value these because I need them and do not have money to purchase headphones.

(f) Any other sources

1. Payments to BYC credit card (negative balance, I owe money), presumably by Cathy
   Thompson (my mother) who is the co-signer to that credit card which was opened when I
   was approximately 20 years old and living in California. See below image of the first
   page of the latest statement received in the mail.



I did not authorize the auto payment (see date: 02/16/2025)

I have not made any payment towards the debt owed on this credit card in a long time (possibly years) as I have not had the money to do so

2. Matt Cass. See details/examples provided below of ways in which Matt Cass has supported me financially, in addition to providing me with food, shelter/home, friendship, and dignity.

**LifeStance** HEALTH

Income Information

Number of Dependents: 0 (As shown on your Federal Income Tax forms. If you do not file taxes, indicate number of persons you support or who support you.)

List yourself and all members of your household. Write "N/A" in columns for those with no income.

| Name | Age | Relationship | Adjusted Gross Income (Used on Most Recent 1040 Tax Form) | Other Sources of Income (Social Security, Pension, Disability, Veterans Benefits, Unemployment, AFDC, Workman's Compensation) |
|---|---|---|---|---|
| Carmen Thompson | 39 | self | $ 0 | $ 0 |
| | | | $ | $ |
| | | | $ | $ |
| | | | $ | $ |
| | | | $ | $ |
| Total | | | $ | $ |

*Note: Matt Cass and I are not in the same "household" + we do not file taxes
Additionally - I owe approximately $200k in student loans each (we file not separately)

Assets - total accumulative

Savings Account | $ 0
Checking Account | $ 190
CDs | $ 0
Stock/Bonds | $ 0

Liabilities - total outstanding (not monthly)
Bank Loans | $ Discover credit card -5,873.71 (amount owed)
Charge Accounts | $ 0
Medical Debt | $ 4|- -573.50 (amount owed, approximately)
Other (Ex. Child support, alimony, etc.) | $ 119.98 (amount owed, approx.)

** Rent/housing, transportation, and retirement accounts do not qualify and will not be included in the calculations of this application.

Page 1 of 4

---

**LifeStance** HEALTH

PLEASE READ THE FOLLOWING STATEMENTS CAREFULLY BEFORE SIGNING THIS DOCUMENT:

In completing this application, I guarantee its accuracy and truth with the intent that it be relied upon by LifeStance Health to determine benefit eligibility.

I agree to inform LifeStance Health in writing of any significant changes in my household income, Medicaid, Medicare, or private insurance benefits, if any significant change should occur during the year.

I agree to furnish requested information annually as needed for redetermination.

It is understood that all information submitted by me will be treated as confidential.

I understand any discounts will not apply to administrative fees such as late cancellation fees, missed appointment fees, and bounced check fees, as well as to any Ancillary Services I may receive as outlined in the policy.

_____ 1-27-2025
Account Responsible Signature                Date

The undersigned has reviewed the documentation provided by the Patient and based on such review, confirms that the Patient meets the requirements for assistance under the Financial Assistance Policy.

_____        _____
Manager or Approved Representative          Date

Page 4 of 4

---

1/27/2025

To whom it may concern:

My name is Matt Cass and I am currently the financial provider for Carmen Thompson. While she continues to seek full time employment and is applying to law schools while using free LSAC resources, she currently has no income or savings. Given the circumstances any financial aide or discount would be incredibly impactful.

Thank you for your consideration

Matt Ca
ndc224@gmail.com
(610) 550-1681

---

Letter from Matt Cass, my friend whom I live with. He takes care of me financially. He provides the following:

- Food for me and my dog, Brother (I have had Brother since November 2020. He is my Service Dog and has provided me with the companionship, loyalty, and emotional support that I have desperately needed)
- Healthcare expenses for Brother (see copy of most recent receipt from our Vet in Northern Liberties) and me (Life Stance, gynecology at Planned Parenthood, prescriptions, hygiene as shown by Nirvana receipt for products (not services) - for example)
- Shelter (both for me and my dog, Brother)
- Beverage (including alcohol. Notably not excessively or out at bars/restaurants)
- Seldom meals at restaurants (approximately 1 per quarter)
- Cell phone (monthly)
- Wifi and space to work (finish graduate school, apply for jobs, work on my case, etc.)
- Paid what I owed in taxes (previous years) although I earned very little to nothing (but was taxed because of student loans/grants)
- Extra law school applications (not covered by the LSAC waiver)
- I am sure I am missing items here, but willing to discuss further as needed.

Previously, Matt was providing for my (our) cat, Ziggy, as well. Matt covered Ziggy's medical bills which were approximately $14K at the end of his life as we tried to save him and ultimately had to put him to sleep.

The psychiatry services I receive are through Life Stance. As you can see from the images above, I submitted (years in a row now) applications for reduced fees. Matt Cass makes the payments for me to continue to receive Healthcare services through Life Stance. As shown above, he wrote a letter confirming the fact that I am poor/actively searching for employment, and (was) applying to law schools.





Matt has paid for health and hygiene products for me.



Matt covers expenses for Brother to go to the vet



Matt pays for my cell phone each month.



**Law School Admission Council**
662 Penn Street
PO Box 2000
Newtown, PA 18940-0998 USA
Email: LSACFeeWaiver@LSAC.org
P: 215.968.1001

**Fee Waiver Approval**

Carmen Thompson
Account Number: L44070986
October 30, 2023

Dear Carmen,

We are pleased to inform you that your request for a fee waiver has been granted by the Law School Admission Council, Inc. ("LSAC") and you are approved for a Tier 1 fee waiver.

Please note that your fee waiver may be used for the following services only and that these services must be utilized by you during the two-year period beginning on October 28, 2023 and ending on October 28, 2025 ("Waiver Period").

- Two registrations for the LSAT, including the LSAT Argumentative Writing. In order for you to utilize these free registrations for the LSAT, you are required to register for and take each LSAT during the Waiver Period and each LSAT registration must be completed in accordance with the registration deadline for the applicable LSAT.
- A one-year subscription to LawHub™ Advantage, which provides access to a full library of practice LSATs in an authentic LSAT test environment. This free one-year LawHub™ Advantage subscription will automatically commence upon the date of this fee waiver approval letter and will expire one (1) year thereafter. If you have already purchased a LawHub™ Advantage subscription, the one-year subscription to LawHub™ Advantage granted to you under this fee waiver will commence at the end of your paid LawHub™ Advantage subscription.
- At no cost to you, a "Score Preview" for two LSATs that you have registered for and taken. LSAC's "Score Preview" service enables LSAT candidates to view their LSAT score before deciding whether to keep it as part of such candidate's LSAC Account for reporting to law schools.
- One Credential Assembly Service ("CAS") registration, which includes the Letter of Recommendation Service and access to the FlexApp (law school application) for all of LSAC's member law schools.
- Up to a maximum of six (6) LSAC CAS Law School Reports. Your ability to obtain LSAC's CAS Law School Reports is subject to your registration for CAS as described in the bullet point immediately above.

If you are enrolled in LSAC's LawReady™ program, your fee waiver will include the following benefits:
- One LawReady™ registration
- One LawReady™ certificate

If you have not registered for any of the services provided to you under this fee waiver approval letter, then you may register for those services using your online LSAC account. Correspondingly, if you have previously purchased any of the services provided to you under this fee waiver approval letter, you will not receive a refund for those prepaid services.

Please feel free to contact LSAC's Candidate Services team at 1.800.336.3982 or LSACFeeWaiver@LSAC.org with any questions you may have.

Sincerely,

Law School Admission Council

This waiver allowed me to study for and take the LSAT (twice) (though I did not score reflective of my abilities, largely due to ongoing hardships, construction next door, and the loss of Ziggy (my cat) coinciding with preparation and test taking) and apply to several law schools with a fee waiver (though I have been rejected from all but one as of 2/22/25). With Matt's support, I was able to dedicate time towards preparing to apply to law schools and submit those applications while also applying for jobs.

3.  See [(f)(3) - Once Worn Consignment](#). Total earned from selling my clothes was less than $180 in 2024.



4. Amount of money that I have in cash or in a checking or savings account

- According to the conversation I had with a representative from Bank of Yazoo (phone number: 662-746-5421) on 1/27/2025, the amount in my checking account (which my father, Louie Thompson, is a co-signer/joined account holder as we opened my checking account at BYC together when I was about 14 years old) is $190 (or $150: I see that I wrote $190 in my notes/as I was completing a financial assistance program application for Life Stance, but I recall him possibly saying $150, not $190). See Life Stance documentation as part of (3) Other Income (f) Any other payments (2) - Matt Cass.
- In the form, I marked this as $0.00 because:
  - I did not put the $190 or $150 into this account and presumably it is there to pay for the credit card payment based on the latest statement. Please see (3) Other Income (f) Any other payments (1) - BYC Credit Card Statement.
  - I do not have the PIN for this account, therefore this cannot be considered cash or savings at this time since I cannot access the cash (in other words, I cannot withdraw cash money or use the money for a money order).

5. Any automobile, real estate, stock, bond, security, trust, jewelry, art work, or other financial instrument or thing of value that I own, including any item of value held in someone else's name (*describe the property and its approximate value*):

1.  Painting. See below photo of the original which was created by a local Philadelphia artist (prior to agreeing on the design and/or payment) as a gift from me to Matt Cass. The artist and I spoke about the artwork - conceptually only prior to her creating this special piece then providing it to me. The approximate value is unknown and it is located in the house where Matt, Brother, and I live (211 Brown St, Unit 13).



Painting by Philadelphia Artist of a photograph I took of myself giving my dog, Brother, a bath. The artist took my photo and exaggerated certain features to convey their own subjective interpretation rather than simply replicating reality. The artist's name was redacted from the copy of the original painting - as shown above.

2.  I own a piece of artwork that was given (a gift) to me by a man who searched for arrowheads at/near Pluto. He and I had a pleasant conversation one day as I stopped and spoke with him. The man (whose name I cannot recall) gave one piece of artwork to me and another to my cousin, Michael Thompson. My piece is somewhere on Pluto or my parent's home I believe. I asked my Dad and Michael to look for it, but they have not found it. The artwork contains pieces of artifacts placed to create a design/story along with some paint and other elements. Approximate value is unknown.

3. My Uncle (Uncle Bobby T., Robert Thompson) (now deceased) gave me a hatchet. He also gave my grandmother (Nonnee, or Mary Thompson) a hatchet some time ago. Mine was similar to hers. I don't know where my hatchet is. I think someone in my family stole it/took it from me so I suspect it is at my parent's house or somewhere on Pluto. Approximate value is unknown.

4. Table. I purchased this table from a man and a woman at a pop-up vendor event on Cherry Street pier. I used $500 in cash money (as I recall) earned while employed at Entrepreneurs' Organization (2022) to purchase this table and a rug which has since been discarded. I was told that the table is made from an old printing press. See images below.



Table purchased at Cherry Street Pier



seller's (who I purchased from) contact information

5. Tiny green glasses I purchased in 2022 with money earned working at EO.



Tiny green glasses purchased from a boutique store in Old City in 2022 with money earned working at Entrepreneurs' Organization.



# IN THE CHANCERY COURT OF HOLMES COUNTY, MISSISSIPPI

IN RE: **Carmen Thompson**

ALLEGED TO BE MENTALLY ILL          CIVIL ACTION FILE NO.  **E20-00 50**

## UNIFORM COMMITMENT AFFIDAVIT
## PURSUANT TO MISSISSIPPI CODE SECTION 41-21-65

COMES NOW  **Louie S Thompson**                , relative and/or interested person, residing at **Tchula, MS**                , telephone number **662-571-6179** , duly sworn and deposed, and says the following to be true and correct to the best of my knowledge and belief: is a person I allege to be in need of treatment by outpatient or inpatient commitment. To my knowledge this person **DOES / DOES NOT** (*circle one*) reside or have visitation rights with a **minor child** or children. Their nearest relative, if known, is **Carmen Thompspn**                , who resides at                , telephone number                .

I allege the person to be in need of treatment because the person is **mentally ill** under law and poses a likelihood of physical harm to themselves or others as demonstrated by (*mark as many as apply*) __x__ a **recent attempt or threat** to physically harm themselves or others and/or __x__ **a failure and inability** to provide necessary food, clothing, shelter, safety, or medical care to themselves as a result of the impairment and/or __x__ **based on treatment history or other relevant evidence, this person is in need of treatment to prevent further disability or deterioration** which will predictably result in dangerousness when their current mental illness limits or negates their ability to make an informed decision to seek or comply with recommended treatment. To my knowledge the recent behavior described herein is **not** cause by any of the following:  **epilepsy; intellectual disability; brief periods of intoxication; dependence upon or addiction to alcohol or drugs; or senile dementia.**

Factual descriptions of recent behavior, witnesses, and where and when it occurred, if known:

_____

_____

(see Attachment) _____

_____

_____ (*attach additional pages, if needed*)

SWORN TO AND SIGNED BY MY HAND this the __31__ day of __August__              , __2020__ A.D.

x _Louie S. Thompson_
AFFIANT (relative and/or interested person)

SWORN TO AND SUBSCRIBED BEFORE ME this the _31_ day of _aug_              , __2020__ A.D.

_Charlie Luckett_
NOTARY PUBLIC

_Chancery Clerk_

Affiant:       Louie S. Thompson

Respondent: Carmen Thompson

DOB:          October 8, 1985

SSN:          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

Address:      4260 Bee Lake RD, Tchula, MS 39269

Contact:      662-571-6179

Mr. and Mrs. Louie S. Thompson stated that their daughter, Carmen is in need of mental help at this time for the following reasons:

Her behavior has been erratic since Covid 19 hit.

After coming back home, she has had a psychotic episode on Father's day Weekend.

She has not been sleeping or eating properly.

She made threats against family members.

She left the family home last weekend and stated that she did not feel safe she feels that their lives are in danger also.

She thinks that someone is trying to kill her.

She can't care for himself at this juncture.

Mr. and Mrs. Thompson feels that she could harm herself or cause someone to harm her.

She is a threat to herself and others.

IN THE CHANCERY COURT OF HOLMES COUNTY, MISSISSIPPI

IN RE: **Carmen Thompson**
ALLEGED TO BE MENTALLY ILL     CIVIL ACTION FILE NO. **E20-00** **50**

## ORDER

IT APPEARING that the Affidavit filed in this cause sets forth factual allegations and the names of witnesses sufficient to support the alleged need for mental treatment of

**Carmen Thompson**
(Respondent)

IT IS THEREFORE ORDERED AND ADJUDGED that the Clerk of this Court issue a Writ directed to the Sheriff of this County to take into his custody said Respondent and to bring said Respondent before said Clerk or the Special Master for examination as provided by Section 41-21-67 and Section 41-21-69, Mississippi Code of 1972.

ORDERED AND ADJUDGED this the 8th day of _____, 2020

_____
SPECIAL MASTER

IN THE CHANCERY COURT OF HOLMES COUNTY, MISSISSIPPI

IN RE: Carmen Thompson

ALLEGED TO BE MENTALLY ILL    CIVIL ACTION FILE NO. E20-00·50

## APPOINTMENT OF ATTORNEY

TO: Katherine B. Riley of Don Barrett, PA

The above styled matter having come before this Court according to the Law in the premises and the said Respondent having been found to be entitled to appointment of counsel according to the Statutes of the State, you are hereby appointed and directed to represent the said Carmen Thompson at the hearing, in the above styled matter.

ORDERED AND ADJUDGED, this the 8th day of September, 2020.

_____
SPECIAL MASTER
Chancellor

IN THE CHANCERY COURT OF HOLMES COUNTY, MISSISSIPPI

IN RE: __Carmen Thompson__
ALLEGED TO BE MENTALLY ILL     CIVIL ACTION FILE NO. __E20-00 50__

### APPOINTMENT OF PHYSICIAN / PSYCHOLOGIST / NURSE PRACTITIONER/ PHYSICIAN ASSISTANT

TO:    Dr. Charles Small, PHD and Shunda Phelon, PNP

An affidavit having been made by __Louie S Thompson__ that one

__Carmen Thompson__ is in need of mental treatment, you are hereby

appointed and directed to make a full inquiry into the mental condition of and make a thorough

physical and mental examination of such person at Region VI Mental Health, Greenwood,

Mississippi, within twenty-four (24) hours of this notice.

You are further ordered, at the beginning of the examination, to tell said

__Carmen Thompson__ in plain language of the purpose of the examination, its possible

consequences, and his/her right to refuse to answer questions and to have his/her lawyer present;

and to report your findings in writing within the time set by law to the Clerk of the Chancery Court.

GIVEN UNDER MY HAND and official seal, and issued this the 8ᵗʰ day

of _____, 2020 at 9:00 (a.m.)(p.m.).

_____
SPECIAL MASTER

IN THE CHANCERY COURT OF HOLMES COUNTY, MISSISSIPPI

IN RE: __Carmen Thompson__

ALLEGED TO BE MENTALLY ILL     CIVIL ACTION FILE NO.  __E20-00__

## WRIT TO TAKE CUSTODY

TO THE SHERIFF of **HOLMES** County, Mississippi.

An Affidavit having been made, alleging that one __Carmen Thompson__ ,

now in your County, is in need of mental treatment, you are hereby commanded to immediately

take said person into your custody and place (her) (him) at __Grenada Crisis__

_____ , and retain custody of said person until further order of the

undersigned, so that (she) (he) may be examined according to law by the appropriate mental health

center and those duly appointed by the Special Master. You shall report hereon of your compliance

herewith and file same with the Clerk of this Court.

Given under my hand and official seal, this the __31__ day of __August__ , **2020**, at

_____ (A.M.) (P.M.)

CHARLIE LUCKETT, Chancery Clerk

By: _Charlie Luckitt_ , D.C.

Custody Taken: _____ , **2020** (A.M.) (P.M.)

Delivered

To: _____ at

_____ (A.M.) (P.M.)

Persons present at time and place of taking custody (preferably relatives):

Name

Address

_____

_____

_____

WILLIE E. MARCH, SHERIFF

By: _____

09/04/2020 FRI 13:31   FAX 16622737... LIFE HELP                              @004/009

2020-09-08 11:56 CDT      Ida                                        +16622393377

# Adult Pre-Evaluation Screening

Date: 9/3/20   Time in: 9:30  Time Due: 10:30   Interview Location: Grenada Crisis

Individual's Present: Hud and Staff

Interpretative Aids/Assisted Devices: None Reported                    Pending Felony Charges: ☐ Yes  ☒ No

Case Number: 228038                                    CMHC Region: Region VI

In the _____ court of Chancery   County: Holmes   Voluntary CSU Admission Sought: ☐ Yes  ☒ No

Mobile Crisis Involvement: ☐ Yes  ☒ No

Information from this interview will be reported on a standardized form and submitted to the chancery court and civil commitment examiners. You have the right to refuse to participate. Other sources of information including a review of your legal medical records and interviews with family member and the affiant requesting commitment will be included in this report.

Name: Carmen Thompson   DOB: 10/08/1985   Age: 34  Gender: Female  Race: White

Social Sec #: 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   Medicaid #: N/A   Medicare #: N/A

Home Address: 4260 Bee Lake Rd, Tchula, Ms 39169   Phone Number: (662) 763-4787

Respondent resides with minor children: ☐ Yes  ☒ No   Name & Ages of Children:

Respondent resides has visitation rights to minor children: ☐ Yes  ☐ No   Name & Ages of Children:

Respondent resides has legal guardian/conservator: ☐ Yes  ☐ No   Name & Ages of Children:

Source of Information: ☒ Respondent  ☐ Affiant  ☐ Chart Review  ☐ Other

Affiant Name: Louis S. Thompson   Relation of Respondent: Father

Phone Number: (662) 571-6174   Home Address: 4260 Bee Lake Rd, Tchula, MS

Source of Information: ☐ Respondent  ☐ Affiant  ☒ Chart Review  ☐ Other 39169

Current Living: ☐ Alone  ☒ Family/Friends  ☐ Assisted Living  ☐ Homeless  ☐ Other/Describe:

Housing:   Dwelling:   Marital Status: Single   Home Address: 4260 Bee Lake

Employed: ☐ Yes  ☒ No   Employer/Position: _____ Length of Job:

If unemployed (most recent job?):   Highest Level of Education Completed: 16

Religious Preference or Practice: Unknown

Source of Information: ☒ Respondent  ☐ Affiant  ☐ Chart Review  ☐ Other

Current Psychotropic Medications: None reported   Dosage & Date/Time Last Taken:   Is the medication helpful or problematic?

Psychiatric Hospitalizations:   Location/s/Dates:
_____   Enter Location and Date

Outpatient Treatments:   Location/s/Dates:

Psychological Testing:   Provider/Dates:

Source of Information: ☐ Respondent  ☐ Affiant  ☐ Chart Review  ☐ Other




*Individual refused to answer question*

| Current Medications (not listed above): | Dosage & Date/Time Last Taken: | Is the medication helpful or problematic: |
|---|---|---|

| Known Medication Allergies: | |
|---|---|
| Currently Under Physician Care For: | Physician's Name: |
| Conditions Treated In The Past: | Provider/Date: |
| Medical Hospitalization History: | Physical Disabilities: |

**Current Communicable Diseases:**

☐ HIV/AIDS  ☐ Hepatitis A  ☐ Hepatitis B  ☐ Hepatitis C  ☐ TB (Tuberculosis)

☐ MRSA  ☐ Influenza  ☐ Hand Lice  ☐ Scabies  ☐ Body Lice  ☐ STI's  ☐ Other

Currently Pregnant: ☐ Yes   ☐ No

Source of Information: ☐ Respondent ☐ Affiant ☐ Chart Review ☐ Other

| History of Special Education Ruling: ☐ Yes  ☐ No | If yes, describe: |
|---|---|
| Documented IQ below 70: ☐ Yes  ☐ No | If yes, describe: |
| Documented sub-average intellectual functioning before age 18: ☐ Yes  ☐ No | If yes, describe: |
| Documented Adaptive Functioning Deficits: ☐ Yes  ☐ No | If yes, describe: |

Specific Observed Adaptive Functioning Deficits:

Source of Information: ☐ Respondent ☐ Affiant ☐ Chart Review ☐ Other

| Oriented to Date:   Time:   Place: | |
|---|---|
| *Cue for three words (provide words): | |
| President: | |
| Counting Response: | |
| Word Recall: | |
| Complete Written Commands: ☐ Yes   ☐ No If No, describe: | |
| What do you understand the reason for our meeting today to be? | |

Source of Information: ☐ Respondent ☐ Affiant ☐ Chart Review ☐ Other

| Depressive Symptoms | R | I | Anxiety Symptoms | R | I | Somatic Symptoms | R | I |
|---|---|---|---|---|---|---|---|---|
| ☐ Depressed mood most of the day | ☐ | ☐ | ☐ Worry | ☐ | ☐ | ☐ Headaches | ☐ | ☐ |
| ☐ Lack of Interest/Pleasure | ☐ | ☐ | ☐ Restlessness | ☐ | ☐ | ☐ Chest Discomfort/Pain | ☐ | ☐ |
| ☐ Appetite Change or Sig Weight Change | ☐ | ☐ | ☐ Easily Fatigued | ☐ | ☐ | ☐ Faintness | ☐ | ☐ |
| ☐ Insomnia (Difficulty Falling Asleep) | ☐ | ☐ | ☐ Irritability | ☐ | ☐ | ☐ Hot or Cold Flashes | ☐ | ☐ |
| ☐ Feelings of Worthlessness | ☐ | ☐ | ☐ Muscle Tension | ☐ | ☐ | ☐ Stomach Aches/Pains | ☐ | ☐ |
| ☐ Fatigue or Loss of Energy | ☐ | ☐ | ☐ Difficulty Concentrating | ☐ | ☐ | ☐ Heart Palpitations | ☐ | ☐ |
| ☐ Diminished Concentration | ☐ | ☐ | ☐ Sleep Disturbances | ☐ | ☐ | ☐ Dizziness or Vertigo | ☐ | ☐ |

*Individual refused to answer questions*

Respondent(#) Informant(I)

| | R | I | Other | R | I | | R |
|---|---|---|---|---|---|---|---|
| ☐ Indecisiveness | ☐ | ☐ | ☐ Other | ☐ | ☐ | ☐ Shaking/Trembling | ☐ |
| ☐ Hypersomnia (Sleeping Excessively) | ☐ | ☐ | | | | ☐ Tingling in hands or feet | ☐ |
| ☐ Recurrent Thoughts of Death | ☐ | ☐ | | | | ☐ Excessive Sweating | ☐ |
| ☐ Motor Retardation | ☐ | ☐ | | | | ☐ Other | ☐ ☐ |
| ☐ Motor Agitation | ☐ | ☐ | | | | | |
| ☐ Feelings of Hopelessness | ☐ | ☐ | | | | | |
| ☐ Other | ☐ | ☐ | | | | | |

| Mania & Hypomania Symptoms | R | I | | | R | I |
|---|---|---|---|---|---|---|
| ☐ At least 1 week | ☐ | ☐ | ☐ More talkative than usual | | ☐ | ☐ |
| ☐ 4 consecutive days < weeks | ☐ | ☐ | ☐ Excessive involvement in activities with high potential for painful consequences | | ☐ | ☐ |
| ☐ Flight of ideas/racing thoughts | ☐ | ☐ | ☐ Distractibility | | ☐ | ☐ |
| ☐ Decreased need for sleep | ☐ | ☐ | Persistent elevated, or irritable mood and significant increases in goal directed activity   ☐ Yes ☐ No | | ☐ | ☐ |
| ☐ Increased self-esteem of Grandiosity | ☐ | ☐ | | | | |

| Thought Disorder Symptoms | R | I | | R | I |
|---|---|---|---|---|---|
| ☐ Hallucinations | ☐ | ☐ | ☐ Absence of emotions | ☐ | ☐ |
| ☐ Auditory ☐ Visual ☐ Olfactory | ☐ | ☐ | ☐ Absence of speech | ☐ | ☐ |
| ☐ Tactile ☐ Gustatory | ☐ | ☐ | ☐ Absence of movement | ☐ | ☐ |
| Specific Hallucinations: | ☐ | ☐ | ☐ Lack of Hygiene | ☐ | ☐ |
| ☐ Delusions | ☐ | ☐ | ☐ Lack of eating/feeding | ☐ | ☐ |
| ☐ Persecutory ☐ Grandiose ☐ Paranoid ☐ Other | ☐ | ☐ | | | |
| Specific Delusions: | | | | | |

| Obsessive Compulsive Symptoms | R | I | | R | I |
|---|---|---|---|---|---|
| Obsessive Thoughts ☐ Yes ☐ No | ☐ | ☐ | Compulsive Behaviors ☐ Yes ☐ No | ☐ | ☐ |
| Severity: ☐ Mild ☐ Moderate ☐ Severe | ☐ | ☐ | Severity: ☐ Mild ☐ Moderate ☐ Severe | ☐ | ☐ |
| Specific Obsessions: | ☐ | ☐ | Specific Compulsions: | ☐ | ☐ |

Trauma Exposure ☐ Yes ☐ No (type/approx. Date)

| Trauma Triggers: | | | | |
|---|---|---|---|---|
| Environmental | ☐ Crowding | ☐ Room checks | ☐ Confusing signs | ☐ Slamming doors |
| | ☐ Leaving bedroom door open | ☐ Dark rooms | ☐ Too hot or too cold | ☐ Noise |
| Interpersonal | ☐ Lack of privacy ☐ Confined spaces | ☐ Being approached by men or women ☐ Being touched | ☐ Arguments ☐ People too close | ☐ People Yelling ☐ Contact with Family ☐ Being ordered to do something |
| | ☐ Being stared at | ☐ Being ignored | ☐ Feeling pressured ☐ People focusing on my symptoms | |
| | ☐ Being approached by women | ☐ Being Teased/picked on ☐ Tall or large | | ☐ Smells |
| Other Triggers | ☐ Taste ☐ Time of Day | ☐ Sounds ☐ Sights | ☐ Sensations/textures | ☐ Wringing hands |
| Warning Signs of Emotional escalations | ☐ Heart Pounding ☐ Clenching teeth ☐ Bouncing legs ☐ Sweating | ☐ Shortness of Breath ☐ Flushed/red face ☐ Singing ☐ Rocking | ☐ Breathing Hard ☐ Crying ☐ Can't sit still ☐ Pacing | ☐ Wringing hands ☐ Clenching fists ☐ Running/wandering ☐ Cracking |

 

*Individual refused to answer questions*

| Prior Attempts: | | Friend or Family Member Completed Suicide |
|---|---|---|
| Approximate Date: | | Approximate Date: |
| Method of attempt: | | Method of suicide: |
| | | Source of Information: ☐Respondent ☐Affiant ☐Chart Review ☐Other |

| | | |
|---|---|---|
| ☐ Thoughts of suicide | ☐ Threats of suicide | ☐ Plan for suicide |
| ☐ Suicide gesture | ☐ Suicide attempts | ☐ Family history of suicide |
| ☐ Inability to care for self | ☐ High risk behavior | ☐ Provoking harm to self from others |
| ☐ Other | | |

☐ Pre-occupation with death
☐ Self-mutilation

Describe:

Current thoughts about harming another person  ☐ Yes  ☐ No

If Yes, whom:
If yes, how long have you had these thoughts?
If yes, specific plan:
Access to means to carry out plan:

Source of Information: ☐Respondent ☐Affiant ☐Chart Review ☐Other

| Present | Unknown | | Present | Unknown | |
|---|---|---|---|---|---|
| ☐ | ☐ | Male Gender | ☐ | ☐ | Substance Abuse |
| ☐ | ☐ | Suspiciousness/Perception of hidden threat | ☐ | ☐ | Comorbid MI & Substance Use Dx |
| ☐ | ☐ | Early offense history | ☐ | ☐ | Anger |
| ☐ | ☐ | Psychopathy (PCL:SV≥12) | ☐ | ☐ | Antisocial Personality Diagnosis |
| ☐ | ☐ | Violent Fantasies | | | Frequency, type, recency |
| ☐ | ☐ | Previous violence against other people | | | Frequency, severity, type |
| ☐ | ☐ | Childhood physical abuse | | | Frequency, severity |

Source of Information: ☐Respondent ☐Affiant ☐Chart Review ☐Other

| Do you currently use? | Past Use | Amount | Frequency | Age of Initiation |
|---|---|---|---|---|
| Caffeine | | | | |
| Nicotine | | | | |
| Alcohol | | | | |
| Marijuana | | | | |
| Opioids | | | | |
| Amphetamines | | | | |
| Hallucinogens | | | | |
| Prescription Medication | | | | |
| Over the counter medication | | | Describe: | |

History of legal charges related to substance use?  ☐ Yes  ☐ No

Source of Information: ☐Respondent ☐Affiant ☐Chart Review ☐Other

IN THE CHANCERY COURT OF HOLMES COUNTY, MISSISSIPPI

IN RE: <u>Carmen Thompson</u>
     ALLEGED TO BE MENTALLY ILL      CIVIL ACTION FILE NO. <u>**E20-00 50**</u>

## NOTICE OF HEARING

TO:    **Carmen Thompson**
               (Respondent)

       **Katherine B Riley of Don Barrett, PA**
               (Attorney)
       **Loiue S Thompson**
       **Mrs. Louie Thompson**
          (Relative of Respondent)

       **Dr. Julia Thompson-Massey, MD**
          (Relative of Respondent)
       **Cadi Thompson-Appleby**

         (Guardian of Respondent)
       **Martha Foose**
       **Whitney Thompson**
          (Witness)

Region VI Mental Health
Post Office Box 1505
Greenwood, Mississippi 38930
Telephone No.: 601-453-6211

Affidavit having been made by  **Louie S. Thompson**  that one **Carmen Thompson** is in need of mental treatment as provided by Mississippi Code of 1972, §41-21-61, et seq.

Respondent having been examined by
**Dr Charles Small, PHD and Shonda Phelon, PNP**
(Two Physicians)  (One Physician and One Psychologist)  (One Physician and One Nurse Practitioner)  (One Physician and Physician Assistant)

as provided by said law, and it having been by them certified that Respondent is a person in need of mental treatment you are hereby notified that a full hearing regarding this matter has been set for **1:30** (a.m.) (p.m.), the **11** day of **September**, **2020**, at the alternate courtroom of Holmes County Courthouse in Lexington, Mississippi, as provided by law and you are required to then and there be present. Herein fail not.

SO ORDERED this the **11** day of **September** A. D., **2020**

**CHARLIE LUCKETT**, Chancery Clerk

BY: *Charlie Luckett* D.C.

Possible consequences or outcome of the hearing include commitment to Mississippi State Hospital at Whitfield, or  any like mental health facility; outpatient treatment with specific reference to a treatment regimen; day treatment in a hospital; night treatment in a hospital; placement in the custody of a friend or relative; the provision of home health services.

Executed the within writ personally by delivering to each of the within named

Carmen Thompson, Mr. and Mrs Louie Thompson, Dr. Julia Thompson-Massey, Cadi

Thompson Appleby, Martha Foose, Whitney Thompson and Katherine B. Riley of

Don Barrett, PA

a true copy of this writ and a copy of the Affidavit and Application for commitment.

This the _____ day of _____, **2020**.

WILLIE MARCH, SHERIFF

By: _____, D. S.

IN THE CHANCERY COURT OF HOLMES COUNTY, MISSISSIPPI

IN RE: **Carmen Thompson**

ALLEGED TO BE MENTALLY ILL          CIVIL ACTION FILE NO.   **E20-00 50**

## ORDER OF COMMITMENT

This matter having come on for hearing according to law, and the Court having found as follows:

### I.

The Respondent (please mark one)

☐ was present at the hearing

☒ participated via teleconference.

☐ knowingly waived a hearing with the approval of the Court (Waiver attached)

☐ was unable to attend the hearing for the following reasons:

_____

### II.

The Court has jurisdiction of the subject matter and the necessary parties.

### III.

The Court

☒ received a record of all drugs or other treatment received by the Respondent pending the hearing

☐ has determined that an accurate record of drugs or medication is not practical for the following reasons _____

### IV.

The Respondent was not so under the influence of drugs, medication, or other treatment as to be hampered in participating in the proceedings.

### V.

The Respondent has recently threatened/attempted to physically harm self/others: _Pulling in_ _traffic_ _with her_ _car,_ _Walking many miles in_ _the middle of the night_

### VI.

The Respondent has recently failed to care for self: (food) (clothing) (shelter) (medical care) _____

**FILED**
HOLMES COUNTY, MS
THIS 11th DAY OF September 2020 AT 4:00 p.m.
CHARLIE LUCKETT CHANCERY CLERK
BY _Dominique Bullock_ D.C.

## VII.

The Respondent, by clear and convincing evidence, is a mentally ill person who poses a substantial likelihood of physical harm to self/others: _____

_____

_____.

## VIII.

The following out-patient care/alternate living arrangements/other has/have been considered as an alternative to institutionalization: commitment to inpatient care considered by the Court were voluntary and Court ordered outpatient treatment with specific reference to a treatment regimen; day treatment in a hospital; night treatment in a hospital; placement in the custody of a friend or relative; the provision of home health services; and

_____

_____

_____.

Each of said alternatives considered are found not suitable as treatment because: *Patient was inpatient voluntary earlier in the year and was released with instruction to remain on prescribed treatment. She failed to obtain said treatment.*

## IX.

There is no suitable alternative to judicial commitment.

IT IS THEREFORE ORDERED AND ADJUDGED that the Respondent be committed to ~~Grenada Crisis~~ / Grenada Crisis Center, Grenada, Mississippi/ Mississippi State Hospital, Whitfield, Mississippi, or any Mississippi Department of Mental Health program for observation, diagnosis, and treatment as may be determined and coordinated by the aforementioned treatment program;

Grenada Crisis for holding, treatment, and medication until such time as the director of the treatment facility, where the Respondent is committed, discharges the Respondent upon the filing of a certificate of discharge with the Chancery Clerk of Holmes County, Mississippi, Post Office Box 1211, Lexington, Mississippi 39095, certifying that the Respondent, in his/her judgment, no longer poses a substantial threat of physical harm to himself/herself or others, pursuant to Mississippi Code of 1972, Section 41-21-87 OR until a bed becomes available at a Mississippi Department of Mental Health program. (*Said commitment to remain in effect not to exceed Ninety (90) days, unless terminated earlier as provided by law.*)

IT IS FURTHER ORDERED AND ADJUDGED that Willie E. March, Sheriff of Holmes County, Mississippi, be and is hereby appointed and authorized to deliver the Respondent to the director of said institution.



| Affect | | | | |
|---|---|---|---|---|
| Flat | ☑ Blunted | ☐ Constricted | ☐ Normal | ☐ Broad |
| Facial Expression | | | | |
| ☐ Vacant | | | | |
| ☑ Blank | | | | |
| ☐ Strained | | | | |
| ☐ Pained | | | | |
| ☐ Grimacing | | | | |
| ☐ Smiling | | | | |
| ☐ Other | | | Source of Information: ☐ Respondent ☐ Affiant ☐ Chart Review ☐ Other | |

## Summary & Recommendations

**Additional Comments:**

Based on the data gathered for the current Pre Evaluation Screening:

☐ It is **NOT** recommended that this respondent receive a civil commitment exam.

1) Current available information indicates that present symptomatology is due to

☐ Dementia ☐ Intellectual/Developmental Disability ☐ Epilepsy ☐ Chemical Dependency
☐ Mental Illness

2) The following referrals for appropriate evaluation or treatment have been provided:
   a.

   b.

   c.

☑ It **IS** recommended that this respondent receive a civil commitment exam. Based on the data available for the current Pre Screening Evaluation the following symptomatology cannot be managed/treated in a less restrictive environment:

1) Individual has made threats against family membe,
2) Individual feels that someone is trying to pois
3) Individual is having erratic behavior. He
4) Individual left her family home last week
stating that she did not feel safe and she felt that her
parents were not safe either. /s/ Ra S. Crockett CMHT

_____
Signature-Credentials

 

*Individual refused to answer questions*

| | Attire | Hair | Nails | Skin | |
|---|---|---|---|---|---|
| ☐ Glasses | ☐ Appropriate for occasion | ☐ Clean | ☐ Clean | ☐ Clean | ☐ Bruised |
| ☐ Contacts | ☐ Appropriate for weather | ☐ Dirty | ☐ Dirty | ☐ Dirty | ☐ Cuts/Scrapes |
| ☐ Hearing Aids | ☐ Clean | ☐ Disheveled | ☐ | ☐ Tattoos Describe: | |
| | ☐ Dirty | ☐ Styled | | ☐ Sores | |
| | ☐ Torn/worn through | | ☐ | | |
| | ☐ Other | | ☐ | | |

| Teeth | Unusual alterations or distinguishing features: |
|---|---|
| ☐ Clean | |
| ☐ Dirty | |
| ☐ Decay | |
| ☐ Missing | |

Source of Information: ☐Respondent ☐Affiant ☐Chart Review ☐Other

| Motor Activity | Normal | Excessive | Unusual | |
|---|---|---|---|---|
| Diminished | | | ☐ Other | |
| ☐ Frozen | ☐ Purposeful | ☐ Restless | | |
| ☐ Catatonic | ☐ Coordinated | ☐ Squirming | | |
| ☐ Almost motionless | ☐ Other | ☐ Fidgety | | |
| ☐ Little animation | | ☐ Constant movement | | |
| ☐ Psychomotor retardation | | ☐ Hyperactive | | |
| ☐ Slowed reaction time | | ☐ Other | | |
| ☐ Other | | | | |

| Speech | Normal | Pressured | Verbose | Unusual |
|---|---|---|---|---|
| Slowed | | | ☐ Over productive | ☐ |
| ☐ Minimal response | ☐ Initiates | ☐ Excessively wordy | ☐ Long winded | |
| ☐ Unspontaneous | ☐ Alert/responsive | ☐ Expansive | ☐ Non stop | |
| ☐ Sluggish | ☐ Productive | ☐ Rapid | ☐ Frequent run-ons | |
| ☐ Paucity | ☐ Animated | ☐ Fast | ☐ Flight of ideas | |
| ☐ Impoverished | ☐ Spontaneous | ☐ Rushed | ☐ Hyper verbal | |
| ☐ Single word answers | ☐ Smooth | ☐ Other | ☐ Other | |
| ☐ Other | ☐ Other | | | |

| Thought Process | | | | |
|---|---|---|---|---|
| Attention | Insight | Preoccupation: | | |
| ☐ Normal | ☐ Good | ☐ Somatic | ☐ Self | |
| ☐ Unengaged | ☐ Fair | ☐ Children | ☐ Finances | |
| ☐ Distractible | ☐ Poor | ☐ Spouse/Sig Other | ☐ Other | |
| ☐ Hyper vigilant | ☐ No insight | ☐ Job | | |
| ☐ Hyper focused | | | | |

Source of Information: ☑Respondent ☐Affiant ☐Chart Review ☐Other

IT IS FURTHER ORDERED AND ADJUDGED that all the costs of this cause, in the amount of $410.00, be paid by Holmes County, Mississippi, for all which let execution issue.

IT IS FURTHER ORDERED AND ADJUDGED that the following entities and amounts be paid:

_____N/A_____  $ _____200.00_____
SPECIAL MASTER

_____CHARLIE LUCKETT_____  $ _____85.00_____
CLERK OF THE COURT

_____Katherine B. Riley_____  $ _____125.00_____
ATTORNEY FOR RESPONDENT

ORDERED AND ADJUDGED this the 11th day of September, 2020

_____JOHN M. GILMORE_____
SPECIAL MASTER

APPROVED BY:

_____[signature]_____
CHANCELLOR

_____Robert G. Clark III_____
PRINT NAME

APPROVED AS TO THE FORM ONLY:
_____Katherine B. Riley_____
_____Katherine B. Barrett w/ permission_____
ATTORNEY FOR RESPONDENT

_____Katherine B. Riley_____
PRINT NAME



## TO THE CHANCERY COURT OF HOLMES COUNTY, MISSISSIPPI

IN RE: __Carmen Thompson__

__ALLEGED TO BE MENTALLY ILL__      CIVIL ACTION FILE NO. _____

### PHYSICIAN-PSYCHOLOGIST CERTIFICATE

We, __Dr. Diahi Small__ and __Shonda Phelps__ do hereby certify that on the __4__ day of __September__ __2020__, we conducted a thorough mental and physical examination of __Carmen Thompson__ of Holmes County, Mississippi; the report of which is attached to this certificate.

We do further certify that recent behavior of said __Carmen Thompson__ has included:

__✓__ grossly disturbed behavior/faulty perceptive

__✓__ substantial likelihood of physical harm as manifested by:

     _____ recent threat or attempt to physically harm self or others

     __✓__ failure to provide necessary care

In my (our) opinion, __Carmen Thompson__ (does not pose) (poses) a substantial likelihood of physical harm to self or others and (should) (should not) be committed to a treatment facility. The reasons for my (our) opinion are as follows: Family reports pt exhibits odd behavior ie Talks about evil on Plantation, goes to old church at nite in unsafe neighborhood, feels she might be poisoned. Her speech is (driven) jumps from subject to subject.

So certified this the __4__ day of __September__, __2020__.

__C. C. Mullins__
Name

__Psychologist__
Title

__Shonde Phelps DNP, PMHNP-BC__
Name

__Psychiatric Nurse Pract__
Title

9/4/20 - Carmen remains manic + paranoid. She is not suicidal or homicidal. She has very poor insight + judgment. She could most likely be treated at the Crisis ctr. SP Phelps

 
The patient must be advised of the following things:

1. _____✓_____     Purpose of examination.
2. _____✓_____     Possible consequences of the examination.
3. _____✓_____     Right to refuse to answer any questions.
4. _____✓_____     Right to have his or her attorney present.

_____
Physician / Psychologist

pt has been diag. w/ Psychosis at
St. Dominics 18 mos ago. pt has been on
adderall & Xanax in past.
pt recently backed car into road
to slow down traffic. pt believes she
may have had Covis 19.

        pt denies all accusations
by family and feels her civil
rits have been violated.

h.s of Psychosis
No Bipolar DO        RLC: Inpt Tx.

09/04/2020 FRI 14:00 FAX 16622273740 LIFE HELP

09/04/2020 FRI 10:10 FAX

09/03/2020 THU 11:43 FAX 16622273740 LIFE HELP ☒003/005

☒002/004

☒003/005

SEP 14 '20 11:04 FROM- HOLMES CO CHANCERY O 6628341872    T-099  P0009/0019 F-385

The patient must be advised of the following things:

1. _____ Purpose of examination.
2. _____ Possible consequences of the examination.
3. _____ Right to refuse to answer any questions.
4. _____ Right to have his or her attorney present.

_____
Physician / Psychologist

Schizophrenia Spectrum

ref Inpt. Tx

IN THE CHANCERY COURT OF _____ HOLMES _____ County, Mississippi

IN THE MATTER OF _____ THOMPSON, CARMEN _____

CAUSE NO: _____ E20-0050 _____

DOA: _____ 09/23/2020 _____

## CERTIFICATE OF DISCHARGE

THOMPSON, CARMEN

TO: _____ CLERK OF COMMITTING COURT _____

In accordance with the provisions of sections 41-21-87 of the Mississippi Code of 1972 (Annotated), this civilly committed patient in the above case has been examined by members of the medical staff at Mississippi State Hospital, and as Director of Mississippi State Hospital, I certify that, in my judgement, the patient no longer poses a substantial threat of physical harm to self or others because of his/her mental illness and is:

_____ X _____ Discharged as can no longer benefit from treatment or services provided by Mississippi State Hospital

_____ Discharged as may be treated in a less restrictive environment than Mississippi State Hospital including Outpatient Commitment.

Or, I certify the above is discharged as:

_____ Eloped     _____ Expired     _____ Court order issued other than outpatient commitment

Discharge Date: 10/01/2020

WITNESS my signature this the _____ day of _____ Oct _____, 2020 _____

_____
JAMES G. CHASTAIN, DIRECTOR
MISSISSIPPI STATE HOSPITAL
WHITFIELD. MISSISSIPPI 39193

Attending Physician: **Jon Corey Jackson M.D.** Digitally signed by Jon Corey Jackson M.D. Date: 2020.10.02 11:42:55 -05'00'

_____
Jackson, Jon, MD                    Date

**FILED**
**HOLMES COUNTY,MS**
THIS 9th DAY OF October AT
CHARLIE LUCKETT, CHANCERY CLERK
BY _____ D.C.

MSH-206 (1/2015)                    Whitfield, Mississippi 39193

IN THE CHANCERY COURT OF HOLMES COUNTY, MISSISSIPPI

IN RE: __Carmen Thompson__

ALLEGED TO BE MENTALLY ILL    CIVIL ACTION FILE NO. __E20-00 50__

## ORDER OF CONFINEMENT

### PENDING HEARING

This matter having come on before the Court for the performance of the statutory examination, said examination having been made and the appointed examiners having reported to the Court as a result thereof, the Court finds as follows:

I

That the Court has jurisdiction of the subject matter and all necessary parties;

II

That the examination has been properly held before the Court and the (Physician's) (Physician's and Psychologist's) certificate has been presented to the Court according to Law;

III

That, based upon certificate and other pertinent, relevant and proper evidence, the Court is of the opinion that __Carmen Thompson__ poses a substantial likelihood of physical harm to self/others and (is) (is not) in need of medical assistance and/or medication to prevent physical injury to self or others.

IT IS, THEREFORE, ORDERED AND ADJUDGED that __Carmen Thompson__ be and (he) (she) is hereby placed in the custody of the Sheriff of Holmes County and there held (and given such treatment by a licensed physician as is indicated by standard medical practice), pending the hearing to be set and held according to law.

IT IS FURTHER ORDERED AND ADJUDGED that Willie E. March, Sheriff, is hereby

appointed, authorized and directed to immediately deliver respondent to the said facility.

SO ORDERED AND ADJUDGED this the _11th_ day of _September_, 2020.

_[signature]_

~~SPECIAL MASTER~~
Chancellor

F I L E D
HOLMES COUNTY, MS
THIS _11th_ DAY OF _September 2020_ AT _4:00 p.m._
CHARLIE LUCKETT, CHANCERY CLERK
BY _Anniquie Billicks_ D.C.

 
**:opy of 2020 Case**

message

**1arlie.luckett holmescountyms.org** <charlie.luckett@holmescountyms.org>
): Carmen <thompsoncarmenm107@gmail.com>

Mon, Feb 12, 2024 at 5:33 P

 **Carmen Thompson.pdf**
2845K

 
## :opy of 2020 Case

message

**iarlie.luckett holmescountyms.org** &lt;charlie.luckett@holmescountyms.org&gt;
): Carmen &lt;thompsoncarmenm107@gmail.com&gt;

Mon, Feb 12, 2024 at 5:33 P

 **Carmen Thompson.pdf**
2845K



## IN THE CHANCERY COURT OF HOLMES COUNTY, MISSISSIPPI

IN RE: **Carmen Thompson**

**ALLEGED TO BE MENTALLY ILL**

CIVIL ACTION FILE NO. **E20-00 50**

## UNIFORM COMMITMENT AFFIDAVIT
## PURSUANT TO MISSISSIPPI CODE SECTION 41-21-65

COMES NOW **Louie S Thompson** , relative and/or interested person, residing at **Tchula, MS** , telephone number **662-571-6179** , duly sworn and deposed, and says the following to be true and correct to the best of my knowledge and belief: is a person I allege to be in need of treatment by outpatient or inpatient commitment. To my knowledge this person **DOES / DOES NOT** (*circle one*) reside or have visitation rights with a **minor child** or children. Their nearest relative, if known, is **Carmen Thompson** , who resides at _____, telephone number _____.

I allege the person to be in need of treatment because the person is **mentally ill** under law and poses a likelihood of physical harm to themselves or others as demonstrated by (*mark as many as apply*) **x** a **recent attempt or threat** to physically harm themselves or others and/or __x__ **a failure and inability** to provide necessary food, clothing, shelter, safety, or medical care to themselves as a result of the impairment and/or __x__ **based on treatment history or other relevant evidence, this person is in need of treatment to prevent further disability or deterioration** which will predictably result in dangerousness when their current mental illness limits or negates their ability to make an informed decision to seek or comply with recommended treatment. To my knowledge the recent behavior described herein is **not cause by any of the following: epilepsy; intellectual disability; brief periods of intoxication; dependence upon or addiction to alcohol or drugs; or senile dementia.**

Factual descriptions of recent behavior, witnesses, and where and when it occurred, if known:

_____

**(see Attachment)**

_____ (*attach additional pages, if needed*)

SWORN TO AND SIGNED BY MY HAND this the __31__ day of **August** , **2020** A.D.

x _Louie S. Thompson_
**AFFIANT** (relative and/or interested person)

SWORN TO AND SUBSCRIBED BEFORE ME this the _31_ day of _Aug_ , **2020** A.D.

_Charlie Luckett_
NOTARY PUBLIC

_Chancery Clerk_



Affiant: Louie S. Thompson

Respondent: Carmen Thompson

DOB: October 8, 1985

SSN: 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

Address: 4260 Bee Lake RD, Tchula, MS 39269

Contact: 662-571-6179

Mr. and Mrs. Louie S. Thompson stated that their daughter, Carmen is in need of mental help at this time for the following reasons:

Her behavior has been erratic since Covid 19 hit.

After coming back home, she has had a psychotic episode on Father's day Weekend.

She has not been sleeping or eating properly.

She made threats against family members.

She left the family home last weekend and stated that she did not feel safe she feels that their lives are in danger also.

She thinks that someone is trying to kill her.

She can't care for himself at this juncture.

Mr. and Mrs. Thompson feels that she could harm herself or cause someone to harm her.

She is a threat to herself and others.

IN THE CHANCERY COURT OF HOLMES COUNTY, MISSISSIPPI

IN RE: **Carmen Thompson**
  ALLEGED TO BE MENTALLY ILL  CIVIL ACTION FILE NO. **E20-00 50**

## ORDER

IT APPEARING that the Affidavit filed in this cause sets forth factual allegations and the names of witnesses sufficient to support the alleged need for mental treatment of

**Carmen Thompson**
  (Respondent)

IT IS THEREFORE ORDERED AND ADJUDGED that the Clerk of this Court issue a Writ directed to the Sheriff of this County to take into his custody said Respondent and to bring said Respondent before said Clerk or the Special Master for examination as provided by Section 41-21-67 and Section 41-21-69, Mississippi Code of 1972.

ORDERED AND ADJUDGED this the 8th day of _____, 2020

_____
SPECIAL MASTER

IN THE CHANCERY COURT OF HOLMES COUNTY, MISSISSIPPI

IN RE: Carmen Thompson

ALLEGED TO BE MENTALLY ILL        CIVIL ACTION FILE NO. E20-00·50

## APPOINTMENT OF ATTORNEY

TO: Katherine B. Riley of Don Barrett, PA

The above styled matter having come before this Court according to the Law in the premises and the said Respondent having been found to be entitled to appointment of counsel according to the Statutes of the State, you are hereby appointed and directed to represent the said Carmen Thompson at the hearing, in the above styled matter.

ORDERED AND ADJUDGED, this the 8th day of September, 2020.

SPECIAL MASTER
Chancellor

IN THE CHANCERY COURT OF HOLMES COUNTY, MISSISSIPPI

IN RE: **Carmen Thompson**

ALLEGED TO BE MENTALLY ILL          CIVIL ACTION FILE NO. **E20-00 50**

## APPOINTMENT OF PHYSICIAN / PSYCHOLOGIST / NURSE PRACTITIONER/ PHYSICIAN ASSISTANT

TO:   **Dr. Charles Small, PHD and Shunda Phelon, PNP**

An affidavit having been made by **Louie S Thompson** that one **Carmen Thompson** is in need of mental treatment, you are hereby appointed and directed to make a full inquiry into the mental condition of and make a thorough physical and mental examination of such person at Region VI Mental Health, Greenwood, Mississippi, within twenty-four (24) hours of this notice.

You are further ordered, at the beginning of the examination, to tell said **Carmen Thompson** in plain language of the purpose of the examination, its possible consequences, and his/her right to refuse to answer questions and to have his/her lawyer present; and to report your findings in writing within the time set by law to the Clerk of the Chancery Court.

GIVEN UNDER MY HAND and official seal, and issued this the 8ᵗʰ day of _____ 2020 at 9:00 (a.m.)(p.m.).

_____
SPECIAL MASTER

IN THE CHANCERY COURT OF HOLMES COUNTY, MISSISSIPPI

IN RE: __Carmen Thompson__

### ALLEGED TO BE MENTALLY ILL

CIVIL ACTION FILE NO. __E20-00__

## WRIT TO TAKE CUSTODY

TO THE SHERIFF of __HOLMES__ County, Mississippi.

An Affidavit having been made, alleging that one __Carmen Thompson__ ,
now in your County, is in need of mental treatment, you are hereby commanded to immediately take said person into your custody and place (her) (him) at __Grenada Crisis__ _____, and retain custody of said person until further order of the undersigned, so that (she) (he) may be examined according to law by the appropriate mental health center, and those duly appointed by the Special Master. You shall report hereon of your compliance herewith and file same with the Clerk of this Court.

Given under my hand and official seal, this the __31__ day of __August__ , __2020__, at _____ (A.M.) (P.M.)

CHARLIE LUCKETT, Chancery Clerk

By: _Charlie Luckett_ , D.C.

Custody Taken: _____, __2020__ (A.M.) (P.M.)

Delivered

To: _____ at

_____ (A.M.) (P.M.)

Persons present at time and place of taking custody (preferably relatives):

Name

Address

WILLIE E. MARCH, SHERIFF

By: _____

... FOR SUGGESTING LIFE HELP



# Adult Pre-Evaluation Screening

Date: 9/3/20    Time in: 9:30    Time Out: 10:30    Interview Location: Grenada Crisis
Individual's Present: LWD and Staff
Interpretative Aids/Assisted Devices: None Reported
Case Number: 22803    Parking Felony Charges: ☐ Yes  ☒ No
In the          Court of Chancery    CMHC Region: Region VI
County: Holmes    Voluntary CSU Admission Sought: ☐ Yes  ☒ No
Mobile Crisis Involvement: ☐ Yes  ☒ No

Information from this interview will be reported on a standardized form and submitted to the chancery court and civil commitment examiners. You have the right to refuse to participate. Other sources of information including a review of your legal medical records and interviews with family member and the affiant requesting commitment will be included in this report.

Name: Carmen Thompson    DOB: 10/08/1985    Age: 34    Gender: Female    Race: White
Social Sec #: 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    Medicaid #: N/A    Medicare#: N/A
Home Address: 4260 Bee Lake Rd, Tchula, Ms 39169    Phone Number: (662) 763-4727
Respondent resides with minor children: ☐ Yes  ☒ No    Name & Ages of Children:
Respondent resident has visitation rights to minor children: ☐ Yes  ☐ No    Name & Ages of Children:
Respondent resides has legal guardian/conservator: ☐ Yes  ☐ No    Name & Ages of Children:
Source of Information: ☒ Respondent  ☐ Affiant  ☐ Chart Review  ☐ Other

Affiant Name: Louis S. Thompson    Relation of Respondent: Father
Phone Number: (662) 571-6179    Home Address: 4260 Bee Lake Rd, Tchula, MS 39169
Source of Information: ☐ Respondent  ☐ Affiant  ☒ Chart Review  ☐ Other

Current Living: ☐ Alone  ☒ Family  ☐ Friends  ☐ Assisted Living  ☐ Homeless  ☐ Other/Describe:
Housing:    Dwelling:    Marital Status: Single    Home Address: 4260 Bee Lake
Employed: ☐ Yes  ☒ No    Employer/Position:    Length of Job:
If unemployed (most recent job?):
Religious Preference or Practice: Unknown    Highest Level of Education Completed: 16
Source of Information: ☒ Respondent  ☐ Affiant  ☐ Chart Review  ☐ Other

Current Psychotropic Medications: None reported    Dosage & Date/Time Last Taken:    Is the medication helpful or problematic:
Psychiatric Hospitalizations:    Locations/Dates:
Enter Location and Date
Outpatient Treatment:    Locations/Dates:
Psychological Testing:    Provider/Dates:
Source of Information: ☐ Respondent  ☐ Affiant  ☐ Chart Review  ☐ Other

*Individual refused to answer question*

| Current Medications (not listed above): | Dosage & Date/Time Last Taken: | Is this medication helpful or problematic: |
|---|---|---|

| Known Medication Allergies: | | |
|---|---|---|
| Currently Under Physician Care For: | Physician's Name: | |
| Conditions Treated In The Past: | Provider/Date: | |
| Medical Hospitalization History: | Physical Disabilities: | |

**Current Communicable Diseases:**

☐HIV/AIDS   ☐Hepatitis A   ☐Hepatitis B   ☐Hepatitis C   ☐TB (Tuberculosis)

☐MRSA   ☐Influenza   ☐Head Lice   ☐Scabies   ☐Body Lice   ☐STIs   ☐Other

Currently Pregnant: ☐ Yes   ☐ No

Source of Information: ☐Respondent  ☐Affiant  ☐Chart Review  ☐Other

| History of Special Education Rating: ☐ Yes   ☐ No | If yes, describe: |
|---|---|
| Documented IQ below 70: ☐ Yes   ☐ No | If yes, describe: |
| Documented sub-average intellectual functioning before age 18: ☐ Yes   ☐ No | If yes, describe: |
| Documented Adaptive Functioning Deficits: ☐ Yes   ☐ No | If yes, describe: |

Specific Observed Adaptive Functioning Deficits:

Source of Information: ☐Respondent  ☐Affiant  ☐Chart Review  ☐Other

| Oriented to Date:   Time:   Place: | |
|---|---|
| *Cue for three words (provide words) | |
| President: | |
| Counting Response: | |
| Word Recall: | |
| Completed Written Commands: ☐ Yes   ☐ No If no, describe: | |
| What do you understand the reason for our meeting today to be? | |

Source of Information: ☐Respondent  ☐Affiant  ☐Chart Review  ☐Other

| | | Respondent (R ) Informant (I) | | | | | |
|---|---|---|---|---|---|---|---|
| Depressive Symptoms | R | I | Anxiety Symptoms | R | I | Somatic Symptoms | R | I |
| ☐ Depressed mood most of the day | ☐ | ☐ | ☐ Worry | ☐ | ☐ | ☐ Headaches | ☐ | ☐ |
| ☐ Lack of Interest/Pleasure | ☐ | ☐ | ☐ Restlessness | ☐ | ☐ | ☐ Chest Discomfort/Pain | ☐ | ☐ |
| ☐ Appetite Change or Sig Weight Change | ☐ | ☐ | ☐ Easily Fatigued | ☐ | ☐ | ☐ Faintness | ☐ | ☐ |
| ☐ Insomnia (Difficulty Falling Asleep) | ☐ | ☐ | ☐ Irritability | ☐ | ☐ | ☐ Hot or Cold Flashes | ☐ | ☐ |
| ☐ Feelings of Worthlessness | ☐ | ☐ | ☐ Muscle Tension | ☐ | ☐ | ☐ Stomach Aches/Pains | ☐ | ☐ |
| ☐ Fatigue or Loss of Energy | ☐ | ☐ | ☐ Difficulty Concentrating | ☐ | ☐ | ☐ Heart Palpitations | ☐ | ☐ |
| ☐ Diminished Concentration | ☐ | ☐ | ☐ Sleep Disturbance | ☐ | ☐ | ☐ Dizziness or Vertigo | ☐ | ☐ |

*Individual refused to answer questions*

| | R | I | Other | | | | R |
|---|---|---|---|---|---|---|---|
| ☐ Indecisiveness | ☐ | ☐ | ☐ Other | ☐ | ☐ | ☐ Shaking/Trembling | ☐ |
| ☐ Hypersomnia (Sleeping Excessively) | ☐ | ☐ | | | | ☐ Tingling in hands or feet | ☐ |
| ☐ Recurrent Thoughts of Death | ☐ | ☐ | | | | ☐ Excessive Sweating | ☐ |
| ☐ Motor Retardation | ☐ | ☐ | | | | ☐ Other | ☐ |
| | | | | | | | ☐ |
| ☐ Motor Agitation | ☐ | ☐ | | | | | |
| ☐ Feelings of Hopelessness | ☐ | ☐ | | | | | |
| ☐ Other | ☐ | ☐ | | | | | |

| Manic & Hypomanic Symptoms | R | I | | | R | I |
|---|---|---|---|---|---|---|
| ☐ At least 1 week | ☐ | ☐ | ☐ More talkative than usual | | ☐ | ☐ |
| ☐ 4 consecutive days < weeks | ☐ | ☐ | ☐ Excessive involvement in activities with high potential for painful consequences | | ☐ | ☐ |
| ☐ Flight of ideas/racing thoughts | ☐ | ☐ | ☐ Distractibility | | ☐ | ☐ |
| ☐ Decreased need for sleep | ☐ | ☐ | Persistent elevated, or irritable mood and significant increase in goal directed activity  ☐ Yes ☐ No | | ☐ | ☐ |
| ☐ Increased self-esteem of Grandiosity | ☐ | ☐ | | | | |

| Thought Disorder Symptoms | R | I | | R | I |
|---|---|---|---|---|---|
| ☐ Hallucinations | ☐ | ☐ | ☐ Absence of emotions | ☐ | ☐ |
| ☐ Auditory ☐ Visual ☐ Olfactory | ☐ | ☐ | ☐ Absence of speech | ☐ | ☐ |
| ☐ Tactile ☐ Gustatory | ☐ | ☐ | ☐ Absence of movement | ☐ | ☐ |
| Specific Hallucinations: | ☐ | ☐ | ☐ Lack of Hygiene | ☐ | ☐ |
| ☐ Delusions | ☐ | ☐ | ☐ Lack of eating/feeding | ☐ | ☐ |
| ☐ Persecutory ☐ Grandiose ☐ Paranoid ☐ Other | ☐ | ☐ | | | |
| Specific Delusions: | | | | | |

| Obsessive Compulsive Symptoms | | | | | |
|---|---|---|---|---|---|
| Obsessive Thoughts ☐ Yes ☐ No | ☐ | ☐ | Compulsive Behaviors ☐ Yes ☐ No | ☐ | ☐ |
| Severity: ☐ Mild ☐ Moderate ☐ Severe | ☐ | ☐ | Severity: ☐ Mild ☐ Moderate ☐ Severe | ☐ | ☐ |
| Specific Obsessions: | ☐ | ☐ | Specific Compulsions: | ☐ | ☐ |

Trauma Exposure ☐ Yes ☐ No Type(approx. Date)

Trauma Triggers:

| Environmental | ☐ Crowding | ☐ Room checks | ☐ Confusing signs | ☐ Slamming doors |
|---|---|---|---|---|
| | ☐ Leaving bedroom door open | ☐ Dark room | ☐ Too hot or too cold | ☐ Noise |
| Interpersonal | ☐ Lack of privacy<br>☐ Confined spaces | ☐ Being approached by man or woman<br>☐ Being touched | ☐ Arguments<br>☐ People too close | ☐ People Yelling<br>☐ Contact with Family |
| | ☐ Being stared at | ☐ Being ignored | ☐ Feeling pressured | ☐ Being ordered to do something |
| | ☐ Being approached by woman | ☐ Being Teased/picked on<br>☐ Tall or large | ☐ People focusing on my symptoms | ☐ Smells |
| Other Triggers | ☐ Taste  ☐ Time of Day | ☐ Sounds ☐ Sights | ☐ Sensations/textures | ☐ Wringing hands |
| Warning Signs of Emotional escalations | ☐ Heart Pounding<br>☐ Clenching teeth<br>☐ Bouncing legs<br>☐ Sweating | ☐ Shortness of Breath<br>☐ Flushed/red face<br>☐ Singing<br>☐ Pacing | ☐ Breathing Hard<br>☐ Crying<br>☐ Can't sit still<br>☐ Pacing | ☐ Wringing hands<br>☐ Clenching fists<br>☐ Cursing/swearing<br>☐ Clenching |




## Individual refused to answer Questions

| Prior Attempts: | Friend or Family Member Completed Suicide: |
|---|---|
| Approximate Date: | Approximate Date: |
| Method of attempt | Method of suicide: |
| | Source of Information: ☐Respondent ☐Affiant ☐Chart Review ☐Other |

| ☐ Thoughts of suicide | ☐ Threats of suicide | ☐ Plan for suicide | ☐ Pre-occupation with death |
|---|---|---|---|
| ☐ Suicide gesture | ☐ Suicide attempts | ☐ Family history of suicide | ☐ Self-mutilation |
| ☐ Inability to care for self | ☐ High risk behavior | ☐ Provoking harm to self from others | |

☐ Other

Describe: _____

Current thoughts about harming another person  ☐ Yes  ☐ No

If Yes, whom:
If yes, how long have you had these thoughts?
If yes, specific plan:
Access to means to carry out plan:

Source of Information: ☐Respondent ☐Affiant ☐Chart Review ☐Other

| Present | Unknown | | Present | Unknown | |
|---|---|---|---|---|---|
| ☐ | ☐ | Male Gender | ☐ | ☐ | Substance Abuse |
| ☐ | ☐ | Suspiciousness/Perception of hidden threat | ☐ | ☐ | Comorbid MI & Substance Use Dx |
| ☐ | ☐ | Early offense history | ☐ | ☐ | Anger |
| ☐ | ☐ | Psychopathy (PCL:SV>12) | ☐ | ☐ | Antisocial Personality Diagnosis |
| ☐ | ☐ | Violent Fantasies | | | Frequency, type, recency |
| ☐ | ☐ | Previous violence against other people | | | Frequency, severity, type |
| ☐ | ☐ | Childhood physical abuse | | | Frequency, severity |

Source of Information: ☐Respondent ☐Affiant ☐Chart Review ☐Other

| Do you currently use? | Past Use | Amount | Frequency | Age of Initiation |
|---|---|---|---|---|
| Caffeine | | | | |
| Nicotine | | | | |
| Alcohol | | | | |
| Marijuana | | | | |
| Opioids | | | | |
| Amphetamines | | | | |
| Hallucinogens | | | | |
| Prescription Medication | | | | |
| Over the counter medication | | | | |

History of legal charges related to substance use?  ☐ Yes  ☐ No          Describe:

Source of Information: ☐Respondent ☐Affiant ☐Chart Review ☐Other

 

*Individual refused to answer questions*

| | Attire | Hair | Nails | Skin | |
|---|---|---|---|---|---|
| ☐ Glasses | ☐ Appropriate for occasion | ☐ Clean | ☐ Clean | ☐ Clean | ☐ Bruised |
| ☐ Contacts | ☐ Appropriate for weather | ☐ Dirty | ☐ Dirty | ☐ Dirty | ☐ Cuts/Scrapes |
| ☐ Hearing Aids | ☐ Clean | ☐ Disheveled | ☐ | ☐ Tattoos Describe: | |
| | ☐ Dirty | ☐ Styled | | | |
| | ☐ Torn/worn through | | ☐ | ☐ Sores | |
| | ☐ Other | | ☐ | | |

| Teeth | Unusual alterations or distinguishing features: |
|---|---|
| ☐ Clean | |
| ☐ Dirty | |
| ☐ Decay | |
| ☐ Missing | |

Source of Information: ☐Respondent ☐Affiant ☐Chart Review ☐Other

**Motor Activity**

| Diminished | Normal | Excessive | Unusual | |
|---|---|---|---|---|
| ☐ Frozen | ☐ Purposeful | ☐ Restless | ☐ Other | |
| ☐ Catatonic | ☐ Coordinated | ☐ Squirming | | |
| ☐ Almost motionless | ☐ Other | ☐ Fidgety | | |
| ☐ Little animation | | ☐ Constant movement | | |
| ☐ Psychomotor retardation | | ☐ Hyperactive | | |
| ☐ Slowed reaction time | | ☐ Other | | |
| ☐ Other | | | | |

**Speech**

| Slowed | Normal | Pressured | Verbose | Unusual |
|---|---|---|---|---|
| ☐ Minimal response | ☐ Initiates | ☐ Excessively wordy | ☐ Over productive | ☐ |
| ☐ Unspontaneous | ☐ Alert/responsive | ☐ Expansive | ☐ Long winded | |
| ☐ Sluggish | ☐ Productive | ☐ Rapid | ☐ Non stop | |
| ☐ Paucity | ☐ Animated | ☐ Fast | ☐ Frequent run-ons | |
| ☐ Impoverished | ☐ Spontaneous | ☐ Rushed | ☐ Flight of ideas | |
| ☐ Single word answers | ☐ Smooth | ☐ Other | ☐ Hyper verbal | |
| ☐ Other | ☐ Other | | ☐ Other | |

**Thought Process**

| Attention | Insight | Preoccupations | | |
|---|---|---|---|---|
| ☐ Normal | ☐ Good | ☐ Somatic | ☐ Self | |
| ☐ Unengaged | ☐ Fair | ☐ Children | ☐ Finances | |
| ☐ Distractible | ☐ Poor | ☐ Spouse/Sig Other | ☐ Other | |
| ☐ Hyper vigilant | ☐ No insight | ☐ Job | | |
| ☐ Hyper focused | | | | |

Source of Information: ☑Respondent ☐Affiant ☐Chart Review ☐Other




| Affect | | | | |
|---|---|---|---|---|
| ☐Flat | ☑ Blunted | ☐ Constricted | ☐ Normal | ☐Broad |
| Facial Expression | | | | |
| ☐ Vacant | | | | |
| ☑ Blank | | | | |
| ☐ Strained | | | | |
| ☐Pained | | | | |
| ☐ Grimacing | | | | |
| ☐ Smiling | | | | |
| ☐ Other | | | | |

Source of Information: ☑Respondent ☐Affiant ☐Chart Review ☐Other

## Summary & Recommendations

Additional Comments:

Based on the data gathered for the current Pre Evaluation Screening:

☐ It is **NOT** recommended that this respondent receive a civil commitment exam.

1) Current available information indicates that present symptomatology is due to

☐Dementia ☐Intellectual/Developmental Disability ☐ Epilepsy ☐Chemical Dependency
☐Mental Illness

2) The following referrals for appropriate evaluation or treatment have been provided:
a.

b.

c.

☑ It **IS** recommended that this respondent receive a civil commitment exam. Based on the data available for the current Pre Screening Evaluation the following symptomatology cannot be managed/treated in a less restrictive environment:

1) Individual has made threats against family member
2) Individual feels that someone is trying to pois
3) Individual is having erratic behavior. Re
4) Individual left her family home last week
Stating that she did not feel safe and she felt that her
parents were not safe either.   Ida L. Crockett CMHT

Signature-Credentials

# IN THE CHANCERY COURT OF HOLMES COUNTY, MISSISSIPPI

IN RE: **Carmen Thompson**

ALLEGED TO BE MENTALLY ILL        CIVIL ACTION FILE NO.  **E20-00 50**

## NOTICE OF HEARING

TO:   **Carmen Thompson**

_____
(Respondent)

**Katherine B Riley of Don Barrett, PA**
_____
(Attorney)
**Loiue S Thompson**
**Mrs. Louie Thompson**
_____
(Relative of Respondent)

**Dr. Julia Thompson-Massey, MD**
_____
(Relative of Respondent)
**Cadi Thompson-Appleby**

_____
(Guardian of Respondent)
**Martha Foose**
**Whitney Thompson**
_____
(Witness)

Region VI Mental Health
Post Office Box 1505
Greenwood, Mississippi 38930
Telephone No.: 601-453-6211

Affidavit having been made by __**Louie S. Thompson**_____ that
one __**Carmen Thompson**_____is in need of mental treatment as provided by
Mississippi Code of 1972, §41-21-61, et seq.

Respondent having been examined by
**Dr Charles Small, PHD and Shonda Phelon, PNP**_____
(Two Physicians)  (One Physician and One Psychologist)  (One Physician and One Nurse Practitioner)  (One Physician and Physician Assistant)

as provided by said law, and it having been by them certified that Respondent is a person in need of
mental treatment you are hereby notified that a full hearing regarding this matter has been set for
__1:30____ (a.m.) (p.m.), the __11__ day of __September_____, __2020__, at the alternate courtroom
of Holmes County Courthouse in Lexington, Mississippi, as provided by law and you are required
to then and there be present. Herein fail not.

SO ORDERED this the __11__ day of __September_____ A. D., __2020__

CHARLIE LUCKETT, Chancery Clerk

BY: _____*Charlie Luckett*_____ D.C.

Possible consequences or outcome of the hearing include commitment to Mississippi State Hospital at Whitfield, or  any like mental health facility; outpatient treatment with specific reference to a treatment regimen; day treatment in a hospital; night treatment in a hospital; placement in the custody of a friend or relative; the provision of home health services.

Executed the within writ personally by delivering to each of the within named

Carmen Thompson, Mr. and Mrs Louie Thompson, Dr. Julia Thompson-Massey, Cadi Thompson Appleby, Martha Foose, Whitney Thompson and Katherine B. Riley of Don Barrett, PA

a true copy of this writ and a copy of the Affidavit and Application for commitment.

This the _____ day of _____, **2020**.

WILLIE MARCH, SHERIFF

By:_____, D. S.

# IN THE CHANCERY COURT OF HOLMES COUNTY, MISSISSIPPI

IN RE: **Carmen Thompson**

ALLEGED TO BE MENTALLY ILL          CIVIL ACTION FILE NO. **E20-00 50**

## ORDER OF COMMITMENT

This matter having come on for hearing according to law, and the Court having found as follows:

### I.

The Respondent (please mark one)

☐ was present at the hearing

☒ participated via teleconference.

☐ knowingly waived a hearing with the approval of the Court (Waiver attached)

☐ was unable to attend the hearing for the following reasons:

_____

_____

### II.

The Court has jurisdiction of the subject matter and the necessary parties.

### III.

The Court

☒ received a record of all drugs or other treatment received by the Respondent pending the hearing

☐ has determined that an accurate record of drugs or medication is not practical for the following reasons _____.

### IV.

The Respondent was not so under the influence of drugs, medication, or other treatment as to be hampered in participating in the proceedings.

### V.

The Respondent has recently threatened/attempted to physically harm self/others:
*Pulling in traffic with her car, Walking many miles in the middle of the night*

### VI.

The Respondent has recently failed to care for self: (food) (clothing) (shelter) (medical care) _____

**FILED**
HOLMES COUNTY, MS
THIS _11th_ DAY OF _September_ 2020 AT 4:00 P.M.
CHARLIE LUCKETT CHANCERY CLERK
BY _Dranique Bullock_ D.C.

## VII.

The Respondent, by clear and convincing evidence, is a mentally ill person who poses a substantial likelihood of physical harm to self/others: _____.

## VIII.

The following out-patient care/alternate living arrangements/other has/have been considered as an alternative to institutionalization: commitment to inpatient care considered by the Court were voluntary and Court ordered outpatient treatment with specific reference to a treatment regimen; day treatment in a hospital; night treatment in a hospital; placement in the custody of a friend or relative; the provision of home health services; and

_____.

Each of said alternatives considered are found not suitable as treatment because: *Patient was admitted voluntary commit in the year and was referred... admitted... to... outpatient treatment. She failed to obtain said treatment*

## IX.

There is no suitable alternative to judicial commitment.

IT IS THEREFORE ORDERED AND ADJUDGED that the Respondent be committed to ~~Grenada Crisis~~ _____ / Grenada Crisis Center, Grenada, Mississippi/ Mississippi State Hospital, Whitfield, Mississippi, or any Mississippi Department of Mental Health program for observation, diagnosis, and treatment as may be determined and coordinated by the aforementioned treatment program;

**Grenada Crisis** _____ for holding, treatment, and medication until such time as the director of the treatment facility, where the Respondent is committed, discharges the Respondent upon the filing of a certificate of discharge with the Chancery Clerk of Holmes County, Mississippi, Post Office Box 1211, Lexington, Mississippi 39095, certifying that the Respondent, in his/her judgment, no longer poses a substantial threat of physical harm to himself/herself or others, pursuant to Mississippi Code of 1972, Section 41-21-87 OR until a bed becomes available at a Mississippi Department of Mental Health program. (*Said commitment to remain in effect not to exceed Ninety (90) days, unless terminated earlier as provided by law.*)

IT IS FURTHER ORDERED AND ADJUDGED that Willie E. March, Sheriff of Holmes County, Mississippi, be and is hereby appointed and authorized to deliver the Respondent to the director of said institution.

IT IS FURTHER ORDERED AND ADJUDGED that all the costs of this cause, in the amount of $410.00, be paid by Holmes County, Mississippi, for all which let execution issue.

IT IS FURTHER ORDERED AND ADJUDGED that the following entities and amounts be paid:

_N/A_
SPECIAL MASTER                     $ ___200.00___

**CHARLIE LUCKETT**
CLERK OF THE COURT                 $ ___85.00___

_Katherine B. Riley_
ATTORNEY FOR RESPONDENT            $ ___125.00___

ORDERED AND ADJUDGED this the _11th_ day of _September_, _2020_

JOHN M. GILMORE
SPECIAL MASTER

APPROVED BY:

_[signature]_
CHANCELLOR
_Robert G. Clark III_
PRINT NAME

APPROVED AS TO THE FORM ONLY:
_Katherine B. Riley_
_[signature] w/ permission_
ATTORNEY FOR RESPONDENT
_Katherine B. Riley_
PRINT NAME

TO THE CHANCERY COURT OF HOLMES COUNTY, MISSISSIPPI

IN RE: Carmen Thompson

ALLEGED TO BE MENTALLY ILL          CIVIL ACTION FILE NO. _____

## PHYSICIAN-PSYCHOLOGIST CERTIFICATE

We, Dr. Charles Small and Shonda Phelps
do hereby certify that on the 4 day of September
2020, we conducted a thorough mental and physical examination of Carmen Thompson
of Holmes County, Mississippi; the report of which is attached to this certificate.

We do further certify that recent behavior of said Carmen Thompson
has included:

___✓___ grossly disturbed behavior/faulty perceptive

___✓___ substantial likelihood of physical harm as manifested by:

    _____ recent threat or attempt to physically harm self or others

    ___✓___ failure to provide necessary care

In my (our) opinion, Carmen Thompson
(does not pose) poses a substantial likelihood of physical harm to self or others and should (should
not) be committed to a treatment facility. The reasons for my (our) opinion are as follows:
Family reports pt exhibits odd behavior ie
Talks about evil on Plantation, goes to all
church at nite in unsafe neighborhood,
feels she might be poisoned, her speech is
driven, jumps from subject to subject.

So certified this the 4 day of September, 2020.

_____          ___psychologist___
Name                              Title

Shonda Phelps DNP, PMHNP-       Psychiatric Nurse Pract
Name                    PoC      Title

9/4/20 - Carmen remains manic & paranoid. She
is not suicidal or homicidal. She has very
poor insight & judgment. She could most
likely be treated at the Crisis center Phelps

09/04/2020 PRI 13:50 FAX 16622273740 LIFE HELP

09/04/2020 PRI 10:10 FAX

09/03/2020 THU 11:43 FAX 16622273740 LIFE HELP

☒005/005

☒004/004

FROM- HOLMES CO CHANCERY C 6628941872    T-039 P0009/0019 F-385

The patient must be advised of the following things:

1. _____✓_____    Purpose of examination.
2. _____✓_____    Possible consequences of the examination.
3. _____✓_____    Right to refuse to answer any questions.
4. _____✓_____    Right to have his or her attorney present.

_____
Physician / Psychologist

pt has been diag. w/ Psychosis at St. Dominics 18 mos ago. pt has been on adderall & Xanax in past.

pt recently backed car in to road to slow down traffic. pt believes she may have had Covid 19.

pt denies all accusations by family and feels her civil rits have been violated.

hx of Psychosis
r/o Bipolar DO          rec: Inpt Tx.

The patient must be advised of the following things:

1.  _____✓_____  Purpose of examination.
2.  _____✓_____  Possible consequences of the examination.
3.  _____✓_____  Right to refuse to answer any questions.
4.  _____✓_____  Right to have his or her attorney present.

_____
Physician / Psychologist

Schizophrenia Spectrum

ref Inpt. Tx

IN THE CHANCERY COURT OF _____ HOLMES _____ County, Mississippi

IN THE MATTER OF _____ THOMPSON, CARMEN _____

CAUSE NO: ___ E20-0050

DOA: ___ 09/23/2020

## CERTIFICATE OF DISCHARGE

THOMPSON, CARMEN _____

TO: _____ CLERK OF COMMITTING COURT _____

In accordance with the provisions of sections 41-21-87 of the Mississippi Code of 1972 (Annotated), this civilly committed patient in the above case has been examined by members of the medical staff at Mississippi State Hospital, and as Director of Mississippi State Hospital, I certify that, in my judgement, the patient no longer poses a substantial threat of physical harm to self or others because of his/her mental illness and is:

___ X ___ Discharged as can no longer benefit from treatment or services provided by Mississippi State Hospital

___ Discharged as may be treated in a less restrictive environment than Mississippi State Hospital including Outpatient Commitment.

Or, I certify the above is discharged as:

___ Eloped     ___ Expired     Court order issued other than outpatient commitment

Discharge Date: 10/01/2020

WITNESS my signature this the _____ day of _Oct_ , _2020_

JAMES G. CHASTAIN, DIRECTOR
MISSISSIPPI STATE HOSPITAL
WHITFIELD, MISSISSIPPI 39193

Attending Physician: Jon Corey Jackson M.D. Digitally signed by Jon Corey Jackson M.D. Date: 2020.10.02 11:42:55 05'00'

Jackson, Jon, MD _____     Date

FILED
HOLMES COUNTY, MS
THIS _9th_ DAY OF _October_ AT
CHARLIE LUCKETT, CHANCERY CLERK
BY _____ D.C.

MSH-206 (1/2015)     Whitfield, Mississippi 39193



# MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY
NATIONAL INSTANT CRIMINAL BACKGROUND CHECK SYSTEM (NICS) ENTRY FORM

The following information is provided to the Mississippi Department of Public Safety/Mississippi Criminal Information Center by the Court listed below as required by MCA § 9-1-49.

☒ Initial entry of "Federal Prohibited Person" information for NICS exclusion (ADD)
☐ Correction of "Federal Prohibited-Person" information for NICS exclusion (CORRECT)
☐ Person restored to reason or enters an order of relief from a firearms disability (REMOVE)

| Name of Court providing "Federal Prohibited-Person Information": | Originating Agency I.D. (ORI): |
|---|---|
| Holmes County Chancery | MS026013D |
| Name & Title of person submitting information: | Court Telephone Number: |
| Dominique Bullocks | 662-834-2508 |

| **The following information is required | Court Case/Cause no: |
|---|---|
| Complete Name: (Federal Prohibited Person) Carmen Thompson | 20-0050 |

| Sex: Female | Race: White | Date of Birth: 10/8/1985 |
|---|---|---|

| Federal Prohibited Person Information that is the basis of this report: |
|---|
| Mental Commitment |

The following is any additionally known information

| Social Security Number: | Driver's License Number: | State Identification Card Number: |
|---|---|---|
| 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 | n/a | n/a |
| Place of Birth: unknown | State of Residence: unknown | Scars,Marks,Tatoos: unknown |
| Other Information: | | |

IN THE CHANCERY COURT OF HOLMES COUNTY, MISSISSIPPI

IN RE: __Carmen Thompson__

__ALLEGED TO BE MENTALLY ILL__          CIVIL ACTION FILE NO. __E20-00 50__

## ORDER OF CONFINEMENT

### PENDING HEARING

This matter having come on before the Court for the performance of the statutory examination, said examination having been made and the appointed examiners having reported to the Court as a result thereof, the Court finds as follows:

I

That the Court has jurisdiction of the subject matter and all necessary parties;

II

That the examination has been properly held before the Court and the (Physician's) (Physician's and Psychologist's) certificate has been presented to the Court according to Law;

III

That, based upon certificate and other pertinent, relevant and proper evidence, the Court is of the opinion that __Carmen Thompson__ poses a substantial likelihood of physical harm to self/others and (is) (is not) in need of medical assistance and/or medication to prevent physical injury to self or others.

IT IS, THEREFORE, ORDERED AND ADJUDGED that __Carmen Thompson__ be and (he) (she) is hereby placed in the custody of the Sheriff of Holmes County and there held (and given such treatment by a licensed physician as is indicated by standard medical practice), pending the hearing to be set and held according to law.

IT IS FURTHER ORDERED AND ADJUDGED that Willie E. March, Sheriff, is hereby appointed, authorized and directed to immediately deliver respondent to the said facility.

SO ORDERED AND ADJUDGED this the 11th day of September, 2020.

~~SPECIAL MASTER~~

Chancellor

F I L E D
HOLMES COUNTY, MS
THIS 11th DAY OF September 2020 4:00 pm
CHARLIE LUCKET / CHANCERY CLERK
BY _Monique Billocks_

 

## RE: Petition to the court for motion on good cause to issue an ORDER to unseal "my case" as of December 24, 2024

1 message

**Katherine Barrett Riley** <KBRiley@barrettlawgroup.com>      Mon, Feb 3, 2025 at 6:38 PM
To: Carmen <thompsoncarmenm107@gmail.com>, "luckettcharlie@yahoo.com" <luckettcharlie@yahoo.com>, "harlie.luckett holmescountyms.org" <charlie.luckett@holmescountyms.org>, "jhoward holmescountyms.org" <jhoward@holmescountyms.org>, Tony Geiger <tony.geiger@ago.ms.gov>, "USAMSS.CivilRights@usdoj.gov" <USAMSS.CivilRights@usdoj.gov>, "usamss.public.affairs@usdoj.gov" <usamss.public.affairs@usdoj.gov>
Cc: Louie Thompson <tfisheries@aol.com>, Cathy Thompson <crtrnc@aol.com>, "wmtpluto@gmail.com" <wmtpluto@gmail.com>, "jathompson2@outlook.com" <jathompson2@outlook.com>, "ceure@house.ms.gov" <ceure@house.ms.gov>, "kford@house.ms.gov" <kford@house.ms.gov>, "khoran@house.ms.gov" <khoran@house.ms.gov>, "hzuber@house.ms.gov" <hzuber@house.ms.gov>, "cmickens@house.ms.gov" <cmickens@house.ms.gov>, "jkeen@house.ms.gov" <jkeen@house.ms.gov>, "tjamesjones@house.ms.gov" <tjamesjones@house.ms.gov>, "ljackson@house.ms.gov" <ljackson@house.ms.gov>, "jhood@house.ms.gov" <jhood@house.ms.gov>, "jhines@house.ms.gov" <jhines@house.ms.gov>, "sfoster@house.ms.gov" <sfoster@house.ms.gov>, "lbyrd@house.ms.gov" <lbyrd@house.ms.gov>, "bclark@house.ms.gov" <bclark@house.ms.gov>, "aboyd@house.ms.gov" <aboyd@house.ms.gov>, "lblackmon@house.ms.gov" <lblackmon@house.ms.gov>, "dbell@house.ms.gov" <dbell@house.ms.gov>, "Dannywarchild@gmail.com" <Dannywarchild@gmail.com>, "warnold@house.ms.gov" <warnold@house.ms.gov>, "janderson@house.ms.gov" <janderson@house.ms.gov>, "oanthony@house.ms.gov" <oanthony@house.ms.gov>, "one-ordinary-average-guy@pm.me" <one-ordinary-average-guy@pm.me>, "roberta_baskin@yahoo.com" <roberta_baskin@yahoo.com>, Stanford Law School <admissions@law.stanford.edu>, Drexel Kline Law Admissions <lawadmissions@drexel.edu>, "howard@regmemphis.com" <howard@regmemphis.com>

Dear Ms. Thompson:

The county and Court have both searched for a copy of the hearing and been unable to find a copy. The transcript that you are requesting does not exist.

Sincerely,

Katherine Riley

---

**From:** Carmen <thompsoncarmenm107@gmail.com>
**Sent:** Monday, February 3, 2025 4:32 PM
**To:** luckettcharlie@yahoo.com; harlie.luckett holmescountyms.org <charlie.luckett@holmescountyms.org>; jhoward holmescountyms.org <jhoward@holmescountyms.org>; Katherine Barrett Riley <KBRiley@BarrettLawGroup.com>; Tony Geiger <tony.geiger@ago.ms.gov>; USAMSS.CivilRights@usdoj.gov; usamss.public.affairs@usdoj.gov
**Cc:** Louie Thompson <tfisheries@aol.com>; Cathy Thompson <crtrnc@aol.com>; wmtpluto@gmail.com; jathompson2@outlook.com; ceure@house.ms.gov; kford@house.ms.gov; khoran@house.ms.gov; hzuber@house.ms.gov; cmickens@house.ms.gov; jkeen@house.ms.gov; tjamesjones@house.ms.gov; ljackson@house.ms.gov; jhood@house.ms.gov; jhines@house.ms.gov; sfoster@house.ms.gov; lbyrd@house.ms.gov; bclark@house.ms.gov; aboyd@house.ms.gov; lblackmon@house.ms.gov; dbell@house.ms.gov; Dannywarchild@gmail.com; warnold@house.ms.gov; janderson@house.ms.gov; oanthony@house.ms.gov; one-ordinary-average-guy@pm.me; roberta_baskin@yahoo.com; Stanford Law School <admissions@law.stanford.edu>; Drexel Kline Law Admissions <lawadmissions@drexel.edu>; howard@regmemphis.com
**Subject:** Re: Petition to the court for motion on good cause to issue an ORDER to unseal "my case" as of December 24, 2024

**Update (2/3/2025, 5:30 PM EST):**

- I have attempted to reach the Holmes County Chancery Court clerk, Charlie Luckett, by telephone 5 times today - twice in the morning and three times this afternoon.

- I have not received a call back from Ms. Luckett as of 5:30 PM EST today, nor has anyone else in the Chancery Court's office provided me with an update on the status of my request from December 24, 2024.

Sincerely,
Carmen Thompson

**If you believe you should not be copied to this email thread, simply reach out to Carmen Thompson directly (phone: 445.400.7328, or by email: thompsoncarmenm107@gmail.com).**

**CONFIDENTIALITY NOTICE** This e-mail and any files or attachments may contain protected, confidential and/or privileged information. If you have received this (or any other) message in error, please notify the sender at the above e-mail address immediately, and delete it and all copies from your system. Be aware, should any individual or entity leverage this or any communication from Carmen Thompson for mal-intent (not benefiting Carmen Thompson directly) and/or without the explicit consent of Carmen Thompson, she will pursue remedial legal action to the fullest extent accorded to her by the laws of the United States of America. If you believe you should not be copied to this email thread, simply reach out to Carmen Thompson directly (phone: 445.400.7328, or by email: thompsoncarmenm107@gmail.com).

---

On Fri, Jan 31, 2025 at 5:50 PM Carmen <thompsoncarmenm107@gmail.com> wrote:

**Update (1/31/2025, 5:50 PM EST):**

- Holmes County Chancery Clerk, Charlie Luckett, received additional information Monday, 1/27/25, in support of my request on December 24, 2024 which requested a motion for an ORDER to unseal 'my case'. The information I provided to Ms. Luckett/the Chancery Court Clerk's office on Monday included my 1040 for the year 2024 and other material (evidence that I am a "pauper") in support of the Pauper's request sent on 12/24/2024.
- I called the Holmes County Chancery clerk in an attempt to reach Ms. Luckett twice this afternoon. The first time I called she had stepped out. The second time I called she had someone else in her office.
- As of now, I am still awaiting a response from Charlie Luckett about next steps.

Sincerely,

Carmen Thompson

If you believe you should not be copied to this email thread, simply reach out to Carmen Thompson directly (phone: 445.400.7328, or by email: thompsoncarmenm107@gmail.com).


CONFIDENTIALITY NOTICE This e-mail and any files or attachments may contain protected, confidential and/or privileged information. If you have received this (or any other) message in error, please notify the sender at the above e-mail address immediately, and delete it and all copies from your system. Be aware, should any individual or entity leverage this or any communication from Carmen Thompson for mal-intent (not benefiting Carmen Thompson directly) and/or without the explicit consent of Carmen Thompson, she will pursue remedial legal action to the fullest extent accorded to her by the laws of the United States of America. If you believe you should not be copied to this email thread, simply reach out to Carmen Thompson directly (phone: 445.400.7328, or by email: thompsoncarmenm107@gmail.com).

On Mon, Jan 27, 2025 at 6:19 PM Carmen <thompsoncarmenm107@gmail.com> wrote:

**Update (1/27/2025, 6:15 PM EST):**

I called the Holmes County Chancery Court Clerk, Charlie Luckett at approximately 5:35 PM EST (4:35 PM CST). Ms. Luckett confirmed that she received the attachments I sent earlier today. She also confirmed to me that those documents are appropriate in order for her to proceed and she will do so. Charlie Luckett said (and I quote) "I will speak to our judge and let you know." I assume she was referring to Judge Clark. I asked Charlie Luckett if she could provide a time frame for how long this will take and if she would be able to get back to me this week. Ms. Luckett said something like "if I can get a hold of him."

As I told Ms. Luckett earlier this evening over the telephone, I look forward to a conversation about next steps and remain open to dialogue accordingly.

Regards,

Carmen Thompson
(445) 400-7328

If you believe you should not be copied to this email thread, simply reach out to Carmen Thompson directly (phone: 445.400.7328, or by email: thompsoncarmenm107@gmail.com).


Please pardon brevity and any typos. Sent from my cellular phone.


CONFIDENTIALITY NOTICE This e-mail and any files or attachments may contain protected, confidential and/or privileged information. If you have received this (or any other) message in error, please notify the sender at the above e-mail address immediately, and delete it and all copies from your system. Be aware, should any individual or entity leverage this or any communication from Carmen Thompson for mal-intent (not benefiting Carmen Thompson directly) and/or without the explicit consent of Carmen Thompson, she will pursue remedial legal action to the fullest extent accorded to her by the laws of the United States of America. If you believe you should not be copied to this email thread, simply reach out to Carmen Thompson directly (phone: 445.400.7328, or by email: thompsoncarmenm107@gmail.com).

On Mon, Jan 27, 2025 at 3:58 PM Carmen <thompsoncarmenm107@gmail.com> wrote:

**Charlie Luckett,**

I have attached a copy of documentation I sent to request continued financial assistance from one of my healthcare providers. This information was emailed to them earlier today, at approximately 1:12 PM EST. Included is a copy of the 1040 that I mailed (certified mail) to the IRS at approximately 12:45 PM EST today.

With all of this information made available to you, please proceed to process my request from December 24, 2024 (the petition to the court for a motion to request an ORDER to unseal 'my case.')

**FYI, all --**

I removed "Dash, Carl" <carl.dash@mail.house.gov> (per conversations Carl and I had about the support needed/not needed from Representative Brendan Boyle's office, 2nd District of Pennsylvania). Also, despite not having received an email from Penn Carey Law, I have removed the two Penn Carey Law email addresses I had previously included in cc of this distribution list as I noticed in Law Hub (application) just today that they denied my application to law school - as such, I do not wish to include more people or groups in this email thread than necessary to accomplish the goals I have.

**If you believe you should not be copied to this email thread, simply reach out to Carmen Thompson directly (phone: 445.400.7328, or by email: thompsoncarmenm107@gmail.com).**

Sincerely,

Carmen Thompson

**CONFIDENTIALITY NOTICE** This e-mail and any files or attachments may contain protected, confidential and/or privileged information. If you have received this (or any other) message in error, please notify the sender at the above e-mail address immediately, and delete it and all copies from your system. Be aware, should any individual or entity leverage this or any communication from Carmen Thompson for mal-intent (not benefiting Carmen Thompson directly) and/or without the explicit consent of Carmen Thompson, she will pursue remedial legal action to the fullest extent accorded to her by the laws of the United States of America. If you believe you should not be copied to this email thread, simply reach out to Carmen Thompson directly (phone: 445.400.7328, or by email: thompsoncarmenm107@gmail.com).

On Thu, Jan 23, 2025 at 5:49 PM Carmen <thompsoncarmenm107@gmail.com> wrote:

> **Edit to previous two emails sent (see yellow highlight in below text).**
>
> **Update (1/23/2025, 5:39 PM EST):**
>
> - **ATTENTION CHARLIE LUCKETT/HOLMES COUNTY CHANCERY COURT CLERK:** See attached required documentation for the Financial Assistance Program at Life Stance (the company which provides me with Psychiatric care).
>
> - **ATTENTION CHARLIE LUCKETT/HOLMES COUNTY CHANCERY COURT CLERK:** This information was sent to them during the 4th quarter of 2023 and is how I was able to continue my treatment with my psychiatrist last year.
>
> - **ATTENTION CHARLIE LUCKETT/HOLMES COUNTY CHANCERY COURT CLERK:** This should suffice as evidence to validate that I am a poor person.
>
> - My psychiatrist is aware that I am attempting to fight for justice on my own behalf. She is also aware of the toll this takes on my mental health. So, with as much respect as is warranted, please proceed to process my request from December 24, 2024 (I mistakenly wrote 2025 in emails sent at 5:37 PM EST and 5:40 PM EST), as this ignorance and non-communication from the "officials" in Mississippi continues to erode my health in addition to the damage you all did in 2020 (and quite possibly prior to that too).
>
> - I removed cwharton@randomhouse.com as I have received multiple email responses informing me that this person or group has blocked my emails.
>
> Sincerely,
>
> Carmen Marie Thompson
>
> **CONFIDENTIALITY NOTICE** This e-mail and any files or attachments may contain protected, confidential and/or privileged information. If you have received this (or any other) message in error, please notify the sender at the above e-mail address immediately, and delete it and all copies from your system. Be aware, should any individual or entity leverage this or any communication from Carmen Thompson for mal-intent (not benefiting Carmen Thompson directly) and/or without the explicit consent of Carmen Thompson, she will pursue remedial legal action to the fullest extent accorded to her by the laws of the United States of America. If you believe you should not be copied to this email thread, simply reach out to Carmen Thompson directly (phone: 445.400.7328, or by email: thompsoncarmenm107@gmail.com).

On Thu, Jan 23, 2025 at 5:40 PM Carmen <thompsoncarmenm107@gmail.com> wrote:

**Update (1/23/2025, 5:39 PM EST):**

- **ATTENTION CHARLIE LUCKETT/HOLMES COUNTY CHANCERY COURT CLERK:** See attached required documentation for the Financial Assistance Program at Life Stance (the company which provides me with Psychiatric care).

- **ATTENTION CHARLIE LUCKETT/HOLMES COUNTY CHANCERY COURT CLERK:** This information was sent to them during the 4th quarter of 2023 and is how I was able to continue my treatment with my psychiatrist last year.

- **ATTENTION CHARLIE LUCKETT/HOLMES COUNTY CHANCERY COURT CLERK:** This should suffice as evidence to validate that I am a poor person.

- My psychiatrist is aware that I am attempting to fight for justice on my own behalf. She is also aware of the toll this takes on my mental health. So, with as much respect as is warranted, please proceed to process my request from December 24, 2025, as this ignorance and non-communication from the "officials" in Mississippi continues to erode my health in addition to the damage you all did in 2020 (and quite possibly prior to that too).

- I removed cwharton@randomhouse.com as I have received multiple email responses informing me that this person or group has blocked my emails.

Sincerely,

Carmen Marie Thompson

**CONFIDENTIALITY NOTICE** This e-mail and any files or attachments may contain protected, confidential and/or privileged information. If you have received this (or any other) message in error, please notify the sender at the above e-mail address immediately, and delete it and all copies from your system. Be aware, should any individual or entity leverage this or any communication from Carmen Thompson for mal-intent (not benefiting Carmen Thompson directly) and/or without the explicit consent of Carmen Thompson, she will pursue remedial legal action to the fullest extent accorded to her by the laws of the United States of America. If you believe you should not be copied to this email thread, simply reach out to Carmen Thompson directly (phone: 445.400.7328, or by email: thompsoncarmenm107@gmail.com).

On Thu, Jan 23, 2025 at 5:37 PM Carmen <thompsoncarmenm107@gmail.com> wrote:

**Update (1/23/2025, 5:30 PM EST):**

- **ATTENTION CHARLIE LUCKETT/HOLMES COUNTY CHANCERY COURT CLERK:** See attached required documentation for the Financial Assistance Program at Life Stance (the company which provides me with Psychiatric care).
- **ATTENTION CHARLIE LUCKETT/HOLMES COUNTY CHANCERY COURT CLERK:** This information was sent to them during the 4th quarter of 2023 and is how I was able to continue my treatment with my psychiatrist last year.
- **ATTENTION CHARLIE LUCKETT/HOLMES COUNTY CHANCERY COURT CLERK:** This should suffice as evidence to validate that I am a poor person.
- My psychiatrist is aware that I am attempting to fight for justice on my own behalf. She is also aware of the toll this takes on my mental health. So, with as much respect as is warranted, please proceed to process my request from December 24, 2025, as this ignorance and non-communication from the "officials" in Mississippi continues to erode my health in addition to the damage you all did in 2020 (and quite possibly prior to that too).
- I removed cwharton@randomhouse.com as I have received multiple email responses informing me that this person or group has blocked my emails.

Sincerely,

Carmen Marie Thompson

On Thu, Jan 23, 2025 at 5:09 PM Carmen <thompsoncarmenm107@gmail.com> wrote:

**Update (1/23/2025, 5 PM EST):**

- Now that I know that an individual (single) does not have to file Federal Income taxes if they earn less than $14,600/year, I know that I do not have to complete a 1040.
- **Charlie Luckett - How else may I provide you with sufficient information so that you know I am poor (a pauper)? I already provided you with a signed statement of this fact and I just so happen to be an honest individual.**
- **I do not have $158 to pay the filing fee necessary for you to process my request for the court to unseal 'my case' as sent to you on December 24, 2024.**

Regards,

Carmen Thompson

On Thu, Jan 23, 2025 at 2:05 PM Carmen <thompsoncarmenm107@gmail.com> wrote:

**This email is an update (as of January 23, 2025):**

- I called the Holmes County Chancery court's office at (662) 834-2508 on Tuesday, January 21, 2025.
- I requested to speak with Charlie Luckett and was transferred to her. She answered the phone and we spoke for approximately 10 minutes. uring some of this time Ms. Luckett searched for the email.

- Once found, Charlie Luckett informed me that I need to send her (the Chancery Court clerk) a copy of a 1040 form (to prove that I am a pauper, or poor person).
- As such, I am filing my taxes for 2024 early. I will send Ms. Luckett a copy of the 1040 asap so she can proceed to petition the court as I requested on December 24, 2024.
- Notably, I do not know why this demand from the Chancery Court was not made prior to my calling them. A reasonable person may assume they have had ample time to respond to the initial request or the many follow up emails.
- I added Drexel to this thread. I mistakenly neglected to include them previously (they did not accept me for the session I applied to but have kept me on their waitlist).
- I have also added another Penn Carey Law email address (as they responded with acknowledgement of receipt of their inclusion in this thread from this email address previously).
- See also information sent to Carl Dash from Representative Brendan Boyle's office (2nd District of Pennsylvania) on January 17, 2024. I have included Carl Dash in cc as well.

Respectfully,

Carmen Thompson

thompsoncarmenm107@gmail.com

445.400.7328

**CONFIDENTIALITY NOTICE** This e-mail and any files or attachments may contain protected, confidential and/or privileged information. If you have received this (or any other) message in error, please notify the sender at the above e-mail address immediately, and delete it and all copies from your system. Be aware, should any individual or entity leverage this or any communication from Carmen Thompson for mal-intent (not benefiting Carmen Thompson directly) and/or without the explicit consent of Carmen Thompson, she will pursue remedial legal action to the fullest extent accorded to her by the laws of the United States of America. If you believe you should not be copied to this email thread, simply reach out to Carmen Thompson directly (phone: 445.400.7328, email: thompsoncarmenm107@gmail.com).

On Wed, Jan 15, 2025 at 9:11 AM Carmen <thompsoncarmenm107@gmail.com> wrote:

Removing Berkeley Law.

Thank you, Penn Carey Law for acknowledgement of receipt. Exemplary of what I have repeatedly asked of the Holmes County Mississippi Chancery Court's office.

Again, I request Charlie Luckett (clerk) or Jordan Howard of the Holmes County Chancery Court's office to acknowledge this email, attachment (signed and notarized petition from December 24th), and advise me of next steps.

Carmen Thompson

On Tue, Jan 14, 2025 at 1:35 PM Carmen <thompsoncarmenm107@gmail.com> wrote:

All (both in *to* and *cc*),

I recognize this is rather unorthodox, nonetheless, I am including University of Pennsylvania Carey Law School, Stanford University Law School, and Berkeley Law School. As I stated from the beginning, I am attempting to communicate with all of you using candor and integrity in my correspondence.

**Dear admissions offices for Stanford, Penn, and Berkeley** - please consider this content supplemental to my previously submitted applications. As you can see, I am advocating for myself using the resources available to me. Any support you may be able to provide would be greatly appreciated.

Sincerely,

Carmen Thompson

445.400.7328

On Tue, Jan 14, 2025 at 12:59 PM Carmen <thompsoncarmenm107@gmail.com> wrote:

Adding the attachment from December 24, 2024 for everyone's convenience.


Sincerely,

Carmen Thompson


On Tue, Jan 14, 2025 at 12:55 PM Carmen <thompsoncarmenm107@gmail.com> wrote:

Moved Roberta Baskin, Daniel Rodriguez, and Chase Hansen to "cc". Removing the email address "charlie.luckett@ holmescountymississippi.org," and highlighting that the SoS for Mississippi has Holmes County's website listed as holmescountymississippi.org which leads to a Chinese website. Additionally, I have added screenshots of the representatives profile information found at https://www.legislature.ms.gov/legislators/representative-gallery/ (all of whom are in cc).


**Charlie Luckett/Jordan Howard** - I am re-affirming my request and looking forward to your response.


## Casey Eure



### Casey Eure

District 116

Harrison

Republican

Representative Eure is a member of the National Rifle Association, Coast Young Professionals, Harrison County Republican Club and Woolmarket Little League Association. He was previously affiliated with the Harrison County Sheriff's Department, MS Bureau of Narcotics and MS Public Service Commission.

Representative Eure was born March 1, 1978 in Jackson, MS. He is married to the former Jill Gary and they have two children, Kennedy and Gunner. He is of the Catholic faith.

**Committee Membership**

- **Chair: Gaming**
- Appropriations A
- Executive Contingent Fund
- Judiciary B
- Public Utilities
- Transportation
- Universities and Colleges

**Contact Information**

Capitol

Room: 201M-5

P. O. Box 1018

Jackson, MS 39215

(601) 359-9466

Home

11839 Sleeping Deer Lane

Saucier, MS 39574

Phone(s)

Business: (228) 297-2849 (W)

Email

ceure@house.ms.gov

| Leg. Experience | Education | Occupation |
|---|---|---|
| 2011-present | MS Gulf Coast Community College, USM Law Enforcement Academy | Self employed - Eure Properties |


## Kevin Ford



### Kevin Ford

District 54

Issaquena | Warren | Yazoo

Republican

Representative Ford is affiliated with Red Carpet Bowl.

Representative Ford was born March 8, 1979 in Jackson, Mississippi. He is married to the former Julie Alberts and they are of the Methodist faith.

**Committee Membership**

- **Chair: Accountability, Efficiency, Transparency**
- Business and Commerce
- Energy
- Gaming
- Insurance
- Judiciary A
- Public Health and Human Services
- Ways and Means

**Contact Information**

Capitol

P. O. Box 1018

Jackson, MS 39215

(601) 359-9473

Home

206 Willow Way

Vicksburg, MS 39183

Phone(s)

Other: (601) 218-8185 (C)

Email

kford@house.ms.gov

| Leg. Experience | Education | Occupation |
|---|---|---|
| 2018-present | University of Alabama at Birmingham, Hinds Community College, Warren High school | Insurance Agent |

# Kevin Felsher



## Kevin Felsher
### District 117
Harrison
Republican

Representative Felsher is affiliated with MS Coast Crime Stoppers, Catholic Charities of South Ms., Main Street Biloxi board member, City of Biloxi Architectural and Historic Commission, and Knights of Columbus 3rd Degree.

Representative Felsher was born October 10, 1975 in Biloxi, MS. He is married to Crystal Lucas Felsher and they are of the Catholic faith.

### Committee Membership
- **Vice Chair: Public Health and Human Services**
- Corrections
- Education
- Gaming
- Judiciary A
- Marine Resources
- Public Property
- Tourism

### Contact Information
**Capitol**
P. O. Box 1018
Jackson, MS 39215

**Home**
PO Box 4721
Biloxi, MS 39535

**Phone(s)**
Other: (228) 385-4767 (C)

**Email**
kfelsher@house.ms.gov

| Leg. Experience | Education | Occupation |
|---|---|---|
| 2020-present | USM, Sports Coaching and Education, B.S. | Real Estate Broker |

# Kevin Horan



## Kevin Horan
### District 34
Carroll | Grenada | Holmes | Leflore | Tallahatc
Republican

Rep. Horan is a member of the Milestone Hospice, Inc. and Mississippi Bar Association.

Rep. Horan was born October 29, 1961 in Wate Valley, Mississippi and married to the former Clarissa DeHart.

| Leg. Experience | Education | Occupation |
|---|---|---|
| 2012-present | Mississippi College School of Law University of Mississippi Water Valley High School | Attorney Chief Financial Officer- Milestone Hospice, Inc. |

### Committee Membership
- **Chair: Judiciary B**
- Appropriations A
- Corrections
- Public Health and Human Services
- State Affairs

### Contact Information
**Capitol**
Room 400-F
P. O. Box 1018
Jackson, MS 39215
(601) 359-3311

**Home**
P.O. Box 7366
Grenada, MS 38901

**Phone(s)**
Home: (662) 226-1197
Business: (662) 226-2285 (W)

**Email**
khoran@house.ms.gov

# Henry Zuber III



## Henry Zuber III
### District 113
Jackson
Republican

Representative Zuber is affiliated with the Knights of Columbus, Chamber of Commerce and Board of Directors of the Y.M.C.A.

Representative Zuber was born June 11, and is a life long citizen of the Mississippi Gulf Coast. He is of the Catholic faith.

### Committee Membership
- **Chair: State Affairs**
- Business and Commerce
- Gaming
- Insurance
- Management
- Ways and Means

### Contact Information
**Capitol**
Room 402-C
P. O. Box 1018
Jackson, MS 39215
(601) 359-3394

**Home**
503 Minor Lane
Ocean Springs, MS 39564

**Phone(s)**
Home: (228) 875-4866
Business: (228) 875-1097 (W)

**Email**
hzuber@house.ms.gov

| Leg. Experience | Education | Occupation |
|---|---|---|
| 2000-present | Ocean Springs High School Millsaps College University of Mississippi School of Law | Attorney/Real Estate Developer |

## Carl L. Mickens



### Carl L. Mickens
District 42
Lowndes | Noxubee | Winston
Democrat

Representative Mickens is affiliated with the Kentucky State University alumni chapter, NAACP, Prince Hall Mason, MS Farm Bureau, Earl Nash PTO, and NCHS Booster.

Representative Mickens was born August 6 in Noxubee Co, Mississippi, and is married to the former Cheryl Richardson. They are of the Baptist faith.

**Committee Membership**
- Chair: Housing
- Corrections
- Education
- Energy
- Public Utilities

**Contact Information**

Capitol
Room 400-F
P. O. Box 1018
Jackson, MS 39215
(601) 359-2409

Home
P.O. Box 427
Brooksville, MS 39739

Phone(s)
Other: (662) 425-1604 (C)

Email
cmickens@house.ms.gov

| Leg. Experience | Education | Occupation |
| --- | --- | --- |
| 2016-present | Kentucky State University, B.S. | Retired Circuit Court Clerk, Funeral Services |

## Justin Keen



### Justin Keen
District 6
DeSoto
Republican

Representative Keen is affiliated with the DeSoto county Republican Club and the Home Builders Association of Mississippi.

Representative Keen was born in Crane, Texas. He is married to the former Ariel Fox and they are of the Baptist faith.

**Committee Membership**
- Agriculture
- Conservation and Water Resources
- County Affairs
- Energy
- Forestry
- Technology
- Transportation
- Wildlife, Fisheries and Parks

**Contact Information**

Capitol
P. O. Box 1018
Jackson, MS 39215

Home
14277 Glynn Valley Street
Byhalia, MS 38611

Phone(s)
Home: (901) 493-3410

Email
jkeen@house.ms.gov

| Leg. Experience | Education | Occupation |
| --- | --- | --- |
| 2024-present | Horn Lake High School, University of Mississippi (B.B.A) | Home builder and developer |

## Timaka James-Jones



### Timaka James-Jones
District 51
Humphreys, Sharkey, Holmes, Yazoo, Leflore
Democrat

Representative Timaka James-Jones is a member of Delta Sigma Theta Sorority, Improved Benevolent Protected Order of Elks of the World, NAACP, Keep Belzoni Beautiful, and MS Federation of Democratic Woman.

Representative James-Jones was born on August 16,1973 in Belzoni, Mississippi. She is married to Marvin Vernard Jones. She is of the Baptist Faith.

**Committee Membership**
- Apportionment and Elections
- County Affairs
- Energy
- Municipalities
- Public Property
- Tourism

**Contact Information**

Capitol
P. O. Box 1018
Jackson, MS 39215
(601) 359-3728

Home
210 Central Avenue
Belzoni, MS 39038

Phone(s)
Home: (662) 836-8347
Business: (662) 247-3065 (W)
Other: (662) 247-1827 (C)

Email
tjamesjones@house.ms.gov

| Leg. Experience | Education | Occupation |
| --- | --- | --- |
| 2024-present | Humphreys, Sharkey, Holmes, Yazoo, Leflore | Circuit Clerk & County Registrar |

## Lataisha Jackson



### Lataisha Jackson
District 11
Panola | Tate
Democrat

Representative Jackson is a member of Alpha Kappa Alpha Sorority, Inc. and an active member of Asken Grove Baptist Church.

Representative Jackson was born August 4, 1981 in Fort Ord, California and is of the Baptist faith.

**Committee Membership**
- Vice Chair: Investigate State Offices
- Appropriations
- Judiciary B
- Judiciary En Banc
- Local and Private Legislation
- Public Property
- Universities and Colleges

**Contact Information**

Capitol
Room: Bsmnt B
P. O. Box 1018
Jackson, MS 39215
(601) 359-9488

Home
P.O. Box 358
Como, MS 38619

Phone(s)
Home: (662) 526-1122

Email
ljackson@house.ms.gov

| Leg. Experience | Education | Occupation |
| --- | --- | --- |
| 2013-present | North Panola High School, Alabama State University; B.A. English Language Arts Education, Alabama State; M.A. Education Leadership | Executive Director of E.D.V.C.A.T.E Inc |

## Joey Hood



### Joey Hood

District 35

Attala | Choctaw | Webster | Winston

Republican

Rep. Hood is a member of the Mississippi Bar Association, Choctaw County Medical Foundation and Simpson Volunteer Fire Department.

Rep. Hood was born December 11, 1970 in Ams Mississippi and married to the former Cynthia Oswalt. They are of the Presbyterian faith.

### Committee Membership

- **Chair: Judiciary A**
- Appropriations A
- Energy
- Medicaid
- Public Health and Human Services
- Public Utilities
- State Affairs

### Contact Information

**Capitol**

Room: 112-E
P. O. Box 1018
Jackson, MS 39215
(601) 359-2428

**Home**

P.O. Box 759
Ackerman, MS 39735

**Phone(s)**

Home: (601) 547-9818
Business: (662) 285-4603 (W)

**Email**

jhood@house.ms.gov

| Leg. Experience | Education | Occupation |
| --- | --- | --- |
| 2012-present | Mississippi State University, B.A.<br>Mississippi College School of Law, J.D. | Attorney |

## John W. Hines, Sr.



### John W. Hines, Sr.

District 50

Bolivar | Issaquena | Washington

Democrat

Representative Hines is member of 100 Black Men of the Mississippi Delta, a member of the NAACP, a member of Young Men Making a Difference, a member of the FEMA National Advisory Council, youth mentor and Little League coach.

Representative Hines was born in Greenville. He has three children and is of the non-denominational faith.

### Committee Membership

- **Vice Chair: Local and Private Legislation**
- Appropriations A
- Banking and Financial Services
- Housing
- Insurance
- Management
- Medicaid
- Public Health and Human Services

### Contact Information

**Capitol**

Room: 100-C
P. O. Box 1018
Jackson, MS 39215
(601) 359-3285

**Home**

P. O. Box 114
Greenville, MS 38701

**Phone(s)**

Home: (662) 335-9354
Business: (662) 334-5444 (W)

**Email**

jhines@house.ms.gov

| Leg. Experience | Education | Occupation |
| --- | --- | --- |
| 2001-present | Greenville High Schools<br>Mississippi Valley State University | Insurance Agent and Investigator |

## Larry Byrd



### Larry Byrd

District 104

Forrest

Republican

Representative Byrd is a member of the Petal Chamber of Commerce, Macedonia Baptist Church, Petal Masonic Lodge no. 516 Hattiesburg York, K.Y.C.H. Lamp; Scottish Rite 32 degrees Bodies, K.C.C.H., V.F.W. Life Member, and U.S. Army Veteran of the 82nd Airborne Division

Representative Byrd was born August 1, 1948 in Hattiesburg, Mississippi and is married to the former Karen Deveraux. He is of the Southern Baptist faith.

### Committee Membership

- **Chair: County Affairs**
- Agriculture
- Marine Resources
- Military Affairs
- Technology
- Transportation
- Ways and Means

### Contact Information

**Capitol**

Room: 400-B
P. O. Box 1018
Jackson, MS 39215
(601) 359-3337

**Home**

17 Byrd Rd
Petal, MS 39465

**Phone(s)**

Home: (601) 544-1877

**Email**

lbyrd@house.ms.gov

| Leg. Experience | Education | Occupation |
| --- | --- | --- |
| 2008-present | Petal High School | Contractor |

## Bryant Clark



### Bryant W. Clark

District 47

Attala | Holmes | Yazoo

Democrat

Representative Clark is a member of the Mississippi Bar Association and the Magnolia Bar Association. He is the President of the Holmes County NAACP. He was born October 31, 1974 in Jackson and is of the Baptist faith.

### Committee Membership

- **Vice Chair: Rules**
- Appropriations A
- Business and Commerce
- Conservation and Water Resources
- Drug Policy
- Judiciary A
- Medicaid
- Public Health and Human Services
- State Affairs
- Transportation

### Contact Information

**Capitol**

Room: BSMNT-B
P. O. Box 1018
Jackson, MS 39215
(601) 359-2845

**Home**

271 Clark Road
Pickens, MS 39170

**Phone(s)**

Home: (662) 834-4674
Business: (662) 834-6833 (W)

**Email**

bclark@house.ms.gov

| Leg. Experience | Education | Occupation |
| --- | --- | --- |
| 2004-present | Holmes Community College, AA<br>Mississippi Valley State, BS<br>Mississippi College School of Law, JD | Attorney |

## Andy Boyd




## Lawrence Blackmon



### Lawrence Blackmon

**District 57**

Madison

**Democrat**

| Leg. Experience | Education | Occupation |
|---|---|---|
| 2024 present | N/A | Attorney |

**Committee Membership**

- Apportionment and Elections
- Judiciary A
- Municipalities
- Technology

**Contact Information**

Capitol

P. O. Box 1018

Jackson, MS 39215

Email

blackmon@house.ms.gov

## Donnie Bell



### Donnie Bell

**District 21**

Itawamba | Tishomingo

**Republican**

Representative Bell is a member of the Farmhouse Fraternity.

Representative Bell was born March 3, 1960 in Tupelo Mississippi. He is married to the former Nelda Higginbotham.

**Committee Membership**

- **Chair: Workforce Development**
- Banking and Financial Services
- Business and Commerce
- Management
- Medicaid
- State Affairs
- Ways and Means

**Contact Information**

Capitol

Room: 400-A

P. O. Box 1018

Jackson, MS 39215

(601) 359-5396

Home

836 Tucker Rd

Fulton, MS 38843

Email

dbell@house.ms.gov

| Leg. Experience | Education | Occupation |
|---|---|---|
| 2008 present | Itawamba Community College Mississippi State University, B.S. | Teacher |

## William Tracy Arnold



### William Tracy Arnold
District 3
Alcorn | Prentiss
**Republican**

Rep. Arnold is a member of the Farm Bureau, NRA, and Pro-life.

Rep. Arnold was born February 14, 1969 in Prentiss County and married to the former Neei Shook. They are of the Christian faith.

**Committee Membership**
- **Vice Chair: Insurance**
- Appropriations A
- Banking and Financial Services
- Energy
- Ports, Harbors and Airports
- Transportation
- Workforce Development

**Contact Information**

Capitol

Room: 400-E
P. O. Box 1018
Jackson, MS 39215
(601) 359-2420

Email

warnold@house.ms.gov

| Leg. Experience | Education | Occupation |
| --- | --- | --- |
| 2012-present | Logos Bible College<br>New Site High School | Senior Pastor of Th Vineyard Church |

## Jeramey Anderson



### Jeramey Anderson
District 110
Jackson
**Democrat**

Representative Anderson is a member of the Boys and Girls Club of Jackson County Alumni, Foundation For a Brighter America (ED), Real South United FC (CEO), the Knights of Peter Clave and Let America Vote Advisor.

Representative Anderson was born December 6 1991 in Pascagoula, MS. He is of the Roman Catholic faith. Website: http://www.jerameyanderson.com

**Committee Membership**
- Drug Policy
- Investigate State Offices
- Judiciary B
- Marine Resources
- Universities and Colleges

**Contact Information**

Capitol

Room: 400-F
P. O. Box 1018
Jackson, MS 39215
(601) 359-2438

Home

PO Box 311
Escatawpa, MS 39562

Phone(s)

Home: (228) 206-2129

Email

janderson@house.ms.gov

| Leg. Experience | Education | Occupation |
| --- | --- | --- |
| 2014-present | Tulane University<br>Pearl River Community College<br>Moss Point High School | Small Business,<br>Founder & CEO |

## Otis Anthony



### Otis Anthony
District 31
Bolivar | Humphreys | Sunflower | Washington
**Democrat**

Representative Otis is a member of the Alpha Phi Alpha fraternity Inc. and Cutting edge gentlemen's club.

He was born on July 12, 1979 in Indianola MS and married to the former Ferchia Caldwell. They are of Christian Baptist denomination.

**Committee Membership**
- **Chair: Youth and Family Affairs**
- Banking and Financial Services
- Energy
- Insurance
- Transportation
- Ways and Means
- Workforce Development

**Contact Information**

Capitol

P. O. Box 1018
Jackson, MS 39215
(601) 359-3755

Home

PO Box 962
Indianola, MS 38751

Phone(s)

Home: (662) 452-5064
Other: (662) 207-0445 (C)

Email

oanthony@house.ms.gov

| Leg. Experience | Education | Occupation |
| --- | --- | --- |
| 2009-present | Tougaloo College, Pol.Sci/ Pre law<br>Agape Bible College, Theology | Pastor, Financial<br>Advisor, and Insurance |

Sincerely,

Carmen Thompson

On Sun, Jan 12, 2025 at 6:12 AM Carmen <thompsoncarmenm107@gmail.com> wrote:

Adding Daniel Rodriguez

Carmen Thompson
(445) 400-7328

Please pardon brevity and typos. Sent from my phone.

On Sat, Jan 11, 2025 at 7:47 PM Carmen <thompsoncarmenm107@gmail.com> wrote:

Adding Chase Hansen, "That Guy"

Carmen Thompson
(445) 400-7328

Please pardon brevity and typos. Sent from my phone.

On Fri, Jan 10, 2025 at 6:14 PM Carmen <thompsoncarmenm107@gmail.com> wrote:

+ Roberta Baskin, AIM2Flourish founding Executive Director and former investigative reporter

Carmen Thompson
(445) 400-7328

Please pardon brevity and typos. Sent from my phone.

On Fri, Jan 10, 2025 at 3:14 PM Carmen <thompsoncarmenm107@gmail.com> wrote:

Hello all,

In lieu of the back and forth with Howard Stovall on the 8th, I removed them and moved Random House Speakers Bureau to cc.

In lieu of the deafening silence from the 11th District Chancery Court of Holmes County, Mississippi, I have added representatives from the Mississippi Congress for support.

Again, I request the court to unseal 'my case'. For those members of Congress who I have included here (and please share with all members of Congress - both the House and the Senate at the Federal level, and any other appropriate legal body), I request your support with this matter. I am available to discuss and my cell phone number is included below in my signature.

Respectfully,

Carmen Thompson

445.400.7328

On Wed, Jan 8, 2025 at 4:48 PM Carmen <thompsoncarmenm107@gmail.com> wrote:

**Howard (Stovall)**, apologies for any confusion, though there is a logical basis for you being included, as you can see in the attached images. I will remove you from future communications accordingly.

I overlooked the Random House Speakers Bureau. I am not attempting to book a lecture, however possible a speaking engagement (pending a legal trial and/or litigation which is tbd asap). This brings me to the main point of this email chain: the legal situation. So, again, **Charlie Luckett and Jordan Howard** of the 11th District Chancery Court of Holmes County, Mississippi, please engage in this conversation as soon as possible. The blatant disregard for me as an individual and the rule of law, as well as basic principles of ethics and professional communication, seemingly do not exist in your office. I just want to be clear that you all continue to leave that impression abundantly clear.

Lastly, I highlight the conflicts of interest of **Katherine Barrett Riley** who I have intentionally included in this communication. It seems to me that it would be prudent for her prompt recusal in this matter, though this can only be done by her (herself) or a judge, to my understanding. As such, I ask the **Chancery Clerk's office** to act swiftly as well as communicate with me directly.



**Martha Foose is represented by Random House Speakers Bureau http://www.rhspeakers.com/speaker/martl foose/ To book a lecture or speaking engagement, please contact Campbell Wharton at cwharton@randomhouse.com**

For personal appearances and business matters, please contact Howard Stovall howard@regmemphis.com 901-543-1155

Regards,

Carmen Thompson

On Wed, Jan 8, 2025 at 2:59 PM <howard@resourceentertainment.com> wrote:

Please remove me from this email.  I have no connection to this matter.  I do not work with Martha Foose.

---

**From:** Carmen <thompsoncarmenm107@gmail.com>
**Sent:** Wednesday, January 8, 2025 1:51 PM
**To:** harlie.luckett holmescountyms.org <charlie.luckett@holmescountyms.org>; luckettcharlie@yahoo.com; jhoward holmescountyms.org <jhoward@holmescountyms.org>; kbriley@barrettlawgroup.com; Louie Thompson <tfisheries@aol.com>; Cathy Thompson <crtrnc@aol.com>; wmtpluto@gmail.com; howard@regmemphis.com; jathompson2@outlook.com; charlie.luckett@holmescountymississippi.org
**Cc:** USAMSS.CivilRights@usdoj.gov; usamss.public.affairs@usdoj.gov; Tony Geiger <tony.geiger@ago.ms.gov>
**Subject:** Fwd: Petition to the court for motion on good cause to issue an ORDER to unseal "my case" as of December 24, 2024

Charlie, Jordan -

I am writing to you to follow up on the petition I sent on December 24, 2024. Fully acknowledging the holiday season, 8 business days have since passed and you have not  acknowledged receipt of my email and petition, or provided any update whatsoever.

Could you please communicate with me on this matter?

Sincerely,

Carmen Thompson

445.400.7328

---------- Forwarded message ---------
From: **Carmen** <thompsoncarmenm107@gmail.com>
Date: Tue, Dec 24, 2024 at 3:38 PM
Subject: Re: Petition to the court for motion on good cause to issue an ORDER to unseal "my case" as of December 24, 2024
To: charlie.luckett holmescountyms.org <charlie.luckett@holmescountyms.org>, <luckettcharlie@yahoo.com>, jhoward holmescountyms.org <jhoward@holmescountyms.org>, <kbriley@barrettlawgroup.com>, Louie Thompson <tfisheries@aol.com>, Cathy Thompson <crtrnc@aol.com>, <wmtpluto@gmail.com>, <howard@regmemphis.com>, <jathompson2@outlook.com>
Cc: <USAMSS.CivilRights@usdoj.gov>, <usamss.public.affairs@usdoj.gov>, Tony Geiger <tony.geiger@ago.ms.gov>

+ Julia (my sister). I mistakenly did not include her, though as you can see from the body of the email, I intended to add her to the distribution list of recipients.

Julia, see original message below and attachment.

Sincerely,

Carmen Thompson
(445) 400-7328

Please pardon brevity and typos. Sent from my phone.

On Tue, Dec 24, 2024 at 1:22 PM Carmen <thompsoncarmenm107@gmail.com> wrote:

Charlie and Jordan,
Please see attached signed petition requesting a motion for an ORDER to unseal the involuntary commitment case. Should you have any questions or need to discuss please do not hesitate to contact me directly.

This email is addressed to the following people and entities:
*There are no email addresses bcc'd as I intend to communicate as candidly and transparently as possible*

Eleventh District Chancery Court of Holmes County, Mississippi
Attention: Charlie Luckett and Jordan Howard
Charlie Luckett charlie.luckett@holmescountyms.org & luckettcharlie@yahoo.com
Jordan Howard jhoward@holmescountyms.org


Katherine Barrett Riley of Don Barrett, PA (as written in official Holmes County documents pertaining to case at issue)
kbriley@barrettlawgroup.com as found online at https://barrettlawgroup.com/attorneys/katherine-barrett-riley/ & https://ltams.org/members/kriley/


Dad (Louie Thompson) at tfisheries@aol.com


Mom (Cathy Thompson) at crtrnc@aol.com

Dr. Julia Thompson Massey at jathompson2@outlook.com (as provided 12/24/2024)

Cadi Thompson Appleby (Cadi Stigler Appleby)
**cthompson5@umc.edu as found online https://www.umc.edu/HR/Information%20and%20Resources/Patient-Safety.html, though, because I know she is no longer assuming the role of Coordinator - Clinical Risk Management and because I think it would be abundantly disrespectful and unprofessional to deliver this message to her place of employment, I am not using this email address.
*deliver through Louie and Cathy Thompson


Michael Thompson
As provided previously at wmtpluto@gmail.com
*Louie and Cathy Thompson are also capable of delivering this message to Michael and Whitney Thompson


Whitney (Lee Staggers) Thompson *email address to be determined
*no known email address.
*deliver through Michael Thompson (her spouse) at wmtpluto@gmail.com and/or Louie and Cathy Thompson


Martha Foose *email address to be determined
"For personal appearances and business matters, please contact Howard Stovall at howard@regmemphis.com 901-543-1155," as found at https://marthafoose.com/. Because Martha Foose is a "Public Figure" I consider this an appropriate email address.
*Upon searching for Howard Stoval and telephone number 901-542-1155, I identified
Memphis's Largest Entertainment Services Booking Agency
*And may be delivered through Louie and/or Cathy Thompson


CC:
U.S. Attorney's Office, Southern District of Mississippi
Attention: Todd Gee
USAMSS.CivilRights@usdoj.gov
Email address found at justice (.gov): https://www.justice.gov/usao-sdms/civil-rights
"The U.S. Attorney's Office for the Southern District of Mississippi welcomes information from the public regarding possible violations of our nation's civil rights laws. Civil rights complaints can be submitted by email, mail, or phone."


For additional support, I have also added Email: usamss.public.affairs@usdoj.gov as found at the bottom of the aforementioned site.


Additionally, I have included Tony Geiger, who as I understand reports to Attorney General Lynn Fitch. See Constituent Outreach. The basis for my decision to include Tony is because though we may be/end up being on opposing sides of this case, should it go to trial in the future, Tony showed me respect and compassion in our conversations (earlier in 2024 and again in more recent months). For that reason, and in the spirit of transparency and progress in this matter, I have included Mr. Geiger.


**See attached**: Petition to the court for motion on good cause to issue an ORDER to unseal "my case"

Sincerely,
Carmen Thompson (*Pro Se*) (also known as Ms. Thompson)
Email: thompsoncarmenm107@gmail.com
Phone: 445.400.7328
Address: 211 Brown Street, Philadelphia, PA 19123

--

Carmen Thompson

CONFIDENTIALITY NOTICE This e-mail and any files or attachments may contain protected, confidential and/or privileged information. If you have received this message in error, please notify the sender at the above e-mail address, and delete it and all copies from your system.

--

Carmen Thompson

CONFIDENTIALITY NOTICE This e-mail and any files or attachments may contain protected, confidential and/or privileged information. If you have received this message in error, please notify the sender at the above e-mail address, and delete it and all copies from your system.

--

Carmen Thompson

CONFIDENTIALITY NOTICE This e-mail and any files or attachments may contain protected, confidential and/or privileged information. If you have received this message in error, please notify the sender at the above e-mail address, and delete it and all copies from your system.

--

Carmen Thompson

CONFIDENTIALITY NOTICE This e-mail and any files or attachments may contain protected, confidential and/or privileged information. If you have received this message in error, please notify the sender at the above e-mail address, and delete it and all copies from your system.

--

Carmen Thompson

CONFIDENTIALITY NOTICE This e-mail and any files or attachments may contain protected, confidential and/or privileged information. If you have received this message in error, please notify the sender at the above e-mail address, and delete it and all copies from your system.

--

Carmen Thompson


CONFIDENTIALITY NOTICE This e-mail and any files or attachments may contain protected, confidential and/or privileged information. If you have received this message in error, please notify the sender at the above e-mail address, and delete it and all copies from your system.


--

Carmen Thompson


CONFIDENTIALITY NOTICE This e-mail and any files or attachments may contain protected, confidential and/or privileged information. If you have received this message in error, please notify the sender at the above e-mail address, and delete it and all copies from your system.


--

Carmen Thompson


CONFIDENTIALITY NOTICE This e-mail and any files or attachments may contain protected, confidential and/or privileged information. If you have received this message in error, please notify the sender at the above e-mail address, and delete it and all copies from your system.

UNITED STATES DISTRICT COURT
for the
Southern District of Mississippi
Northern Division

SOUTHERN DISTRICT OF MISSISSIPPI
FILED

FEB 1 0 2025

ARTHUR JOHNSTON
BY_____ DEPUTY

COMPLAINT FOR A CIVIL CASE(S)
Accompanied by an application to proceed in forma pauperis

Carmen Thompson (pro se)
*Plaintiff*

-v-

Katherine Barrett Riley
Barrett Law Office
Holmes County, Mississippi
Chancery Court of Holmes County, Mississippi
Charlie Luckett
Mississippi Authority for Educational Television
Mississippi Public Broadcasting and/or Mississippi Public Radio
Mississippi Community College Board
Holmes Community College
*Defendent(s)*

Jury Trial:
Because a hearing is necessary in any proceeding before a judge in court for a civil case, it would be premature to check yes or no as to whether or not it is in my best interest to proceed with a trial by jury or not. Furthermore, I cannot file a motion for summary judgement at this juncture because I cannot show that there is no dispute between myself and the defendants listed in this complaint. It may cause less harm to all involved to attempt mediation prior to moving forward with a full blow trial (which I am not opposed to either as I am confident in my case based on the experiences I have had and the information I have at this point in time).

CMT

ADAPTED from Forms: *Pro Se 1 (Rev. 12/16) Complaint for a Civil Case* and *Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non-Prisoner)* Case No. E20-00$^{50}$ and any additional appendages necessary to encompass the entire case

## I.  The Parties to This Complaint

### A.  The Plaintiff(s)

Name: Carmen Marie Thompson
Address: 211 Brown Street, Unit 13, Philadelphia, PA 19123
Telephone Number: (445) 400-7328
E-Mail Address: thompsoncarmenm107@gmail.com

### B.  The Defendent(s)

Information, if known (or thought to be known based on internet search), for each defendant named in this complaint (regardless of whether or not those listed are individual people, a government agency, an organization, corporation, or any other type of entity (not incorporated, etc.) For individual people, I have listed that person's job/title (if known and based on the information I currently have). I have also indicated whether or not this complaint is against them in his/her individual and/or official capacity (again, based on the experiences I have had and information available to me at this time).

1.  Defendant No. 1: Katherine Barrett Riley, also known as Katherine Riley, and possibly other aliases.
    a)  Job and/or Title:
        (1)  Katherine Barrett Riley of Don Barrett PA (or "of Don Barrett, P.A.) Court Appointed Attorney for Respondent (Carmen Thompson) in 2020 (see Case No. E20-00$^{50}$ per documents sent to Carmen Thompson by Charlie Luckett in February 2024)
        (2)  Board (or Brand) Attorney for Holmes County Supervisors
        (3)  Attorney for the city of Lexington, Mississippi
        (4)  Attorney for the city of Tchula, Mississippi
    b)  Address(es):
        (1)  404 Court Square, Lexington, Mississippi
        (2)  Other (unknown)
    c)  Telephone Number: unknown
    d)  Email Address: kbriley@barrettlawgroup.com
    e)  Capacity: Individual capacity and Official capacity
2.  Defendant No. 2: Barrett Law Office
    a)  Job and/or Title: See Katherine Barrett Riley information (Defendent No. 1)
    b)  Address: See Katherine Barrett Riley information (Defendent No. 1)
    c)  Telephone Number: See Katherine Barrett Riley information (Defendent No. 1)
    d)  Email Address: kbriley@barrettlawgroup.com
    e)  Capacity: Individual capacity and Official capacity

CMT

2

3.  Defendant No. 3: Holmes County, Mississippi
    a)  Job and/or Title: N/A - I am referencing the entire municipality
    b)  Address: the entire county (government)
    c)  Telephone Number: all of them
    d)  Email Address: all of them
    e)  Capacity: Individual capacity and Official capacity (color of the law)
4.  Defendant No. 4: Chancery Court of Holmes County, Mississippi
    a)  Job and/or Title: all
    b)  Address: all (old and new)
    c)  Telephone Number: (662) 834-2508
    d)  Email Address:
        (1)  charlie.luckett@holmescountyms.org
        (2)  luckettcharlie@yahoo.com
        (3)  kbriley@barrettlawgroup.com
        (4)  jhoward@holmescountyms.org
    e)  Capacity: I don't know how to answer this based on the information I have. I look forward to litigation.
5.  Defendant No. 4: Charlie Luckett
    a)  Job and/or Title: Holmes County Chancery Court Clerk
    b)  Address: unknown
    c)  Telephone Number: (662) 834-2508
    d)  Email Address
        (1)  charlie.luckett@holmescountyms.org
        (2)  luckettcharlie@yahoo.com
    e)  Capacity: Official capacity (color of the law)
6.  Defendant No. 6: Mississippi Authority for Educational Television
    a)  Job and/or Title: unknown
    b)  Address: unknown
    c)  Telephone Number: unkown
    d)  Email Address: unknown
    e)  Capacity: I don't know how to answer this based on the information I have. I look forward to litigation.
7.  Defendant No. 7: Mississippi Public Broadcasting and/or Mississippi Public Radio
    a)  Job and/or Title: unknown
    b)  Address: unknown
    c)  Telephone Number: unkown
    d)  Email Address: unknown
    e)  Capacity: I don't know how to answer this based on the information I have. I look forward to litigation.

CMT

8. Defendant No. 8: Mississippi Community College Board
   a) Job and/or Title: unknown/multiple/Board Members
   b) Address: unknown/multiple
      (1) Community & Jr. Colleges Board
          (a) 3825 Ridgewood Rd. #519, Jackson, MS 39211
      (2) See also Defendent No. 9: Holmes Community College
   c) Telephone Number: unkown/See Defendent No. 9: Holmes Community College
      (1) Community & Jr. Colleges Board: (601) 432-6518
   d) Email Address: unkown/See Defendent No. 9: Holmes Community College
   e) Capacity: I don't know how to answer this based on the information I have. I look forward to litigation.
9. Defendant No. 9: Holmes Community College
   a) Job and/or Title: unknown/multiple
   b) Address: unknown/multiple/discrete boundaries (if any)
      (1) Goodman Campus
          (a) 1 Hill Street, Goodman, MS 39079
      (2) Yazoo Center
          (a) 637 East 15th Street, Yazoo City, MS 39194
   c) Telephone Number:
      (1) Holmes Community College Board: (800) 465-6374
      (2) Holmes Community College Board: (662) 472-9152
      (3) Goodman Campus: (662) 472-2312
      (4) Yazoo Center: (662) 472-9070
   d) Email Address: unknown
      (1) Holmes Community College Board: bmiller@holmescc.edu
   e) Capacity: I don't know how to answer this based on the information I have. I look forward to litigation.

II. Basis for Jurisdiction + Statement of Claims

**Under 28 U.S.C. § 1331**, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than \$75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff. I am an American and I have been an American my entire life. I live in Philadelphia, Pennsylvania, but I am from Mississippi. I should have more than one home, but because of what I have endured (the basis for my claims), I am afraid to return to Mississippi at this time.

CMT

The basis for federal court jurisdiction is both a federal question and diversity of citizenship. I am an American citizen and I have been and will continue to be an American citizen no matter what State within the United States of America I am at any point in time. I look forward to describing (including listing the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case, amongst much more) in as much detail as required during litigation (including if/when this goes to trial. I am prepared by my experiences and knowledge gained through research and study of the laws of both the State of Mississippi and the United States.

**Under 42 U.S.C. § 1983**, I may sue state and/or local officials for depriving my rights, privileges, and/or immunities secured by the Constitution and "deprivation of any rights, privileges, or immunities secured by federal law. Section 1983 cases typically arise out of violations of the various rights guaranteed by the Constitution. The Fourteenth Amendment's Due Process Clause is interpreted by courts to provide both procedural and substantive due process protections for persons who are subject to involuntary civil commitment. The infringement of my freedom of choice and constitutionally protected rights without consideration or regard for the facts and circumstances should be held unconstitutional. The Fourth Ammendment's overriding function is to protect personal privacy and human dignity against unwarranted intrusion by the State. In fact, there are many cases which have referred to the Fourth Ammendment with regard to personal integrity, as well as caes that have used the Eighth Amendment and have suggested the right to privacy to uphold personal integrity as these concepts have evolved over time. The point being, I did not review the Fourteenth Amendment alone to understand how the law(s) of our Nation and the State of Mississippi are intended to protect me from the intrusive and abusive tactics leveraged to confine me against my will in 2020. As such, I also mention the First Amendment, but only passively as this aspect may be elaborated upon during litigation/trial, though anyone may understand the imperative of safeguarding our freedom to both express ideas and logical interpretation that the First Amendment also protects our freedom to generate ideas too. Of course, there is the Sixth Amendment as well which guarantees that I am legally entitled to representation, though if misconstrued, an attorney or any person for that matter, may unreasonably interpret "representation" to be sufficient, though the courts have made sufficiently clear through a number of cases that the right to legal representation means "effective representation." Similarly, as the Due Process Clause of the Fourteenth Amendment affords me the right to a fair trial (hearing) with the right to counsel, when referencing local rules and State law, particularly that of Mississippi, a reasonable person should know that "some kind of hearing" should be interpreted as a "fair hearing."

**Due process should be an imperative in involuntary commitment.**

A constitutional violation actionable under 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process. "A 1983 action may be brought for a violation of procedural due process, but here the existence of state remedies is relevant in a special sense. In procedural due process claims, the deprivation by state action of a constitutionally protected interest in "life, liberty, or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law."

CMT

5

The process of involuntarily committming me was constitutionally inadequate including maladministration of safeguards which should be built into the statutory/administrative procedures which facilitated the deprivation of my rights. Further degrading me, the Holmes County Chancery Court, or so called "Equity Court," has done nothing to remedy the erronious deprivation though they (including Katherine Barrett Riley of Don Barrett PA in her various capacities) has had ample time to resolve this matter. Put simply, they have had ample time to do the right thing. It surpasses my ability to fathom an authority which abuses authority which allows such an abundance of discretion, yet such authority does not have the will or the aptitude to acknowledge their own mistakes and take remedial action on their own. I have suffered for years as I have worked to learn how to live with the added PTSD layer on top of what any reasonable human being could understand was already complex and protracted - had the court included me in the conversation in 2020.

By way of Holmes County, the state of Mississippi not only facilitated an obstruction on the core of my bodily integrity and obstructed my self-determination; they made it impossible for me to do anything of my own free will. I could not touch or see any people or objects outside of the confines of the facilities I was involuntarily forced to stay in for a month. The month of isolation and humiliation is enough to trouble any person with decency, but it's worse because of the plethora of factors commulating in this miscarriage of justice - all of which one could hope that by the government allowing the Chancery Court of Holmes County to be granted such immense discretion and privilege that they could use this power to do remarkable things, but they did the opposite. They went beyond making my challenges more inconvenient, they put obstacles in my way which made them virtually impossible to avoid.

**Malign Influence, Malign Interpretation, and Maladministration in Involuntary Civil Commitment Hearings**

The physical and emotional toll of this wrongdoing (possibly even intentional infliction of emotional distress, or IIED) at the hands of people in positions of power has hurt me immensly. The conduct of Katherine Barrett Riley of Don Barrett PA and the Holmes County Chancery "Equity" Court can not be deemed normal or appropriate, nor do I believe society will be willing to accept such conduct as acceptable. I do, however, see how my previous complaints (see previous actions taken) and attempts to find legal representation to help address these claims may have been arbitrarily neglected (emphasis towards Mississippi Bar Association and Mississippi Commission on Judicial Performance, amongst others). My case is complex indeed, but I do not accept anyone throwing their hands up in dismay because they think this is too much to grasp or understand. As such, I have taken great care to inform diligently in this report. Context matters, particularly with respect to an IIED claim.

Katherine Barrett Riley of Don Barrett PA ignored the due process needed to advocate for and represent me. She took no no care to develop my response in the days leading up to the hearing, nor did she even observe the due process violations which occurred prior to her being appointed by the court to represent me and througout all of the days leading up to the hearing. One may reasonably consider what role Katherine Barrett Riley of Don Barrett PA (or not of Don Barrett PA) was assuming during that time. It must inevitably be assumed her inability to represent me was because of the proxy government firm to which she is a party and her multitude of conflicting roles.

CMT

The resulting miasma of inhumanity and injustice in mental treatment is mired by Katherine Barrett Riley's failure to set boundaries and limits for herself and the local government and the Barrett Law Firm controls - making a mockery of the State of Mississippi and the health care system. Given Katherine Barrett Riley of Don Barrett PA's background as an attorney, any reasonable person could assume she knows that a personal injury refers to an injury of the mind, body, or emotions caused by the negligence or ill intent of another person or entity. Any reasonable person who reviewed the public information shared by the Tenessee Bar Association could assume that it is prima facie presumption that "Sarah Katherine Barrett Riley" in Mississippi is the same Katherine Barrett Riley of Don Barrett PA who was appointed by the court to represent me in September 2020. Any reasonable person may also assume that the Tenessee Supreme Court did in fact suspend (Sarah) Katherine Barrett Riley on August 18, 2020 for failure to comply with Rule 21 as she failed to complete continuing legal education requirements in 2019. Any reasonable person may also assume that Katherine Barrett Riley should be familiar with Administrative Law too, given the many roles she assumes as an attorney.

Since the burden of proof in involuntary commitment proceedings must be clear and convincing evidence, Katherine Barrett Riley of Don Barrett PA took the approach of doing little to nothing to represent me, and even silencing me, and should be held financially liable for her part in the prima facie "evidence" presented during the hearing before the the Holmes County Chancery "Equity" Court in September 2020.

1983 was intended not only to "override" discriminatory or otherwise unconstitutional state laws, and to provide a remedy for violations of civil rights "where state law was inadequate," but also to provide a federal remedy "where the state remedy, though adequate in theory, was not available in practice." 365 U.S., at 173 -174. Note, Overlapping state remedies are generally irrelevant to the question of the existence of a cause of action under 1983.

The Chancery Court of Holmes County defines itself as an Equity Court and boasts of using creative solutions without rigid interpretation of the law, they do not even follow or abide by the Constitution. Let's consider the role of the Special Master, or "Judicial Adjunt" (see *Olmstead*). A special master, or judicial adjunct, is precisely that, an adjudicator who assists a judge by performing tasks such as fact-finding, conducting herings, or making preliminary legal determinations. The special master does not have the full judicial power of a judge and operates under the supervision of a judge, serving as an auxiliary to the court system by ensuring fairness and completeness of information presented to the court. As evident from the documents I received from Charlie Luckett (Holmes County Chancery clerk) in February 2024 (twice), it is clear that the role of special master was eliminated.

There was no legitimate habeas corpus proceeding. It was a sham and presupposed/determined.
Habeas corpus proceedings are a legal process that allows a prisoner to challenge the legality of their detention or imprisonment. The process involves a writ of habeas corpus, which is a court order that requires the custodian of a prisoner to appear in court. The purpose of the writ is to determine if the prisoner's detention is lawful. The custodian was/is the Holmes County municipality who placed me in the detention of the crisis unit.

CMT

7

A determination of the "lawfulness" of the detention could have been disproven by review of the Luckett documents alone (which I received in February 2024 after reaching out to Charlie Lucket, the clerk, for a copy of the recording of the hearing with initial contact to Charlie Luckett being made at the end of 2023 - and only after months of her stringing me along about them searching for the recording/casette tape/then transcription - she finally sent me the case file documents from two email addresses on two separate dates), but the so-called equity court does not abide by the law and despite the concept being righteous does not leverage the immense privilege and authority allowed by such court in an honest and ethical way because individual rights were not protected and the process was not fair. The court did not even give the Respondent an opportunity to be heard. Katherine Barrett Riley chose her role of supporting the Holmes County municipality in favor of the client she was required to represent. Note, I also recognize this aspect, "Only Congress has the power to suspend the writ of habeas corpus, either by its own affirmative actions or through an express delegation to the Executive. The Executive does not have the independent authority to suspend the writ." (see Cornell LII habeas corpus).

The hearing requirement of Rule 53(b)(1) can be satisfied by an opportunity to make written submissions unless the circumstances require live testimony. Barrett did not even make such a recommendation to me, the person she was appointed to represent though she was appointed approximately three days in advance of the sham hearing according to the case file documents sent to me by Charlie Luckett in February 2024. The affiants and their witness were prepared with written statements and Katherine Barrett Riley (of Don Barrett PA) did not even bother to contact me (Carmen Thompson) until we spoke virtually immediately prior to the hearing. All the while, I was essentially imprisoned, under duress, confused, scared, angry, alone, isolated, without resources (internet, legal library, etc.), and so much more. All of which I will elaborate upon in the near future.

Non Appearance of Katherine Barrett Riley of Don Barrett PA during the hearing. In the event of non-appearance the court can pass an award in favor of the attending party. However, the court will provide an opportunity to the absent party through a non appearance hearing. I assure you, Katherine Barrett Riley of Don Barrett PA was absent and did not appear during the hearing in an effective or meaningful way. This can be proven by the recording (and transcripts) of the hearing, should they magically appear (as they should exist given the hearing was recorded and should have been transcribed as well). MS Code § 9-13-1 (2020) states "Each circuit judge and chancellor shall appoint a competent person as shorthand reporter in his district by an entry upon the minutes of the court of an order to that effect, dated and signed by him. The said shorthand reporter shall be known as the official court reporter of said district." Also according to Mississippi Code, § 9-13-43, "When a transcript has been made by the official reporter and certified to as being a correct transcript of notes, tapes or audio records of the testimony and other proceedings of the trial, the same shall be prima facie a correct statement thereof and may thereafter be introduced and read in evidence in the trial of any case in any state court of the state of Mississippi, without the necessity of further identification, provided such matter is otherwise admissible."

Katherine Barrett Riley clearly erred on the side of a presupposed judgement (likely provided by the Holmes County Chancery Clerk, Charlie Luckett, given the Local Rules). As such, it is reasonable to assume that Katherine Barrett Riley of Don Barrett PA was acting with bias and prejudice. Her behavior and inaction indicates that Katherine Barrett Riley is not fit to be an attorney representing either involuntary committed individuals, or the State of Mississippi (at any level of government) in any capacity. See Miss. Code § 11-5-49 and of course, the Federal Rules of Civil Procedure.

CMT

8

**MAET, MPR (and/or MPB), MCCB, and Holmes Community College**

Finally, with respect to Mississippi Authority for Educational Television, Mississippi Public Broadcasting and/or Mississippi Public Radio, and Mississippi Community College Board. I understand the Mississippi Public Radio is owned by the Mississippi Authority for Educational Television (MAET), which is an agency of the state of Mississippi. In light of matters stemming from January 2019 being consolidated into the proceedings (if you call a sham hearing a lawful proceeding) before Judge Clark in September 2020, it is necessary to take a step back and look at the bigger picture. I remind you that this is complex and I am providing a summary (brief) version of the information I have prepared in preparation for litigation. The precise laws that were broken I am unable to identify without causing myself more stress and possibly triggers at this time. What I can tell you is that what I experienced (none of which I was allowed or advised to share during the sham hearing in September of 2020) was what I can only describe as psychological warfare. That's right, PSYWAR, happening in the United States of America. I was targeted while at Pluto, my family's farm in Mississippi. Technically, once I got onto Bee Lake Road whilst in my vehicle. I don't need to cite any laws, statutes, treaties, or other legal reference at this time to inform you or any human being reading this that what I have endured is un-American and should never happen to one of our people at home - in the USA that is, no matter what State they are located in.

According to the State of Mississippi (.gov), in a report published on August 19, 2024, the "Total operating revenues for fiscal year 2019 were approximately $31.3 Million," for Holmes Community College (see Office of State Auditor (OSA), State of Mississippi (.gov) report prepared by Fortenberry & Ballard, PC). And, note, as with all sources used in preparation to file this complaint, those may be shared during the discovery process as appropriate and required by law).

III. Injuries

I was re-traumatized. Not once, but twice. In other words: traumatized, traumatized, traumatized. Now, understand that "trauma" is not the bad thing that happened. Rather, trauma is what happens after that bad thing happened. Trauma is what you (or any individual who experiences this condition) has to live with following the bad thing that happened. Often, people suffer from trauma because of an awful event. Maybe something that happened that day. I have endured a lot of awful and difficult to imagine experiences. I was sexually abused as a teenager in the most disgusting and disgraceful way. In the way we don't want to talk about because it will truly make you sick to know the truth. I was not allowed to share this during the habearing because Katherine Barrett Riley silenced me. As a young adult, I started dating someone who abused me (phsyically, emotionally, and psychologically) for several years. My family knew of this, but this was not mentioned by them, nor was I allowed/affored an opportunity to share this during the hearing in 2020. In 2019 I experienced something that seems imaginary - as though you would not believe it if you were not there. I was not allowed to describe this either. And, finally, in 2020, I was treated like a dangerous person with a serious psychological problem that required involuntary commitment and I was forced into jail-like conditions without any rights or due process. I was humiliated and disgraced repeatedly, made to look like a fool. All of this has been so tremendously traumatic and I will suffer from this for the rest of my life - for certain without justice which is why I am filing this complaint and intent on suing for damages.

CMT

9

## IV.  Relief

The amount of relief I am seeking in damages is significant. We need to discuss this as I am not a finance expert, nor do I have access to all of the necessary information in order to provide an informed figure here. I know this figure is vast. With consideration of the dependency on federal funding to sustain Mississippi's annual budget, economic opportunities within the State of Mississippi and elsewhere, what I know from my experiences, the knowledge I have gained gained through research, and in the spirit of reciprocity I have made a first pass at identifying the relief I am seeking (at a high level):

A. $80 MILLION U.S. DOLLARS (OR EQUIVALENT) - PAID DIRECTLY TO CARMEN THOMPSON
B. $400 BILLION U.S. DOLLARS (OR EQUIVALENT) - DISTRIBUTION AND LOCATION TBD
   1. This substantial sum of money is so that, along with partners from the Federal Government and the Private Sector, may invest in projects that benefit the American people
      a) Including individual investors (American citizens)
   2. Emphasis on improving livelihoods in Mississippi and the United States holistically and achieving goals and ambitions of American citizens through a peaceful and collaborative effort to make our lives better with the goals and ambitions of Mississippians and fellow American citizens

## V.  Certification and Closing

Under any rules (Federal Rules of Civil Procedure, for example) defined or undefined, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with all requirements I am familiar with (again, I am emphasize "Pro Se" and that I am working on this to the very best of my ability).

I agree to provide the Clerk's Office (if/when they communicate with me appropriately as I must mention in light of my experience in dealing with the Holmes County Chancery Clerk's office) with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: **2025-02-07**

Signature of Plaintiff: *Carmen Marie Thompson*

Printed Name of Plaintiff: Carmen Marie Thompson (same as Carmen Thompson):  Carmen Marie Thompson

# Audit trail

## Details

FILE NAME COMPLAINTS FOR CIVIL CASE - 2/7/25, 2:10 PM

STATUS ● Signed

STATUS TIMESTAMP 2025/02/07
19:16:36 UTC

## Activity

| | | |
|---|---|---|
| ⊳ SENT | thompsoncarmenm107@gmail.com **sent** a signature request to:<br>• Carmen Marie Thompson (thompsoncarmenm107@gmail.com) | 2025/02/07<br>19:12:34 UTC |
| SIGNED | **Signed** by Carmen Marie Thompson (thompsoncarmenm107@gmail.com) | 2025/02/07<br>19:16:36 UTC |
| ⊘ COMPLETED | This document has been signed by all signers and is **complete** | 2025/02/07<br>19:16:36 UTC |

The email address indicated above for each signer may be associated with a Google account, and may either be the primary email address or secondary email address associated with that account.